STINSON LLP
ERIC C. LIEBELER (SBN 149504)
eric.liebeler@stinson.com
1775 Pennsylvania Ave NW
Suite 800
Washington, DC 20006
Telephone:   202.785.9100
Facsimile:   202.572.9973

Attorney for Petitioner
Space Data Corporation

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPACE DATA CORPORATION,<br><br>                                Petitioner,<br><br>      v.<br><br>HOSIE RICE LLP,<br><br>                                Respondent. | Case No.<br><br>**DECLARATION OF ERIC LIEBELER IN SUPPORT OF PETITION TO VACATE ARBITRATION AWARD**<br><br>Date:          November 20, 2020<br>Judge: |

I, Eric C. Liebeler, declare as follows:

1.      I am an attorney at the law firm Stinson LLP, which represents Petitioner Space Data Corporation in this matter.

2.      Certain of the attached exhibits contain minor redactions to prevent the disclosure of the existence or terms of a contract requiring this level of confidentiality. I do not believe the redacted portions are relevant to this matter, but will work with the Court to determine whether it is necessary to file sealed unredacted versions once a judge is assigned.

3.      Attached as Exhibit 1 is a true and correct copy of the January 28, 2019, Representation Agreement between Hosie Rice LLP and Space Data Corporation.

4.      Attached as Exhibit 2 is a true and correct copy of the January 16, 2020, Interim Award issued by the Hon. Sue L. Robinson (Ret.).

5.      Attached as Exhibit 3 is a true and correct copy of a January 21, 2020, email from Christy Milliken to Dave McMonigle.

6.      Attached as Exhibit 4 is a true and correct copy of a January 31, 2020, email from Christy Milliken to Eric Liebeler.

7.      Attached as Exhibit 5 is a true and correct copy of a the May 26, 2020, Second Amended Findings and Order issued by the Hon. Sue L. Robinson (Ret.).

8.      Attached as Exhibit 6 is a true and correct copy of a January 30, 2020, email from Robert Torgerson to Dave McMonigle.

9.      Attached as Exhibit 7 is a true and correct copy of a February 20, 2020, email from Dave McMonigle to me.

10.     Attached as Exhibit 8 is a true and correct copy of a March 4, 2020, email from Dave McMonigle to me.

11.     Attached as Exhibit 9 is a true and correct copy of a March 26, 2020, 2020, email from Dave McMonigle to the Arbitrator.

12.     Attached as Exhibit 10 is a true and correct copy of a March 29, 2020, email from Dave McMonigle to the Arbitrator.

13.     Attached as Exhibit 11 is a true and correct copy of an April 11, 2020, email from Dave McMonigle to the Arbitrator.

14.     Attached as Exhibit 12 is a true and correct copy of an April 29, 2020, email from Dave McMonigle to the Arbitrator.

15.     Attached as Exhibit 13 is a true and correct copy of an April 28, 2020, email from me to the Arbitrator.

16.     Attached as Exhibit 14 is a true and correct copy of a May 12, 2020, email from me to the Arbitrator.

17.     Attached as Exhibit 15 is a true and correct copy of a March 18, 2020, email from me to the Arbitrator.

18.     Attached as Exhibit 16 is a true and correct copy of a February 18, 2020, email from Elizabeth Magana to counsel of record for the parties.

19.     Attached as Exhibit 17 is a true and correct copy of a February 24, 2020, email from me to the Elizabeth Magana.

20.     Attached as Exhibit 18 is a true and correct copy of a March 26, 2020, email from Dave McMonigle to the Arbitrator.

21.     Attached as Exhibit 19 is a true and correct copy of a May 19, 2020, email from Dave McMonigle to the Arbitrator.

22.     Attached as Exhibit 20 is a true and correct copy of Space Data's June 18, 2020, Request for Modification of Interim Award and/or Attorneys' Fees.

23.     Attached as Exhibit 21 is a true and correct copy of Hosie Rice LLP's June 18, 2020, Response to Request for Modification of Interim Award and/or Attorneys' Fees.

24.     Attached as Exhibit 22 is a true and correct copy of a June 25, 2020, email from Elizabeth Magana to counsel of record for the parties providing notice of a hearing and attaching invoices.

25.     Attached as Exhibit 23 is a true and correct copy of excerpts from the transcript of the July 10, 2020, hearing on Space Data's Request for Modification of Interim Award and/or Attorneys' Fees.

26.     Attached as Exhibit 24 is a true and correct copy of an August 14, 2020, letter from JAMS to the parties terminating the arbitration.

27.     Attached as Exhibit 25 is a true and correct copy of the February 18, 2020, final award and proof of service on August 20, 2020.

I declare under penalty of perjury of the laws of the United States that everything I have stated in this document is true and correct.  Executed on November 20, 2020 in Washington, District of Columbia.


Dated:  November 20, 2020

By:   _____
                    */s/ Eric C. Liebeler*
                    Eric C. Liebeler

LIEBELER DECLARATION IN SUPPORT OF PETITION TO VACATE ARBITRATION AWARD

# EXHIBIT 1



HOSIE | RICE LLP

ATTORNEYS AT LAW

Transamerica Pyramid, 34th Floor
600 Montgomery Street
San Francisco, CA 94111
T: 415.247.6000  F: 415.247.6001

**REVISED**

January 28, 2019

Jerry Knoblach
C.E.O.
Space Data Corp.
2535 Fairview Street, Suite 100
Chandler, AZ 85224
jknoblach@spacedata.net

       Re:    *Representation Agreement*

Dear Jerry:

       This letter agreement ("Agreement") sets forth the terms and conditions on which Hosie Rice LLP ("Hosie Rice" or "Attorneys") will represent Space Data Corp. ("Client") in the matter described below.

       Hosie Rice believes that it is important that all parties understand the terms and conditions under which Hosie Rice will be providing legal representation to the Client. This Representation Agreement ("***Agreement***") is a formal and legally binding contract defining: (1) Hosie Rice's attorney-client relationship with the Client, (2) the scope of Hosie Rice's legal representation of the Client, (3) the terms and conditions under which Hosie Rice will represent the Client, and (4) the fees and costs for services concerning such legal representation. Therefore, it is important that the Client carefully review this Agreement before executing it.

       1.    **Scope of Services**. Attorneys will represent Client as to the matter captioned *Space Data v. Google* ("Litigation").

       The terms of this Agreement will apply to any services we perform for the Client unless Attorneys and the Client expressly agree to different terms in writing, or as otherwise expressly provided in this letter. It is our intent to serve as a trusted legal advisor and make available the full range of legal services of our firm, and we look forward to building this relationship with the Client. Hosie Rice's sole client is the Client, ***not*** the Client's founders, officers, directors, shareholders, agents, or employees, even though Attorneys will necessarily deal with such individuals in representing the Client. The Client agrees to make it clear to such individuals that Attorneys are representing the Client and that they should retain their own counsel if they have legal questions.

HOSIE | RICE LLP
ATTORNEYS AT LAW

Jerry Knoblach
January 28, 2019
Page 2

**2.     Client's Duties.**  Client agrees to cooperate with Attorneys, to keep Attorneys informed of any information or developments which may come to Client's attention, to assist Attorneys by providing necessary information and documents, to abide by this Agreement, to pay Attorneys' bills when due, and to keep Attorneys advised of Clients' address, telephone number and whereabouts.  In order to represent the Client effectively, Hosie Rice needs the Client's full cooperation including, but not limited to: (1) providing all documents and information relating to Hosie Rice's representation of the Client in a timely manner, (2) advising Attorneys of any parties who are adverse to the Client in the representation undertaken for the Client, and (3) making personal appearances upon reasonable notice in furtherance of the representations undertaken.  By signing this Agreement, the Client agrees to provide full cooperation to Hosie Rice on all matters in which assistance is requested.

**3.     Legal Fees and Billing Practices.**  This is a mixed, or hybrid, hourly-contingent representation agreement.  Client agrees to pay by the hour for Attorneys' services at the reduced client rate of $475 per hour for Spencer Hosie and Diane Rice, $450 per hour for Brandon Martin, $375 for Darrell Atkinson and $110 for paralegals.  Invoices will be delivered to Client monthly and are payable upon receipt unless otherwise provided herein, and we reserve the right to impose interest at the rate of 10% per annum on any invoices outstanding more than 30 days. In addition, hourly rates of personnel providing services to the Company under this Agreement will increase from time to time according to competitive market conditions and increased experience of attorneys and staff and Attorneys will provide Client with prior written notice of the same.  Billing rates and charges are usually revised annually but Hosie Rice reserves the right to adjust rates at other times during the course of Hosie Rice's representation.  In addition, as a partial contingency, Attorneys will be entitled to 17% of any net of costs cash (or cash equivalent) recovered.  For example, if plaintiffs recover $1.1 million, and if unpaid costs were $100,000, Attorneys would be entitled to 17% of the net recovery of $1 million, in addition to the discounted and unpaid hourly fees (which to date are outstanding in the amount of (approximately as of November 28, 2018) $2,506,120.30) as well as any costs advanced under ¶ 4.   Costs include such items as travel, photocopies, expert fees, deposition transcripts, as set forth in ¶ 5.  Attorneys' reduced hourly fees shall not be considered a cost.  "Cash equivalent" means any and all things of cash or otherwise, value received by Client, including stock, stock options, warrants, or any other form of non-cash payment received by Client through any claim, demand, negotiation, license, assignment, settlement, lawsuit, judgment or other agreement regarding Client's enforcement rights.  If a claim is settled in whole or in part by the Client's receipt of anything of value other than cash, then Attorneys will be paid-in-like-kind.  For example, if the non-cash consideration is in the form of a restricted stock or options, payments to Attorneys shall be made at the same time that Client is permitted to sell or exercise its options. The decision to settle and resolve the Litigation, in whole or in part, and the terms for such settlement and resolution, shall be and remain at the sole discretion of Client.

HOSIE | RICE LLP
ATTORNEYS AT LAW

Jerry Knoblach
January 28, 2019
Page 3

If Attorneys cease to be the Client's counsel in the Litigation, through no fault of the Attorneys, then Attorneys share in any contingent recovery will be governed by Attorneys' time spent on the matter over the total time spent on the matter by all counsel (the ratio of a "lodestar" ratio). If Attorneys' representation is terminated for cause, Attorneys will be entitled to no portion of any contingent recovery.

Upon resolution of the matter, if Attorneys' representation has not been terminated, all resolution funds will be paid by defendant(s) directly to Hosie Rice's Trust Account.

**4.     Attorney Provided Financing.** Hosie Rice will advance all costs and fees through the conclusion of the Litigation once Space Data has paid $4.5 million in costs and fees in connection with the Litigation. As of the date of this Agreement, Space Data has paid at least $4.5 million in costs and fees in connection with the Litigation. Hosie Rice represents and warrants that it has all the facilities in place necessary to fund the Litigation through its conclusion, with a $2 million revolver that can be increased, along with other fee income.

Attorneys agree to advance fees and costs incurred, subject to subsequent Client repayment, as follows:

A.     Once Attorneys begin to advance fees and costs, after the $4.5 million threshold is reached, the Attorneys' contingent interest on any recovery will increase 2% to 19%;

B.     If Attorneys are required to fund costs above $5.5 million, *i.e.*, advance more than an incremental $1 million, then the contingency fee will increase a second 2%, for a contingent interest of 21%; and

C.     Should Attorneys fund in an amount over $6.5 million, *i.e.* advance more than an incremental $2 million, then the contingency percentage increases another 1%, to a total contingency participation of 22%.

The parties understand that, in addition to receiving this increased percentage based on Attorney financing, the Attorney costs and fees advanced will also be paid within 90 days of the resolution of the matter, regardless of outcome. For example, if Attorneys invest $1 million above the $4.5 million threshold, for a total case expenditure of $5.5 million, Attorneys would recover the $1 million advanced within 90 days of the resolution of the matter, plus receive the contingency fee owed to Attorneys (if any).

The parties recognize that Space Data need not draw on this Attorney financing, unless Space Data, in its unilateral discretion, so elects. That is, Space Data retains the right to fund some or all of the Litigation fees and costs above $4.5 million, if Space Data so desires.

HOSIE | RICE LLP
ATTORNEYS AT LAW

Jerry Knoblach
January 28, 2019
Page 4

    **5.**     **Costs and Other Charges.** Hosie Rice will incur various third party costs and expenses (*e.g.* travel, experts, photocopying) in performing legal services under this Agreement. Client agrees to pay promptly, but no longer than 30 days, for all costs, disbursements and expenses unless otherwise provided in this paragraph or under ¶ 4. Hosie Rice often advance costs that are reasonably incurred in the ordinary course of Hosie Rice's representation of its clients including filing fees, messenger fees, payments made to third parties, such as court reporters for transcripts of testimony, obtaining and/or copying documents, travel expenses (including mileage, transportation, business class air travel for any flights scheduled to be longer than eight hours, lodging and meals), and teleconference fees. Should any costs exceed $2,000.00, Hosie Rice may require the Client to directly pay the costs rather than advance it. The advanced costs, itemized in detail, and the voice and data charge will be included on Hosie Rice's monthly invoice. Unless otherwise provided in this paragraph or under ¶ 4, the Client agrees to reimburse Hosie Rice for costs upon receipt of its monthly invoice.

    **6.**     **Communication Concerning Progress and Outcome.** Hosie Rice will take reasonable steps to keep the Client informed of progress on matters and to respond to all inquiries. Hosie Rice will furnish the Client with an updated litigation budget every three months, and more frequently if events occur in the Litigation that materially affect the budget. If the Client is uncertain about something related to Hosie Rice's representation, it is important for the Client to request further clarification, which Hosie Rice will provide to the extent possible.

    **7.**     **Conflicts of Interest.** We have conducted a conflicts check based on information provided by the Client, and based on that information, we are not aware of any ethical conflicts of interest posed by Hosie Rice's proposed representation of the Client as described in this Agreement, including, but not limited to, conflicts related to the source of Hosie Rice's financing under ¶4 It is the Client's continuing duty to inform Attorneys of the identity of any person, firm, corporation or other entity adverse to the Client or that otherwise has any interest that may be in conflict with the Client's interests with respect to any legal matter as to which we are representing the Client.

    **8.**     **Disclaimer of Guarantee.** Nothing in this Agreement and nothing in Hosie Rice's statements or writings to Client will be construed as a promise or guarantee about the outcome of the Litigation. In the course of the representation, Hosie Rice may discuss with Client the status or potential outcome of matters or issues in which Hosie Rice is representing the Client. Hosie Rice cannot promise or guarantee any particular outcome or result due to variables and uncertainties outside Hosie Rice's control. Hosie Rice makes no such promise or guarantees. Hosie Rice's comments about the outcome of the Litigation are expressions of opinion only. Therefore, the Client should not construe any expressions or opinions on such matters or issues as assurances, promises or guarantees of the potential outcome of the Litigation. Hosie Rice has furnished the Client with a budget that reflects its best estimate of fees and costs to be incurred in the Litigation and may update the budget as circumstances in the Litigation dictate. Hosie Rice will implement its best efforts to adhere to the budget and promptly provide

HOSIE | RICE LLP
ATTORNEYS AT LAW

Jerry Knoblach
January 28, 2019
Page 5

Client with advance notice if it anticipates the budget will be exceeded. Notwithstanding, Client acknowledges that any estimate of fees given by Hosie Rice shall not be a guarantee. Actual fees may vary from estimates given.

       **9.**     **Entire Agreement.**  This Agreement contains the entire agreement of the parties. It replaces and supersedes any prior agreements or understandings, whether written or oral. No other agreement, statement or promise made on or before the effective date of this Agreement will be binding on Hosie Rice and Client. This Agreement may be modified only by an instrument in writing, executed by both Hosie Rice and Client.

       **10.**    **Severability.**  If any provision of this Agreement is held in whole or in part to be unenforceable for any reason, the remainder of that provision and of the entire Agreement will be severable and remain in effect.

       **11.**    **Effective Date.**  This Agreement will govern all legal services performed by Attorney on behalf of Client commencing with the date Attorney first performed services.

       **12.**    **Insurance.**    Hosie Rice maintains errors and omissions insurance applicable to the services to be rendered pursuant to this Agreement.

       **13.**    **Termination of Representation by Client.**  If at any time the Client is dissatisfied with Hosie Rice's services or wants to have other counsel represent it, the Client may terminate this Agreement by notifying Hosie Rice in writing of the Client's desire to end Hosie Rice's representation. Similarly, Hosie Rice may withdraw at will representation of the Client and terminate this Agreement in writing. If the Client's representation is terminated by the Client, then the Client is only responsible for payment of fees and costs that have been incurred up to the date on which Hosie Rice receives notice from the Client of its desire to terminate the representation, with the fee being calculated as set forth in ¶ 3 above. The Client agrees that Hosie Rice may similarly elect to terminate the representation upon written notice.

       Upon termination of the representation, the Client may request the return of the "Client File" (as defined below) related to the representation or may request that it be forwarded to another law firm. The contents of the *"Client File"* will include all documents (in electronic, paper, or other format) provided by the Client and all recorded information (including but not limited to correspondence, pleadings, transcripts, exhibits, reports, completed but uncommunicated work product and other readily identifiable documents) that Hosie Rice retained as reasonably necessary to the Client's representation. We do not consider our internal communications, notes, and drafts of documents as part of the Client File. Hosie Rice reserves the right to copy the contents of the Client File at our expense and to reuse any work product (exclusive of confidential information) for other clients. If the Client chooses not to request the return of the Client File, Hosie Rice will store it at our off-site storage facility pursuant to Attorneys' normal retention policy as required by law or regulation. The Client will be notified

HOSIE | RICE LLP
ATTORNEYS AT LAW

Jerry Knoblach
January 28, 2019
Page 6

via email at the last email address provided to Hosie Rice when the retention period has ended
and of Attorneys' intention to dispose of the Client File. The Client will have sixty (60) days
from the email notification date to take possession of its Client File. If Hosie Rice does not take
possession of it during this time, the Client agrees that it may be destroyed without further
notice.

**14.    Termination of Representation by Hosie Rice.** If material adverse facts are
revealed through discovery, or otherwise, that were not disclosed by Client, Hosie Rice has the
right to immediately withdraw in accordance with California Rules of Professional Conduct.
Further, Hosie Rice may withdraw at will should Hosie Rice decide that Client is making it
unreasonably difficult for Attorneys to carry out its engagement effectively.

**15.    Client's Acknowledgment.** Client acknowledges that Client has been
encouraged by Attorneys to consult independent counsel concerning the negotiation of this fee
Agreement and its terms (including the following Section 17 on Dispute Resolution), that Client
has made sufficient investigation and inquiry to determine that this Agreement is fair and
reasonable to Client, and that this Agreement was the product of arm's length negotiation with
Attorneys. Client acknowledges that Client has either consulted such independent counsel or,
having had an adequate opportunity to seek such advice, has declined to follow Attorneys'
advice to do so.

**16.    Client's Indemnity.** Client agrees to indemnify and hold Attorneys harmless for
any claims asserted by others to any portion of the claims covered by this Agreement.

**17.    Fee Not Set by Law.** Client understands that the fees described in this
Agreement are not set by law, but are negotiable, and were negotiated, between Attorneys and
Client. Attorneys encourage Client to have this representation agreement reviewed by other
Client counsel.

**18.    Dispute Resolution.** Hosie Rice appreciates the opportunity to represent the
Client and anticipates a productive and harmonious relationship. The Client is encouraged to
bring to Hosie Rice's immediate attention any concerns with services performed or fees charged.
Most problems can be resolved by communication and discussion. However, should a dispute
arise which cannot be resolved by negotiation, Hosie Rice believes that attorney-client disputes
are most satisfactorily resolved through binding, confidential arbitration rather than by litigation.
Any dispute arising out of, in connection with, or in relation to the interpretation, performance or
breach of this Agreement—including any claim of legal malpractice (or similar claim) and any
claim involving fees or expenses—shall be resolved by final, confidential and binding arbitration
conducted in San Francisco, California, administered by a retired judge or justice and in
accordance with the then existing JAMS Streamlined Arbitration Rules and Procedures, and any
judgment upon any award rendered by the arbitrator may be entered by any state or federal court
having jurisdiction to do so. If Hosie Rice and Client are unable to agree on a retired judge or

HOSIE | RICE LLP
ATTORNEYS AT LAW

Jerry Knoblach
January 28, 2019
Page 7

justice to conduct the arbitration, then each party will name one retired judge or justice and the two named persons will select a third retired judge or justice to act as the sole arbitrator. **Client further acknowledges that, by so agreeing, Client waives the right to a court or jury trial.** Client also acknowledges that arbitration provides only limited discovery and that courts will enforce an award in arbitration without reviewing it for errors of fact or law. The parties agree that the prevailing party in any such disputes shall be entitled to recover reasonable costs and attorney's fees.

In any such arbitration, both parties will be entitled to conduct discovery in accordance with the provisions of the California Code of Civil Procedure, but either party may request that the arbitrator limit the amount or scope of such discovery, and in determining whether to do so, the arbitrator shall balance the need for discovery against the parties' mutual desire to resolve disputes expeditiously and inexpensively.

Should there be a dispute concerning fees or costs, the Client may elect to submit that dispute to arbitration under the above provisions. If the Client does not make that election, then California law provides a client with the right to request arbitration of any fee dispute before an arbitrator or panel of arbitrators selected by a local bar association or the State Bar ("***Bar Fee Arbitration***"). By signing this Engagement Agreement, the Client agrees that if a Bar Fee Arbitration is conducted, that Bar Fee Arbitration shall determine only the issue of the properly chargeable amount of fees and costs, and that such Bar Fee Arbitration shall not affect the Client's agreement to arbitrate all other issues on the terms set forth above.

19.     **Attorney Lien.** Client acknowledges that the repayment of any deferred fees or costs, and, in the event of a successful resolution, any contingency due to Attorneys is enforceable by lien of property or any other means of collection under the law of the State of California

20.     **Choice of Law.** In any proceeding (whether in arbitration, in court, or in any other tribunal), all questions concerning the rights and obligations of Client and Hosie Rice under this Agreement that are determined to be governed by the law of a state shall be resolved in accordance with the then-prevailing law of the State of California, including the California Rules of Professional Conduct.

21.     **Conclusion.** If the terms set forth in this Engagement Agreement are satisfactory to the Client, please sign the original and return it to Attorneys in the enclosed envelope. Delivery of an executed counterpart of this Engagement Agreement by facsimile or other electronic imaging shall also be as effective as delivery of a manually executed counterpart of

HOSIE | RICE LLP
ATTORNEYS AT LAW

Jerry Knoblach
January 28, 2019
Page 8

this Engagement Agreement.  The Client should keep the fully executed copy of this engagement
agreement with its records.

Very Truly Yours,

HOSIE RICE LLP

Spencer Hosie, Senior Partner

AGREED TO AND ACCEPTED:

Gerald M
Knoblach:A01097C00000
16003D8BA4900015F3D

Digitally signed by Gerald M
Knoblach:A01097C0000016003D8BA4900015F3D
DN: c=US, o=U.S. Government, ou=ECA,
ou=EdenTrust, ou=SPACE DATA CORPORATION,
cn=Gerald M
Knoblach:A01097C0000016003D8BA4900015F3D
Date: 2019.02.02 20:29:57 -07'00'

Jerry Knoblach
Space Data Corp. (Client)

ACKNOWLEDGEMENT AND CONSENT:

Paul Crawford
Managing Member
Space Data Investments LLC

# EXHIBIT 2

Hon. Sue L. Robinson (ret.)
Farnan LLP 919 N. Market Street 12th Floor
Wilmington, Delaware 19801

# JUDICIAL ARBITRATION AND MEDIATION SERVICES

## SAN FRANCISCO DIVISION

| | |
|---|---|
| **HOSIE RICE LLP,** | ) |
| | ) |
| **Claimant,** | ) |
| | ) |
| v. | ) **JAMS Reference No.** |
| | ) **1100106722** |
| | ) |
| **SPACE DATA CORPORATION,** | ) |
| | ) |
| **Respondent and** | ) |
| **Counterclaimant.** | ) |

## INTERIM AWARD

## INTRODUCTION

The law firm of Hosie Rice LLP ("Hosie Rice") instituted this arbitration proceeding

under the JAMS Streamlined Arbitration Rules pursuant to its January 28, 2019 Representation

Agreement (Ex 46/512, ¶ 18) in order to collect outstanding fees and costs from its former

client, Space Data Corporation ("Space Data"). The litigation underlying the fee dispute was a

lawsuit filed by Space Data in 2016 against, *inter alia*, Google LLC asserting infringement of

four patents,[1] federal trade secret misappropriation, state trade secret misappropriation, and

breach of contract. *Space Data Corporation v. Google LLC, et al.*, Case No. 16-cv-03260-BLF

(N.D. Cal.) ("the Litigation"). The four patents all involved balloon communication technology.

In this regard, Space Data "provides balloon-based networking and deployable communications

services for first responders," with an objective "to provide wireless service using a fleet or

constellation of balloons located in the stratosphere, at an altitude of approximately 60,000 to

100,000 feet." (Ex. 76 at 4) In the Litigation, Space Data alleged that over the course of several

months in 2007-2008, it met with Google to discuss Google's potential investment in or

acquisition of Space Data. During the course of those discussions, Space Data and Google

entered into a nondisclosure agreement ("NDA"); thereafter, Google performed technical due

diligence of Space Data's balloon technology and Google personnel toured Space Data's

facilities in Arizona. Significantly, Larry Page, one of Google's founders, attended multiple

meetings with Space Data. Several years later, Google represented to the public that it had

"invented" similar balloon technology (christened "Project Loon"). Both Space Data and

Google ultimately filed patent applications relating to balloon communicating systems In 2015,

---

[1] U.S Patent No. 6,628,941 ("the '941 patent"); U.S. Patent No. 9,632,503 ("the '503 patent"). U.S Patent No. 9,643,706 ("the '706 patent"), and U,S. Patent No. 9,678,193 ("the '193 patent"). The '193 patent was considered to be the most valuable of the four patents.

Space Data provoked an interference proceeding at the United States Patent & Trademark
Office; without opposition from Google, Space Data's application (which issued as the '193
patent in June 2017) was granted priority over Google's patent. Based on these events, Space
Data accused Google in the Litigation of breaching the parties' NDA, of misappropriating Space
Data's trade secrets in connection with Google's development of Project Loon, and of infringing
the '193 and related patents.

Although the Litigation was instituted in 2016, Hosie Rice was not engaged to represent
Space Data until March 2017. By that time, Google had already prompted a robust motion
practice[2] and Space Data was in need of litigation financing. Hosie Rice agreed to a hybrid
hourly-contingent fee arrangement. (Ex. 22 at ¶ 3) The preliminary budget submitted by Hosie
Rice included $5.1 million in fees, plus a 15% contingency. (Ex. 21) The parties entered into
several revised representation agreements; however, the structure of the fee arrangement never
changed. (Exs. 24, 38, 46/512) Nor did Space Data's struggles to pay for the Litigation abate
over time (see Exs. 23/505, 25, 29, 35, 503, 504, 508), even as the Litigation continued to
generate more expenses.[3] By March 2019, the financial constraints of the Litigation had begun
to sour the attorney-client relationship between Hosie Rice and Space Data, with Space Data
calling out budget overruns by Hosie Rice and Hosie Rice having to fund some part of the
Litigation itself. (See Exs. 35, 62, 510) With discovery closing and summary judgment motions
scheduled for argument in April, it was determined that case valuations should be prepared and
presented to Space Data's Board of Directors ("the BOD"), which valuations would serve as the
basis for future settlement demands  Spencer Hosie ("Hosie"), lead counsel for his law firm of

---

[2] Ultimately, more than 60 motions were filed in the Litigation.
[3] In addition to the aggressive motion practice, some 55 days of depositions were taken during the discovery phase
of the Litigation

2

Hosie Rice, prepared such a case valuation, wherein he concluded that a $70-75 million fully paid up license for rights under the '193 patent could be rationally supported, as could damages in the amount of $6-7 million for the trade secret claims (which had a face value of $3.2 million). (Ex. 55)  Also presenting a case valuation to the BOD at a March 18, 2019 meeting were retired Judge Randall R. Radar and Eric C. Liebeler, Esquire ("Liebeler"), the latter an acquaintance of Jerry Knoblach ("Knoblach"), President, Chief Executive Officer ("CEO"), and Chair of Space Data's BOD.  Judge Radar and Liebeler's valuation was higher than that of Hosie, no less than $100 million plus fees.  The BOD discussion following the presentation was not a productive one, with Hosie pushing back on the higher valuation[4] and calling on the BOD for a resolution on a demand number.  Although the BOD authorized "some values" in response to Hosie's request for settlement authority, Knoblach made it clear that the values should be shared only if Google approached Hosie; "[t]hat authority does NOT include you reaching out to the other side with a number without getting further approval from your client."  (Ex. 702)  In response, Hosie characterized the missive as "one of the more obnoxious client emails I have ever received.  We are your lawyers.  Not your pool boys."  (Ex. 704)  Hosie also made it clear that, from his perspective, the BOD was his client, "[n]ot the ceo."  (Ex. 62)  Consistent with the mounting tensions between Hosie and Knoblach, at a subsequent BOD meeting held on April 3, 2019, the BOD retracted the March 18 resolution regarding settlement and determined that Liebeler should be part of the litigation team.  (Ex. 66)

Amidst the internal drama between Space Data' management and the Hosie Rice litigation team, the Litigation was playing out.  On April 11, 2019, oral argument was heard on pending summary judgment motions related to both Space Data's trade secret and the '193 patent

---

[1] Including characterizing the Loon technology as more sophisticated than that of Space Data (Space Data was described by Hosie as a "scooter" and Loon as a "Ferrari").

infringement claims. According to Hosie, because the '193 claim was regarded by Space Data as being much the stronger of the claims, he allocated the responsibility of argument to a less experienced lawyer ("Martin"), while he assumed the task of arguing what was believed to be the weaker trade secret claim. At the hearing and before Martin even finished his introductory remarks, Judge Freeman interrupted and expressed her skepticism about the meaning of the "determining locations . . . relative to . . ." limitation of the '193 patent and, consequently, infringement of that limitation. (Ex. 69)

Given Judge Freeman's negative response to the '193 claim, the BOD passed a resolution on May 6, 2019, authorizing a demand to Google in the amount of $70 million, which demand would expire upon issuance of the summary judgment decision. "This is for settling the counts in the current suit and does not include international patents as we still need to value those." (Ex. 549) In a decision issued on May 9, 2019, Judge Freeman construed the above limitation adverse to Space Data, and entered a judgment of non-infringement in favor of Google. However, the trade secret and NDA claims survived. (Ex. 76, 623)

By June 3, 2019, the acrimonious communications between Hosie and Knoblach resumed, with Knoblach telling Hosie that "[c]ommunication with the Board and Paul Crawford at SDI[5] – should come through the Chairman of the Board not direct." (Ex. 663) Hosie continued to relate that "[t]he Board is my client." (Ex. 78)

The valuation of the case became ever more important as mediation efforts between Space Data and Google were attempted in June 2019. The mediation was not successful. According to Diane Rice, Hosie's partner at Hosie Rice, the mediator subsequently shared that, although Google was prepared to settle, it had little monetary flexibility to settle in a partial deal

---

[5] Paul Crawford and Space Data Investments LLC provided litigation financing to Space Data. Paul Crawford, on behalf of SDI, consented to the January 28, 2019 Representation Agreement. (Ex. 46/512 at 8)

given the face value at best of $3.2 million for the remaining trade secret case. It was the mediator's opinion that Space Data should aim for a settlement higher than any realistic recovery in trial, which required a realistic demand. Knoblach apparently came across at the mediation as "letting emotions guide him instead of business acumen." (Ex. 85)

At the June mediation, Hosie floated the idea of a partial settlement, settling all but the '193 patent claim which would be carved out and proceed to appeal. Although the mediation did not produce a resolution, Google's attorney, Robert Van Nest ("Van Nest") reached out to Hosie a few days later to continue the discussion. Hosie informed Knoblach that Google wanted Space Data to price a partial settlement: Knoblach declined to do so. (Ex. 527) Hosie shared this with Liebeler who, according to Hosie, "agreed that it would be irresponsible not to make a demand." (Ex. 86/528) By a memorandum dated June 30, 2019, Hosie shared directly with the BOD (as well as Knoblach and Liebeler) a settlement update and counsel recommendation. (Ex. 87/529) Hosie recommended a demand number of $24 million.

Thereafter follows a complicated and hard-to-follow sequence of emails, texts, voice messages, and memos that track – albeit imprecisely – the course of the subsequent settlement negotiations between Google (primarily through Van Nest, its lead counsel) and Space Data (primarily through its lead counsel, Hosie, with side discussions variously among and between Hosie, Knoblach, Liebeler, and the BOD) I will summarize the chronology of these negotiations consistent with my understanding of the record and the relative importance of the events to the disputes at issue.

On July 2, 2019, Van Nest communicated to Hosie Google's counter to the Space Data proposal· "Google is prepared to pay $3 million in settlement on the framework we discussed yesterday In other words dismissal/release on trade secret claim, NDA, and '706, while SDC

retains right to appeal '193 patent and the other two dismissed patents." (Ex. 531)  Rather than communicate this offer directly to Space Data, Hosie in his communications with Liebeler on that day indicated that he would "try to develop a sense of what goog might in fact pay." (Ex. 629)  At Liebeler's request, Hosie prepared a "Final Settlement Analysis and Recommendation" to share with the BOD.  Among other scenarios discussed, Hosie opined that a "prompt all cash settlement with Google for $6 million" would avoid "one million dollars in trial fees and costs," thus providing "an immediate $7 million benefit to Space Data." (D.I. 648)  The settlement memo was dated July 5, 2019, and was prepared for a July 8 BOD meeting.

There is a series of communications on July 8 – 9 between Hosie, Knoblach, and Liebeler which illustrate the deteriorating relationship between Hosie and his client.  For instance, while Hosie is recommending settlement, Knoblach is urging Hosie in an email exchange on July 8 to "aggressively press what we do control which is a firm trial date." (D.I. 661)  Hosie shares this email with the BOD and critiques Knoblach'ss analysis.  In response to Hosie's actions, Liebeler asks Hosie to identify the "authority for the proposition that you should be communicating directly with the Board despite the CEO's direct instruction to you otherwise."  Hosie opines that the BOD is his client; Liebeler disagrees, opining that since the "Client" is "Space Data Corp.," the "Client" through its CEO has every right to direct the channel of communications.  (Ex 661/858)  More importantly, by email dated July 9, 2019, SH obliquely relays Google's July 2nd offer·

> [SDC's d]emand communicated   Dismissed as absurd.  He [RVN] said no way could we ever get anything close to that number if we tried the case sbd win everything in the best way possible (this is inexorably true).  **He hinted that he cld get to just below face, which I took to be three M**.  There is more money there and I am sure google will [put] more than face, perhaps millions more than face.  But it will not be near the kind of numbers you are talking.  Just will not happen.

I put 6 in my memo as number I thought but was not sure we could get. We need to Counter at a real number. Or will be in a world of hurt on 7.19. So prompt response pls.

Jk pls promptly send this to the board and copy me on the mail. Thanks.

(Ex. 533)

It is unclear when the above information was communicated to the BOD (*see* Exs. 866, 867, 868, 533); apparently Hosie was not informed of it, leading to an "[u]rgent [r]equest for [a]uthority" to counter "at no more than 14" on July 10, 2019, a week before the pretrial conference. Again Hosie asks for confirmation that his request has been communicated to the BOD. (Ex. 633) The issue of communications is finally resolved through a BOD resolution shared with Hosie on July 12, whereby the BOD "directs Hosie Rice LLP to immediately cease communicating directing with the Corporation's Directors. . ." (Ex 540), which Hosie sees as making his law firm "adversarial with the client." (Ex. 539)

Also on July 12, Hosie sends notice of the first trial preparation session (Ex. 1135) and "confirms that Google, through Robert Van Nest, its lead counsel, has fully, officially, and of-record offered $3 million to settle the breach of contract case, the trade secret case, and the '706 patent case." (Ex 118) The proposed deal would exclude the '193, '503, and '041 patents. Hosie urged Space Data "as strongly as possible to counter at $14 million." (*Id.*)

By email dated July 15, Liebeler informs Hosie that he has "authority to counter at $19.5 million for release of the NDA and trade secret claims and a covenant not to sue on the '706 patent." (Ex. 542) Hosie pushes for a counter at $14 million; Liebeler agrees that responding to Google with a $19.5 million counter will not keep settlement discussions alive. (Ex. 131) It, frankly, is unclear what if anything was communicated to Google or when, just that Google offered $4 million in settlement around July 18 and, despite Hosie's recommendation

7

that Space Data counter at $14 million a week earlier, by the evening of July 18, Hosie was declaring in an email to Liebeler:

> How do you, or the Board, justify demanding that G pay MORE than three times face value. . . This is not negotiating in good faith. It is not a nuanced question of judgment. It is irrational. I assume that this is more of Mark Knoblach and Jerry Knoblach wishful thinking that they can shake-down Google because Larry Page either cannot or will not testify. I do not think this is a reasonable gamble.
>
> Please tell the Board in writing that their trial lawyers, whom they have instructed not to talk to the Board, think that there is a significant risk that this approach to settlement may lead to a sizeable fee award against SDC if SDC loses. Pls let me know in writing when you have done so. I insist on this, Eric. I cannot have my firm be sued because someone claims we did not warn.

(Ex. 138)

The pretrial conference took place on July 19, 2019. Judge Freeman asked for briefing on a point raised by Google regarding the termination clause of the NDA and its application to the pending Litigation. At lunch following the conference, Hosie offered to fund $1 million of the '193 appeal/trial in exchange for moving the contingency up two points, but indicated that his "constructive termination" justified his withdrawing as counsel at the conclusion of the trade secret/NDA trial if Space Data did not settle at his recommended number which, on that day, was between $6 million and $10 million. Liebeler asked Hosie to confirm that, if Space Data settled on agreeable terms, Hosie would be "committed both emotionally and intellectually to the remainder of the case. He said he would be." (Ex. 142/1130) Liebeler observed in this email that "Jerry and SG mix like oil and water. That is unfortunate but it is reality." (*Id.*)

So the stage is set for the final settlement negotiations between Google and Space Data. Hosie has neither a healthy relationship with his client nor does he have a direct line of communications with his client, having instead to relay the real-time negotiations taking place with Van Nest (in California) through Liebeler (who is in Washington, D.C.) to the BOD (the

8

members of which were located in several states) and back again. It should not be a surprise to anyone, then, that the complexities of a negotiation handled in this fashion would be disjointed.

On July 23, Liebeler authorized Hosie to respond to Google at "$9.7 M in exchange for NDA, TS and covenant on '706," with Space Data's recovery from this partial settlement "to not be less than $4.0M." (Ex. 156) In addition to the $4 million "hard-stop number" (or Space Data tries the case), Liebeler writes to confirm a number of financial concessions on the part of Hosie Rice. (*Id.*) Hosie responds: "Do I have authority to move forward and close at a deal that nets sdc 4?" (*Id.*) Liebeler: "I think so, let me confirm." (*Id.*) By July 24, Hosie acknowledges that this "is a clever structure as it makes any lower amount my deferral problem, given hard stop 4 to Sdc. Really will test, in an objective and empirical way, my belief that settlement is better than trial at a multiple of face." (*Id.*) Hosie and Liebeler continue to discuss parameters of settlement vis a vis covenants not to sue under both the '941 and 503 patents. (Ex. 157)

A lot happened on July 25, 2019. On the one hand, Hosie was moving forward on the general premise that, so long as Space Data netted $4 million, he had authority to settle under standard terms and conditions. Space Data apparently thought otherwise, either unaware of the terms and conditions generally used in resolving intellectual property disputes, or perhaps still believing that it had the upper negotiating hand under the extant circumstances (despite 3 of its 4 patents being dismissed and its trade secret/NDA claims being questioned). In any event, Space Data declined to provide a general release on either its domestic or international patents, ignoring Hosie's advice that "California law is standard on this," i.e., a party cannot settle, take the money, and then subsequently sue the opposing party for a claim it had at the time of settlement. (Ex. 166, *see also* Ex. 978) There was much discussion about the possible existence of Brazilian

counterparts to the '941 patent and whether they would be included in any release. (Exs. 197, 168/680, 989, 177, 684)

By the afternoon of July 25, 2019, the first draft term sheet from Google (Ex. 1129) was forwarded by Hosie to Liebeler who forwarded it on to Knoblach. Liebeler observed that █████

████████████████████████████████████████████████████████████████████████

678) Knoblach responded that Space Data had "TONS of other patents and applications. Also this only applies US claims." (Ex. 679) Hosie's response was predictable, that releases were always a part of patent settlements and licenses, otherwise, it "would not be a settlement at all, just a down payment on future litigation." (*Id.*) Hosie asked Knoblach and Liebeler to go through the term sheet and make a list of issues and circulate "ASAP. The cl[o]ck is ticking on the nda motion." Hosie also suggested a call. (*Id.*) (*See also* Exs. 681, 683)

On July 26, Knoblach indicates that the settlement described in the term sheet "oversteps the Board's authority which was limited to resolving the active claims remaining in the August Trial and a covenant to not sue on the '706. If the settlement includes more than that then there needs to be another board meeting and the board needs to be educated on the Brazil issues." (Ex. 185/1003) Hosie describes the patents in Brazil as "terminally abandoned" and "nonexistent" and encourages the BOD to sign the term sheet. (*Id.*) There is no evidence of record about the existence or extent of Space Data's international patent portfolio.

A second draft term sheet was circulated on July 26. (Ex. 605) Liebeler informs Hosie that there are two options to moving forward: (1) Google grants a worldwide covenant not to sue on current patents and three-years forward, reciprocal to what Space Data was asked to grant with the only carve-out being the '193 patent; (2) because there was a "legitimate disconnect on

whether foreign analogs were part of the deal," SDC would need more cash in the deal to grant

those. (Ex. 191/564) Liebeler instructed Hosie that he had "discretion to pitch these to RVN" as

he saw fit. (*Id.*) In response to Hosie's suggesting a "CNS from Loon to Space Data," Google's

counsel indicated that they were available to discuss despite the fact that it had not been part of

any discussions to date. (Ex. 196/606)

As noted, because of the time differences between Hosie's communications with Van

Nest in California, Hosie's communications with Liebeler in Washington, D.C., and Liebeler's

communications with Knoblach (perhaps in Arizona), it is difficult to determine the exact

chronology of the final events of the settlement process that occurred on July 26, 2019. There

can be no dispute that the basic structure of the deal ████████████████████ had been

agreed to by Space Data; the outstanding issues dealt with the scope of the settlement vis a vis

patents other than those at issue in the Litigation. In this regard, Hosie shared with Liebeler that

Google did not want to do a covenant not to sue "sdc under loon patents in full settlement

agreement as it creates a bad . . . precedent for goog. But RVN will execute a side letter

agreement, which we will countersign, saying just this." (Ex. 208/567) The record indicates that

Hosie was anxious to seal the deal before Judge Freeman had the opportunity to rule against

Space Data on its trade secret/NDA claims, and pushed Liebeler to get the term sheet executed

"yesterday." (Exs. 207/582, 252, 609, 610) As noted, by 3:30 p.m. Pacific Time, an execution

copy of the term sheet had been forwarded to Liebeler for "final review and signature." Liebeler

was informed by a member of the Hosie Rice team to "go ahead and have Jerry sign and send us

the signed copy, and we will hold his signature until we have confirmation that the side letter is

agreed." (Ex. 614)

In the end, Hosie authorized Van Nest to send to the Court a notice of settlement around

4:15 p.m. Pacific Time, ███████████████████████████████████████████

████████████████████████████████████████████████████████████████████

(Exs. 201, 203, 205/580, 581, 597) The letter, of course, fell short of the broad reciprocal

covenant not to sue sought by Space Data, and was forwarded to Liebeler sometime after the

Court notice was sent.  (Exs. 614, 211/593, 215/1061)

In a series of communications between Hosie and Liebeler on July 27, Liebeler observes

that the side letter does not accomplish a "worldwide covenant not to sue on Google's current

patents." Hosie responds that, unless Space Data is planning on doing something in the future

that will read on an existing Loon patent (which reads on very different systems), the side letter

accomplishes "reciprocal peace." Liebeler replies: "I don't know. I am sure that Jerry expects

this now, given that's what I told him yesterday. Agnostic as to whether it is in the side

agreement or the main term sheet, but Jerry sees value in it." (Ex. 221)

Also on July 27, Space Data transmitted to Google a copy of the "final" term sheet as

marked-up by Knoblach. (Ex. 215/1061) Google's counsel responded as follows:

> We do not agree and are not bound by any changes to the term sheet that were not
> disclosed to us until after our clients had executed the term sheet and the Court was
> advised that there was a signed, binding term sheet. ████████████████████████
> ████████████████████████████████████████████████████████████████
> in reliance on your express representations that the term sheet was agreed to and that
> your client was executing it. In particular, we do not agree to change the timing of
> payment or the timing of the IPR termination request. As I know you appreciate, those
> events are necessarily dependent upon ███████████████████████████████
> Mr. Knoblach's other "nits," any further wordsmithing is for ████████████████
> ███████████ at this point.

(Ex. 599) There is no mention of the side letter in this exchange between Space Data and

Google.

By July 28, Knoblach is admonishing Liebeler to "NOT send the signed term sheet until we get an acceptable consent to not sue on Loon Patents," even while acknowledging that rejection of the side letter may "crater the settlement." (Ex. 228/1106)  At a BOD meeting convened by Knoblach on July 28, the BOD "delegate[d] authority to Management to negotiate a Settlement Term Sheet materially similar to the Google Term Sheet (distributed on Friday evening) coupled with a covenant from Google not to Sue the Company for infringement for four years on any patent and in perpetuity on any Loon related patents or patent applications that currently exist worldwide materially similar to the Term Sheet2 (distributed this morning)."  The BOD rejected an offer of indemnity by Hosie and insisted that "preparation for trial must continue until a mutual settlement is reached."  (Ex. 1116)

By July 29, Hosie is indicating to Liebeler that he is being told to withdraw, and by August 1 Hosie is asking Liebeler for an update because of the suggestion that he did something wrong  (Ex. 206 @SD0009229)  Also on August 1, Liebeler informs Knoblach that he will inform Google that Space Data will ███████████████████████████████████ ██████████████████ (Ex. 206 @SD0009231)  On August 6, 2019, Space Data terminated Hosie Rice's representation.  (HR brief at 33)  Ultimately, the ███████████████ █████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████ 619:24)

**LEGAL STANDARD**

Hosie Rice instituted this arbitration seeking over $5 million in deferred fees and costs (Ex. 253), as well as its contingent portion of the $8 million Space Data received in ▮▮▮▮▮ ▮▮▮▮▮ (approximately $1.3 million) and a lien on any "193 proceeds, based on quantum meruit and Space Data's alleged fraud, breach of the representation agreement, and breach of the implied covenant of good faith and fair dealing.  In response to Hosie Rice's demands, Space Data counterclaimed for professional negligence/legal malpractice, fraud, breach of fiduciary duty, breach of the representation agreement, and breach of the implied covenant of good faith and fair dealing   Space Data is seeking a complete disgorgement of fees already paid to Hosie Rice ($2,833,915.41), and to preclude Hosie Rice from collecting any further fees now or in the future.  Through briefing, Space Data has withdrawn its counterclaim of professional negligence/legal malpractice, because of a recognized failure to quantify any actual loss or damage attributable to such alleged misconduct.  (SDC brief at 48)

I start with the legal standard for forfeiture, as it is described in the Restatement (Third) of the Law Governing Lawyers § 37 (2000).

> A lawyer engaging in clear and serious violation of duty to a client may be required to forfeit some or all of the lawyer's compensation for the matter.  Considerations relevant to the question of forfeiture include the gravity and timing of the violation, its willfulness, its effect on the value of the lawyer's work for the client, any other threatened or actual harm to the client, and the adequacy of other remedies.

According to the Restatement, "[a] lawyer is not entitled to be paid for services rendered in violation of the lawyer's duty to a client," and such "improper conduct can reduce or eliminate the fee that the lawyer may reasonable charge."  (*Id.*, comment a)  The Restatement goes on to state that "[f]orfeiture of fees, however, is not justified in each instance in which a lawyer violates a legal duty, nor is total forfeiture always appropriate." (*Id.*, comment b)  Forfeiture may

14

be required when a lawyer engages in a "clear and serious" violation of a duty to the client.  "A violation is clear if a reasonable lawyer, knowing the relevant facts and law reasonably accessible to the lawyer, would have known that the conduct was wrongful." (*Id.*, comment d) "To warrant fee forfeiture a lawyer's violation must also be serious." (*Id.*)  In this regard, "[f]orfeiture should be proportionate to the seriousness of the offense," which may depend on such factors as "the extent of the misconduct" in terms of the gravity and timing of the violation, whether the breach was knowing, its effect on the value of the lawyer's work for the client, any other threatened or actual harm to the client, and the adequacy of other remedies. (*Id.*)  In other words, the determination (like the remedy) is an equitable one, with the Restatement recognizing that "[u]ltimately the question is one of fairness." (*Id.*, comment e)

The parties have identified relevant California case law in this regard, the most helpful being the decision of the Supreme Court of California in *Sheppard, Mullin, Richter & Hampton, LLP v. J-M Manufacturing Co., Inc.*, 6 Cal. 5th 59 (2018).  The Court in *Sheppard* rejected a categorical remedy for lawyer misconduct and, citing to the Restatement, recognized that "[t]he degree to which forfeiture is warranted as an equitable remedy will necessarily vary with the equities of the case." *Id.* at 90.

In the absence of complete disgorgement, California courts have allowed attorneys to recover fees on a quantum meruit basis notwithstanding allegations of impropriety.  The Court in *Sheppard* explained in this regard that it is the attorney's burden to demonstrate that he has provided services of value "in light of the harm done to the client and to the relationship of trust between attorney and client." 6 Cal. 5th at 90  Once apprised of the facts, "the trial court must then exercise its discretion to fashion a remedy that awards the attorney as much, or as little, as equity warrants, while preserving incentives to scrupulously adhere to the Rules of Professional

15

Conduct." *Id. See also Cal Pak Delivery, Inc. v. United Parcel Service, Inc.,* 52 Cal. App. 4th 1, 16 (Cal. App. 1997) (fees may be limited to the value of services rendered before the violations occurred).

## DISCUSSION

Space Data alleges that the following conduct (undertaken by Hosie) demonstrates that Hosie Rice breached the fiduciary duties owed to its client: (1) insulting the CEO and chairman of the BOD; (2) seeking to undercut the CEO to the BOD; (3) assigning to himself authority he did not have by calling a vote at a BOD meeting; (4) "pick[ing] fights" with the CEO; (5) ignoring the CEO's request to cease communicating directly with the BOD; (6) permitting an associate to argue a "nine-figure claim" on summary judgment without client notice or permission; (7) withholding Google's first written settlement offer from Space Data, (8) responding to the written offer without any authority "or even checking" with his client; (9) sharing with third-party financier Paul Crawford confidential and privileged information; (10) "refus[ing] to conform his representation to the idea" that Space Data could communicate with him through its CEO and board chair or its outside counsel; (11) "falsely assert[ing] a breach of contract and defend[ing] it frivolously;" (12) ignoring "explicit settlement terms" Space Data had articulated; (12) threatening to withdraw unless Space Data settled on his terms; (13) disobeying Liebeler's direct instruction to refuse a general release; (14) withholding that first term sheet he received from Google; (15) falsely informing Liebeler that Google had agreed to the covenant Space Data sought; (16) withholding the side letter from Space Data, instead executing and returning it to Google's counsel; (17) violating his own associate's promise to hold his client's signature pending approval of the side letter, and (18) lying to Space Data, opposing counsel,

16

and the Court "in order to settle the case outside his authority on terms to which Space Data never agreed." (SDC brief at 36-37)

I start with a recognition that ███████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████ Google had a great deal of experience with patent litigation and had a reputation for driving a hard bargain with an eye towards its entire portfolio, not just the case at hand. There is no indication of record that Space Data had any experience with any kind of litigation; nor did its outside counsel (Liebeler) have any patent litigation experience. Given the posture of the litigation between Space Data and Google, ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ███████████████████ The fact that Space Data admittedly could not prove any actual loss or damages caused by Hosie's conduct in this regard proves the point.

As noted by Space Data, however, the lack of quantifiable damages is not a categorical obstacle to its quest for complete forfeiture of all fees paid or owed to Hosie Rice. So although "the rule governing attorney forfeiture derives primarily from the general principle of equity that a fiduciary's breach of trust undermines the value of his or her services," *Sheppard*, 6 Cal 5th at 89, the consideration of multiple factors is appropriate in determining whether Hosie's conduct constituted such "clear and serious" violations of his duty to Space Data as to warrant complete forfeiture, with "fairness" being the key.

Some of the conduct identified by Space Data[6] relates to the poor (and, therefore, feckless) individual relationship that existed between Hosie and Knoblach starting in March

---

[6] For instance, insulting and picking fights with Knoblach, and seeking to undercut Knoblach's authority with the BOD by, e.g., directly communicating with the BOD and exceeding his authority by calling a vote of the BOD

2019. The record illustrates how both of these individuals contributed to the state of their

relationship and any injury that Space Data, the corporate client, suffered. Therefore, although

Hosie was aware of his disrespectful conduct, such conduct standing alone does not, in my mind,

constitute clear and serious violations of Hosie's fiduciary duty to Space Data.

Some of the allegations[7] relate to conduct that, while not an example of the best practices

a lawyer should embrace, would not normally be deemed a violation of an ethical duty,

especially in the factual context of this dispute. With respect to Hosie's asserting breach of

contract due to his inability to communicate directly with the BOD, it certainly was a diversion

of everyone's focus and did not help the lawyer-client relationship between him and Space Data.

As to Hosie's communications with investor Paul Crawford, it is debatable how much of the

information shared was confidential to Space Data; moreover, it was Crawford who initiated

many of the communications in the first instance and had to be told by Hosie that "all

communications go thru" Knoblach. (Ex. 544) With respect to the summary judgment oral

argument, clients generally are kept apprised of which members of the law firm are involved in a

case and in what capacity. The fact that Space Data was not informed that an associate (rather

than Hosie) would be presenting argument on what was believed to be the most important claim

in the Litigation (the '193 patent) is reflective of the eroding relationship between Hosie Rice

and Space Data, setting aside any speculation about whether Hosie could have been more

persuasive than his associate.

The remainder of Space Data's allegations relate to the course of the settlement

negotiations and Hosie's conduct in connection thereto. I understand that, during this period of

time, Hosie was responding in some measure to the pressures of a high-stakes negotiation in a

---

[7] The allegations involving Hosie asserting breach of contract, discussing Space Data matters with an investor, and permitting an associate to argue an important claim on summary judgment

complicated intellectual property case adverse to a sophisticated player where his client had already lost the right to try the '193 patent and could potentially lose its trade secret/NDA claims. Space Data did not help the situation, with its lack of patent litigation experience, less than efficient mode of communications and decision-making, and lack of trust at this point in Hosie's advice. Add to that the financial constraints under which both Hosie Rice and Space Data were operating, it is no wonder that Hosie and Space Data did not end up at the same settlement at the same time.

Nevertheless, Hosie's conduct is troubling. Although his withholding and rejecting Google's July 2 offer ultimately had no effect on the outcome of the case since that initial offer clearly was not acceptable to Space Data, Hosie's suggestion on July 12, 2019 that the offer was a new one shades the truth. (Exs. 531, 118) The record also demonstrates that Hosie informed Google of his client's consent to broader settlement terms than Space Data wanted or authorized Hosie to accept, and informed the Court prematurely of an agreement between the parties. In this regard, as the settlement negotiations lurched forward, ████████████████████ ████████████████████████████████████ There was a disconnect between Hosie's and Space Data's respective views as to the proper scope of the settlement, with Hosie pushing for the standard terms and conditions in a patent case (including the need for a release with the goal of global peace) and Space Data pushing for a very narrow settlement, limited to the claims at bar. Hosie was probably the more correct in his approach, but it was not his call. A lawyer gives advice; the client makes the decisions. In this case, Hosie usurped at least some of Space Data's decision-making authority ████████████ terms that were not consistent with his instructions from Space Data and that were not agreed to by Space Data before the Court was informed of such.

19

Having concluded that, I do not believe that a complete disgorgement of all fees paid to Hosie Rice is appropriate. As I stated at the outset of this discussion, this is not a case where ████████████████████████████████████████████████████ not expect. With no evidence to the contrary, ██████████████████████████ ████████████ and due in no small measure to the efforts of Hosie Rice. Nor do I believe that Hosie Rice should be precluded from recovering on its quantum meruit claim for work performed even under the cloud of Hosie's misconduct. To put this conclusion into the words of the California Supreme Court in *Sheppard,* while Hosie's conduct damaged beyond repair the attorney-client relationship with Space Data, Space Data suffered little other harm.

## CONCLUSION

In fashioning a remedy that balances the negligible harm to Space Data vis a vis the settlement agreement with the harm Hosie's conduct exacted on his attorney-client relationship with Space Data, I am mindful of both the good result and the bad conduct. It should not be surprising that any equitable remedy will have to accommodate this inconsistency. In light of the fact that the harm I am focused on is the harm to the attorney-client relationship caused by Hosie's conduct, it is instructive that even he described his firm's relationship with Space Data as "adversarial" by July 12, 2019. (Ex. 539) I find that the professional services of Hosie Rice were rendered less valuable to its client, Space Data, as of July 12, 2019.

Consistent with the underlying structure of ████████████ ██████████ and with ¶ 3 of the parties' Representation Agreement (Ex. 46/512), I conclude that Hosie Rice shall be paid in quantum meruit its fees and costs for services rendered through July 11, 2019, as follows: (1) the source of payment shall be the $8 million ███████████ – immediate payment will bring this dispute to a close; (2) based on the underlying premise that ████████████ ███████████

20

████ ██ ███████, Hosie Rice's fees and costs may not exceed $4 million; (3) nevertheless,

Hosie Rice is not entitled to $4 million but shall provide to Space Data its invoice for fees and

costs through July 11, 2019 calculated from the invoices regularly submitted to Space Data (Ex.

253); (4) once the fees and costs have been determined[8] and paid to Hosie Rice, Hosie Rice shall

transfer within thirty (30) days to Space Data the remainder of the $8 million ███████ fund.

I find that Hosie Rice is not entitled to any additional contingency award;[9] therefore, I

instruct that Hosie Rice remove any and all liens that it has asserted, claimed, or filed related to

the Litigation.  To the extent that the parties have alleged fraud, breach of contract, and breach of

the implied covenant of good faith and fair dealing, these claims add nothing to the ultimate

decision and remedy and, therefore, are dismissed.  Finally, it is my conclusion that neither

Hosie Rice nor Space Data were without fault in this dispute, and neither of the parties are

receiving exactly what they requested as relief.  Consequently, each party shall bear its own fees

and costs related to this arbitration, and no interest shall be awarded.


Respectfully submitted,


Hon. Sue L. Robinson (ret.)
January 16, 2020


---

[8] As Hosie Rice submitted its invoices on a regular basis (Ex. 253) with no complaint from Space Data. I trust that
the amount due to Hosie Rice will be a simple calculation.  If a dispute arises in this regard. however. I will remain
available to resolve it and have characterized this as an "Interim Award" in case the need for further proceedings
arises,
[9] Although Hosie managed to salvage an appeal for the '193 patent ██████, ████████, he was lead counsel for the
unsuccessful summary judgment proceedings and will play no role in the appeal or trial (if the appeal is successful)
of the '193 patent.

## PROOF OF SERVICE BY EMAIL & U.S. MAIL

Re: Hosie Rice LLP vs. Space Data Corporation
Reference No. 1100106722

I, Elizabeth Magana, not a party to the within action, hereby declare that on January 16, 2020, I served the attached INTERIM AWARD on the parties in the within action by Email and by depositing true copies thereof enclosed in sealed envelopes with postage thereon fully prepaid, in the United States Mail, at San Francisco, CALIFORNIA, addressed as follows:

Robert H. Torgerson Esq.
Jon M. Woodruff Esq.
Stinson LLP
50 South Sixth St.
Suite 2600
Minneapolis, MN  55402
Phone: 612-335-1500
robert.torgerson@stinson.com
jon.woodruff@stinson.com
    Parties Represented:
    Space Data Corporation

Carrie Francis Esq.
Stinson LLP
1850 N. Central Avenue
Suite 2100
Phoenix, AZ  85004
Phone: 602-279-1600
carrie.francis@stinson.com
    Parties Represented:
    Space Data Corporation

Eric C. Liebeler Esq.
Christy M. Milliken Esq.
Stinson LLP
1775 Pennsylvania Avenue NW
Suite 800
Washington, DC  20006
Phone: 202-785-9100
eric.liebeler@stinson.com
christy.milliken@stinson.com
    Parties Represented:
    Space Data Corporation

David S. McMonigle Esq.
Joseph P. McMonigle Esq.
John B. Sullivan Esq.
Long & Levit LLP
465 California St
Suite 500
San Francisco, CA  94104
Phone: 415-397-2222
dmcmonigle@longlevit.com
JMcmonigle@longlevit.com
jsullivan@longlevit.com
    Parties Represented:
    Hosie Rice LLP

I declare under penalty of perjury the foregoing to be true and correct. Executed at San Francisco, CALIFORNIA on  January 16, 2020.

Elizabeth Magana
EMagana@jamsadr.com

# EXHIBIT 3

**Milliken, Christy M.**

| | |
|---|---|
| **From:** | Milliken, Christy M. |
| **Sent:** | Tuesday, January 21, 2020 11:31 AM |
| **To:** | 'McMonigle, Dave' |
| **Cc:** | Liebeler, Eric C. |
| **Subject:** | RE: Hosie Rice - expert retention agreements |

Thanks much.

**From:** McMonigle, Dave <dmcmonigle@longlevit.com>
**Sent:** Tuesday, January 21, 2020 11:31 AM
**To:** Milliken, Christy M. <christy.milliken@stinson.com>
**Cc:** Liebeler, Eric C. <eric.liebeler@stinson.com>
**Subject:** RE: Hosie Rice - expert retention agreements

**External Email – Use Caution**

I will ask our clients.

David S. McMonigle

**LONG & LEVIT LLP**

415-438-4555

**From:** Milliken, Christy M. [mailto:christy.milliken@stinson.com]
**Sent:** Tuesday, January 21, 2020 8:21 AM
**To:** McMonigle, Dave
**Cc:** Liebeler, Eric C.
**Subject:** Hosie Rice - expert retention agreements

Hi Dave,

Wanted to check if you had copies of Hosie Rice's agreements with Christine Meyer from NERA and from Mr. Pullen who served as experts in the Google case, and could tell us whether they were paid in full.

Thanks,

Christy
**Christy M. Milliken**
Attorney

STINSON LLP
1775 Pennsylvania Avenue NW, Suite 800
Washington, DC 20006-4605
Direct: 202.728.3029 \ Bio

Assistant: Jean-Marie Jones \ 202.572.9912 \ jean-marie.jones@stinson.com

STINSON.COM

1

# EXHIBIT 4

## Milliken, Christy M.

| | |
|---|---|
| **From:** | Milliken, Christy M. |
| **Sent:** | Friday, January 31, 2020 10:01 AM |
| **To:** | Liebeler, Eric C.; Torgerson, Robert; Woodruff, Jon M. |
| **Subject:** | RE: Space Data/ Hosie Rice |

NERA's is between $500-600k, I asked Pullen I'll let you know when I hear

**From:** Liebeler, Eric C. <eric.liebeler@stinson.com>
**Sent:** Thursday, January 30, 2020 11:51 PM
**To:** Milliken, Christy M. <christy.milliken@stinson.com>; Torgerson, Robert <Robert.Torgerson@stinson.com>; Woodruff, Jon M. <jon.woodruff@stinson.com>
**Subject:** Re: Space Data/ Hosie Rice

do we know how much they're owed?


Eric C. Liebeler
Partner
Washington
202.728.3006
x63006


**From:** Milliken, Christy M. <christy.milliken@stinson.com>
**Sent:** Thursday, January 30, 2020 9:21 PM
**To:** Liebeler, Eric C.; Torgerson, Robert; Woodruff, Jon M.
**Subject:** Re: Space Data/ Hosie Rice

Talked to both - Meyer and Pullen both know to contact HR to get their invoices paid ASAP


On: 30 January 2020 20:59, "Liebeler, Eric C." <eric.liebeler@stinson.com> wrote:



        Eric C. Liebeler
        Partner
        Washington
        202.728.3006
        x63006

Christy M. Milliken
Attorney
Washington
202.728.3029
x63029

1

# EXHIBIT 5

*Arbitrator*
*5/26 Second*
*Amended*
*Findings and Order*

Hon. Sue L. Robinson (ret.)
Farnan LLP 919 N. Market Street 12th Floor
Wilmington, Delaware 19801

## JUDICIAL ARBITRATION AND MEDIATION SERVICES

## SAN FRANCISCO DIVISION

| | |
|---|---|
| **HOSIE RICE LLP,** | ) |
| | ) |
| **Claimant,** | ) |
| | ) |
| v. | ) **JAMS Reference No.** |
| | ) **1100106722** |
| **SPACE DATA CORPORATION,** | ) |
| | ) |
| **Respondent and** | ) |
| **Counterclaimant.** | ) |

## SECOND AMENDED FINDINGS AND ORDER

In its statement of claim, Hosie Rice claimed to have advanced well over a

million dollars in costs on behalf of Space Data, and argued that Space Data should

be responsible for reimbursing Hosie Rice for all of these costs. During his

opening statement, Hosie Rice counsel Joseph McMonigle claimed that Hosie Rice

had advanced $1,635,549.51 in costs on Space Data's behalf, much of which were

expert-witness fees. Tr. 26:18-27:1 (McMonigle). During the hearing, Hosie Rice

partner Diane Rice testified about a specific invoice (Ex. 253 at HR004140),

declaring that the amount listed on that individual invoice from NERA, Space

Data's damage expert, was "representative of costs that were advanced by Hosie

Rice on Space Data's behalf." Tr. 146:23-147:18 (Rice). When asked on cross-

examination, Rice testified that she was unable to identify any vendor that had not

been fully paid. Tr. 185:21-24 (Rice). All of these representations are inconsistent

with the record now established as described below.

On January 16, 2020, an interim award was issued. That interim award

assumed that Hosie Rice had in fact advanced expert fees to Space Data experts,

and awarded Space Data and Hosie Rice $4 million each from the $8 million

amount ▌▌▌▌ ▌▌▌ ▌ ▌▌▌▌▌▌, ▌▌▌▌ ▌▌▌ ▌▌ ▌▌ ▌▌▌▌▌ into a Hosie

Rice bank account, and both parties agreed that the ▌▌▌▌▌ ▌▌▌▌▌▌▌t funds would

remain in trust pending an order from this Arbitrator.

On January 21, 2020, Space Data counsel Christy Milliken wrote Hosie Rice

counsel Dave McMonigle, asking whether Hosie Rice had paid Space Data's

experts in full. 1/21/20 email from Milliken to McMonigle. McMonigle agreed to

ask Hosie Rice, but did not respond substantively. After several follow-ups,

McMonigle spoke directly with Robert Torgerson on January 30 and confirmed

that Hosie Rice would pay all unpaid vendors from the $4 million awarded to

Hosie Rice from the ▌▌▌▌▌ ▌▌▌▌▌▌▌, and that the "amount needed to pay all

unpaid vendors would be distributed from its [Hosie Rice's] trust account in trust

for immediate payment solely to those vendors." 1/30/20 email from Torgerson to McMonigle.

The following morning, Milliken contacted NERA and found out that Hosie Rice owed NERA between $500,000 and $600,000. 1/31/20 Milliken email to Eric Liebeler. Liebeler then followed up with McMonigle on February 4, February 10, February 11, February 12 and February 19. McMonigle responded that Hosie Rice would "wire to NERA tomorrow."[1] 2/20/20 McMonigle email. Hosie Rice did not do so.

Liebeler followed up again on February 24, March 2, March 3 and March 4, seeking confirmation that vendor payments were complete. On March 4, McMonigle reported his understanding that "the final NERA bill was sent to Hosie Rice and they are reviewing and wiring this week." 3/4/20 McMonigle email to Torgerson. That representation also was false. On March 10, Liebeler wrote again to McMonigle after finding out that Hosie Rice's payment to NERA was only partial: Hosie Rice had paid just $128,000 of the approximately $570,000 that was due to NERA. On Monday, March 16, Liebeler wrote McMonigle, indicating that Space Data would need to involve the Arbitrator. McMonigle asked for a courtesy extension, which Liebeler granted.

---

[1] McMonigle's email also indicated that Space Data technical expert Sam Pullen would be paid and "a third vendor would be taken care of this week" Mr. Pullen has been paid, but Hosie Rice has never identified the third vendor, nor does Space Data know if that vendor has or has not been paid

3

On March 18, Liebeler submitted a letter to the Arbitrator, explaining that Hosie Rice's opening statement, testimony, and claims at the hearing were false and asking the Arbitrator to order Hosie Rice to pay NERA by March 25. Hosie Rice was given until March 26 to respond to Liebeler's letter. Late in the day on March 26, McMonigle asked for an extension until March 29 to "allow for a final effort to finalize payment [to NERA] without the need for [the arbitrator's] involvement." 3/26/20 McMonigle email to Robinson. Space Data did not object and the request was granted.

On Sunday, March 29, McMonigle wrote to "confirm that NERA was sent the balance due via two separate federal express shipments" and included tracking numbers for those shipments. It is noted that wire information appears on the face of the NERA invoices and there is no apparent reason or explanation why funds were not wired, particularly in light of Hosie Rice's two prior representations on February 14 and March 4 to Space Data that Hosie Rice was wiring NERA full payment.

Hosie Rice's representation that it had sent NERA the "balance due" was false. Rather than the "balance due," the two federal express shipments Hosie Rice sent to NERA on or about March 29 contained four checks (dated April 2) totaling $123,422.14, leaving a balance of approximately $440,000. See 4/8/20 Liebeler

4

email to McMonigle.  Liebeler sent another letter on April 10 explaining the situation.

McMonigle responded on April 11, claiming that Spencer Hosie's personal health issues prevented him from dealing with NERA payments and suggesting that incorrect payment amounts were the fault of Hosie Rice office manager Jerry Shaw.  On that basis, Hosie Rice asked for a further extension until April 27 to pay NERA in full and Hosie personally committed to resolve the NERA issues by that date.  McMonigle noted that if Hosie Rice did not fully resolve NERA issues by that date, that "we would expect you to consider issuing an appropriate order." 4/11/20 McMonigle email to Robinson.

Rather than pay NERA in full, as McMonigle's April 11 email indicated, Hosie Rice instead stopped payment on the four checks it had sent to NERA on or about March 29.  Hosie Rice did not notify NERA, counsel, or the Arbitrator that it had stopped payment on those checks.  On April 27, Liebeler found out from NERA that Hosie Rice had stopped payment on the April 2 checks on April 15, and submitted a letter to the Arbitrator on April 28 explaining the latest misrepresentation from Hosie Rice.

In response, McMonigle wrote, claiming that Hosie Rice had sent three additional checks – for $75,480.49, $225,000, and for $149,440 - and argued that since the debt had been paid, the Arbitrator need do nothing further.  On May 13,

5

NERA told Space Data's counsel that Hosie Rice stopped payment on the $225,000 check. The $75,480.49 check appears to have cleared and been deposited in NERA's account. NERA never received the alleged $149,440 check from Hosie Rice, but NERA did receive a wire on either May 14 or May 15, which appears to cover that check.

To date, Hosie Rice has not explained why payment on the $225,000 check was stopped. Hosie Rice still owes NERA $225,000.

Significantly, there is no dispute between Hosie Rice and NERA with respect to NERA's fees. Hosie Rice originally claimed to have already paid those fees long ago, and at no time has Hosie Rice quarrelled about the amount of those fees or their validity.

Instead, Hosie Rice has misrepresented the payment status of NERA fees to this Arbitrator at least six times: in its statement of claim; in its opening statement; in Rice's testimony; in McMonigle's March 29 letter (we "confirm that NERA was sent the balance due in two separate federal express shipments . . ."); in McMonigle's April 11 letter, in which Hosie promised to fully resolve the problem by April 27; and in McMonigle's April 29 letter promising yet again that full payment had been made when it had not. It is likewise troubling that Hosie Rice did not notify Space Data's counsel or the Arbitrator that Hosie Rice stopped

payment on the four April 2 checks and the $225,000 check to which McMonigle

refers in his April 29 correspondence.

It is similarly apparent that the subject of the NERA invoices was not

addressed candidly during the course of the litigation.  In September of 2018,

Hosie wrote Jerry Knoblach, asking him to pay Hosie Rice so that Hosie Rice

could in turn pay NERA.  For example, on September 12, Hosie wrote to

Knoblach: "On funding:  we are about to get a big bill from NERA.  And we will

have to pay it before the report issues.  So too Pullen.  Since we cannot close the

revolver, my firm is [not] capable of deficient funding any longer.  So:  it is

imperative that [Space Data] pay the remaining amount due ASAP.  Please

understand that this is most serious.  Dire."  In specific reliance on that request,

Space Data wired $100,000 to Hosie Rice the next day and then another

$282,723.43 on October 1.  Ex. 253, at HR004051.  Space Data paid Hosie Rice

another $50,000 on October 31, for a total of $432,723.43 – only about a third of

which was paid to NERA.

Hosie Rice's resolution of the NERA account necessarily impacts Space

Data.  Space Data's merits claims against Google are currently on appeal.  If Space

Data were to convince the Federal Circuit to reverse the trial court's grant of

summary judgment against Space Data and remand the case for trial, Space Data

will need NERA's expert testimony on damage issues.  Moreover, if Hosie Rice

7

never pays NERA, Space Data is at risk for NERA's unpaid fees. Hosie Rice's failure to pay NERA is itself part of the dispute between Hosie Rice and Space Data, and is properly before the Arbitrator.

The JAMS streamlined rules controlling this dispute instruct that jurisdictional and arbitrability disputes shall be submitted to and ruled on by the Arbitrator. Rule 8(c). In addition, California law affords substantial deference to both an arbitrator's determination as to the scope of his or her authority, as well as to the arbitrator's choice of a remedy. *Hightower v. Superior Court*, 104 Cal. Rptr. 2d 209, 221–22 (Cal. App. 2001). I find that consideration of this post-hearing issue, therefore, is appropriate and consistent with the "broad authority" granted by the applicable rules. *See id.* at 226.

Based on the correspondence between Torgerson and McMonigle on January 30, 2020 (attached), I find that the $4 million released to Hosie Rice from the ████████ ████████t was released in trust and on Space Data's behalf for the sole purpose of immediately paying vendors. I further find that Space Data has raised a *prima facie* claim that Hosie Rice violated the terms of that trust by not using that $4 million to pay NERA immediately and otherwise satisfy any other obligations to any vendors Hosie Rice retained on Space Data's behalf during the litigation. Instead, Hosie Rice has delayed payment and repeatedly misrepresented what it did with these monies for almost four months. Hosie Rice has had multiple

8

opportunities to explain its conduct and/or make good on its representations, and has failed to do either. I do explicitly find, however, that there is no reason to believe that Long & Levit LLP, Hosie Rice's counsel, is responsible for these failures and misrepresentations; rather, the responsibility for such lies with Hosie Rice.

As the Supreme Court of California has observed, "[t]he misappropriation of client funds alone constitutes a serious ethical and moral violation, breaches the high duty of loyalty which an attorney owes to his clients, violates basic principles of honesty, and puts in peril the public's confidence in the legal profession." *Stevens v. State Bar*, 794 P.2d 925, 929 (Cal. 1990). These facts suggest that Hosie Rice has violated its duty of loyalty by causing ████████t funds held in trust for the payment of Space Data's vendors to be directed elsewhere. Such conduct is particularly concerning where Hosie Rice previously represented that such funds had already been advanced on Space Data's behalf. Space Data is entitled to determine the precise disposition of funds Hosie Rice was to disburse on Space Data's behalf.

As I considered in the Interim Award, a lawyer engaging in clear and serious violation of duty to a client may be required to forfeit some or all of the lawyer's compensation for the matter. *See Sheppard, Mullin, Richter & Hampton, LLP v. J-M Manufacturing Co., Inc.*, 425 P.3d 1, 19 (Cal. 2018) (citing section 37 of the

9

Restatement Third of Law Governing Lawyers).  Forfeiture is an equitable remedy, which also serves as a deterrent to future misconduct.  *Id.* at 20.  Here, I find that a partial forfeiture is an appropriate sanction for the false statements Hosie Rice made during the arbitration and following, both to Space Data and to this Arbitrator.

Based on the foregoing, and having reviewed Space Data's proposed findings and order, the objections thereto by Hosie Rice, and Space Data's responses to both the first and amended findings and orders as well as Hosie Rice's objections, it is hereby ordered:

(i)     Hosie Rice shall pay, by wire, NERA's full outstanding balance by close of business on Friday, June 12, 2020, and copy counsel on the wire transmittal the same day.

(ii)    Hosie Rice shall pay Space Data the attorney fees it has incurred in this case since February 1, 2020, in a specific amount to be requested by Space Data by Friday, May 29, 2020, to compensate Space Data for the time and effort to identify Hosie Rice's misconduct and get vendors paid.

10

(iii)   Consistent with the agreement of Hosie Rice through its counsel, Hosie Rice shall also pay both sides' share of the Arbitrator's fees for her continued work on this case post-hearing.

(iv)   By Friday, June 12, 2020, Hosie Rice shall provide to Space Data a complete list and contact information for each and every vendor Hosie Rice engaged on behalf of Space Data over the course of the Google litigation, and a statement of each current account balance.

(v)   Hosie Rice shall provide a full and complete accounting of the $8M in ███████ ████████ funds, from the moment of receipt of the funds ████████ ███████ through the present day, to include full records from the account into which the $8 million was deposited and each and every account to which any of the funds were transferred at any time, along with records showing any and all withdrawals from any and all of those accounts within the control of Hosie Rice or either of its partners.  Hosie Rice shall produce these records by Friday, June 12, 2020.

(vi)   If Hosie Rice does not comply with the above, I will consider further remedies in Space Data's favor, as appropriate, including its requested

11

sanction of a monetary award to reflect the conduct described above.

It is so ordered.

Hon. Sue L. Robinson (ret.)
May 26, 2020

CORE 9990000 7115 159457740 1

# EXHIBIT 6

**Milliken, Christy M.**

| | |
|---|---|
| **From:** | Torgerson, Robert |
| **Sent:** | Thursday, January 30, 2020 5:24 PM |
| **To:** | 'McMonigle, Dave'; Sullivan, John |
| **Cc:** | Liebeler, Eric C.; Milliken, Christy M.; Woodruff, Jon M. |
| **Subject:** | Space Data/ Hosie Rice |

Dave, thanks for the call back and discussion a few minute ago.  I understand that Hosie Rice has decided not to pursue any issue regarding the arbitration award.

We discussed the unpaid HR vendors issue.  I will double check this with Space Data, but it should work fine to distribute the funds in the HR trust account to both sides (split evenly, including any interest) at this time – so long as the portion of funds necessary to pay those unpaid vendors (NERA, Pullen, etc.) are held in trust for immediately use and full payment solely to those vendors.  For that purpose, it makes sense to have a complete list of the unpaid HR vendors and corresponding unpaid amounts so that we can mutually agree on the amount from HR's portion of funds that will be held in trust for that payment to those vendors.  Could you please provide that list to us for review?

Many thanks.  Bob T.


Robert H. Torgerson
Partner
Minneapolis
612.335.1810
x51810

---

**From:** McMonigle, Dave <dmcmonigle@longlevit.com>
**Sent:** Thursday, January 30, 2020 1:49 PM
**To:** Torgerson, Robert <Robert.Torgerson@stinson.com>; Sullivan, John <jsullivan@longlevit.com>
**Cc:** Liebeler, Eric C. <eric.liebeler@stinson.com>; Milliken, Christy M. <christy.milliken@stinson.com>; Woodruff, Jon M. <jon.woodruff@stinson.com>
**Subject:** RE: Space Data/ Hosie Rice

Bob, just getting a confirmation from HR and should be able to update status in a few.


David S. McMonigle

**LONG & LEVIT LLP**

415-438-4555

---

**From:** Torgerson, Robert [mailto:Robert.Torgerson@stinson.com]
**Sent:** Thursday, January 30, 2020 11:47 AM
**To:** McMonigle, Dave; Sullivan, John
**Cc:** Liebeler, Eric C.; Milliken, Christy M.; Woodruff, Jon M.
**Subject:** Space Data/ Hosie Rice

Thanks Dave.  John, please let us know asap.  Regards, Bob T.

# EXHIBIT 7

**Milliken, Christy M.**

| | |
|---|---|
| **From:** | McMonigle, Dave <dmcmonigle@longlevit.com> |
| **Sent:** | Thursday, February 20, 2020 10:27 AM |
| **To:** | Liebeler, Eric C. |
| **Cc:** | Torgerson, Robert; Milliken, Christy M.; Woodruff, Jon M. |
| **Subject:** | RE: Vendor Payments |

**External Email – Use Caution**

Correction – wire to Nera tomorrow. He is meeting with Pullen early next week to address and pay. It was a single lump sum bill that came in delayed so he needs to discuss it with him before finalizing. Third vendor will be taken care of this week.

David S. McMonigle

**LONG & LEVIT LLP**

415-438-4555

**From:** McMonigle, Dave
**Sent:** Thursday, February 20, 2020 7:17 AM
**To:** Liebeler, Eric C.
**Cc:** Torgerson, Robert; Milliken, Christy M.; Woodruff, Jon M.
**Subject:** RE: Vendor Payments

Spencer has been sick. I am not sure he has even released the funds to his firm yet, we haven't been in touch until yesterday evening when he said he will pay NERA today and a third vendor "a word document vendor," whatever that is. Will get you an update re pullen.

Re huff and puffs, our turn - where are we with Magna? We want to close out our billings and that is a big outstanding number at this point that is holding things up.

David S. McMonigle

**LONG & LEVIT LLP**

415-438-4555

**From:** Liebeler, Eric C. [mailto:eric.liebeler@stinson.com]
**Sent:** Wednesday, February 19, 2020 8:00 AM
**To:** McMonigle, Dave
**Cc:** Torgerson, Robert; Milliken, Christy M.; Woodruff, Jon M.
**Subject:** Vendor Payments

Dave:

I understand from Jerry that NERA has not yet been paid as of yesterday. As I've indicated to you, we need to see confirmations that NERA and Pullen have been paid, and the idea was to release the escrow so that Hosie Rice could make those payments.

1

I don't want to huff and puff, but unless we see confirmation that those payments have been made in the very near term, we're going to have to raise this with Judge Robinson.

Please let me know as a matter of urgency where this stands.

Thanks

Eric
**Eric C. Liebeler**
Partner

STINSON LLP
1775 Pennsylvania Avenue NW, Suite 800
Washington, DC 20006-4605
Direct: 202.728.3006 \ Mobile: 202.999.6483 \ Bio

Assistant: Catherine Scott \ 202.728.3028 \ catherine.scott@stinson.com

**STINSON.COM**
This communication (including any attachments) is from a law firm and may contain confidential and/or privileged information.  If it has been sent to you in error, please contact the sender for instructions concerning return or destruction, and do not use or disclose the contents to others.

# EXHIBIT 8

**Milliken, Christy M.**

| | |
|---|---|
| **From:** | McMonigle, Dave <dmcmonigle@longlevit.com> |
| **Sent:** | Wednesday, March 04, 2020 12:57 PM |
| **To:** | Liebeler, Eric C. |
| **Cc:** | Torgerson, Robert; Milliken, Christy M. |
| **Subject:** | RE: |

**External Email – Use Caution**

Sorry, travelling out of touch with folks in SF. Will respond today to confirm but my understanding is final NERA bill was sent to HR and they are reviewing and wiring this week. Again, will confirm that is status when I hear.

David S. McMonigle

LONG & LEVIT LLP

415-438-4555

**From:** Liebeler, Eric C. [mailto:eric.liebeler@stinson.com]
**Sent:** Wednesday, March 04, 2020 7:48 AM
**To:** McMonigle, Dave
**Cc:** Torgerson, Robert; Milliken, Christy M.
**Subject:**

Dave,

Having not heard from you in response to my traffic from both Monday and yesterday, I'm going to have to write to Judge Robinson tomorrow to get Hosie Rice to confirm that all vendors have been paid and all liens lifted. As I've mentioned, I don't want to do that, but at this point I don't have much choice.

Can you identify the holdup or otherwise assist?

Thanks.

1

 Eric

**Eric C. Liebeler**
Partner

STINSON LLP
1775 Pennsylvania Avenue NW, Suite 800
Washington, DC 20006-4605
Direct: 202.728.3006 \ Mobile: 202.999.6483 \ Bio

Assistant: Catherine Scott \ 202.728.3028 \ catherine.scott@stinson.com

**STINSON.COM**

This communication (including any attachments) is from a law firm and may contain confidential and/or privileged information. If it has been sent to you in error, please contact the sender for instructions concerning return or destruction, and do not use or disclose the contents to others.

# EXHIBIT 9

**Milliken, Christy M.**

| | |
|---|---|
| **From:** | McMonigle, Dave <dmcmonigle@longlevit.com> |
| **Sent:** | Thursday, March 26, 2020 7:38 PM |
| **To:** | Sue L. Robinson; Liebeler, Eric C. |
| **Cc:** | Elizabeth Magana; Sullivan, John; Torgerson, Robert; Milliken, Christy M.; Woodruff, Jon M. |
| **Subject:** | RE: Hosie Rice LLP v. Space Data, JAMS No. 1100106722 |

**External Email – Use Caution**

Judge Robinson,

We respectfully request an extension of time to respond to this weekend.  We had hoped to reply with confirmation of payment today, but our firm can only state that it is under the impression that the NERA fees will be paid this week and we can put this matter behind us.   There have been complications in the past month plus of a personal, professional, and now national nature, and we respect SDC's dissatisfaction with the delay.  We are not trying to achieve a further delay with this request, only allow for a final effort to finalize payment without the need for your involvement.  We do not anticipate a lengthy substantive response to Mr. Liebeler's below communication as it is a relatively fair recitation of the parties efforts post-award.  But based on where we are we would request an extension of your below timeframes for our response to this weekend so all can have our limited substantive response in their inbox Monday morning.  Since it will not raise significant substantive disagreements, two days should be ample for Mr. Liebeler to reply or elect to submit the matter for your decision.

Thank you all for your patience and consideration.

Dave


David S. McMonigle
LONG & LEVIT LLP
415-438-4555

---

**From:** Sue L. Robinson [mailto:srobinson@farnanlaw.com]
**Sent:** Thursday, March 19, 2020 5:26 AM
**To:** Liebeler, Eric C.
**Cc:** Elizabeth Magana; McMonigle, Dave; Sullivan, John; Torgerson, Robert; Milliken, Christy M.; Woodruff, Jon M.
**Subject:** Re: Hosie Rice LLP v. Space Data, JAMS No. 1100106722

Dear All:  Before responding to Mr. Liebeler's email request, I would like to hear from Hosie Rice on or before March 26.  Mr. Liebeler, you can file a reply if you choose, by March 31.  Hoping you all are staying well.  Best, Judge Robinson

Sent from my iPad


On Mar 18, 2020, at 6:35 PM, Liebeler, Eric C. <eric.liebeler@stinson.com> wrote:

Dear Judge Robinson:

# EXHIBIT 10

**Milliken, Christy M.**

_____

| | |
|---|---|
| **From:** | McMonigle, Dave <dmcmonigle@longlevit.com> |
| **Sent:** | Sunday, March 29, 2020 10:35 PM |
| **To:** | Sue L. Robinson |
| **Cc:** | Liebeler, Eric C.; Elizabeth Magana; Sullivan, John; Torgerson, Robert; Milliken, Christy M.; Woodruff, Jon M.; McMonigle, Joseph |
| **Subject:** | RE: Hosie Rice LLP v. Space Data, JAMS No. 1100106722 |

**External Email – Use Caution**

Judge Robinson and Counsel,

I can confirm that NERA was sent the balance due via two separate federal express shipments.  I believe we all understand this to be the last of the vendor payments that needed to be made by Hosie Rice related to the underlying case.  The FedEx tracking numbers are 770126154376 and 770126152752 showing shipment to the NERA office in New York.

Given that progress, we believe the best course is to wait until NERA can confirm receipt and process payment before we can confirm that this matter can be laid to rest.  If there are concerns with the payments sent to NERA after receipt, we would submit a brief response to Mr. Liebeler's email below and address any issues with the payments, but we are very hopeful that will not be necessary.

Thank you again for your consideration.

Best regards,
Dave

David S. McMonigle

LONG & LEVIT LLP

415-438-4555

_____

**From:** Sue L. Robinson [mailto:srobinson@farnanlaw.com]
**Sent:** Friday, March 27, 2020 5:17 AM
**To:** McMonigle, Dave
**Cc:** Liebeler, Eric C.; Elizabeth Magana; Sullivan, John; Torgerson, Robert; Milliken, Christy M.; Woodruff, Jon M.
**Subject:** Re: Hosie Rice LLP v. Space Data, JAMS No. 1100106722

Dear Mr. McMonigle:  Without objection from Space Data, your request for an extension is granted.  Stay well all.  Best, Judge Robinson

On Mar 26, 2020, at 7:38 PM, McMonigle, Dave <dmcmonigle@longlevit.com> wrote:

Judge Robinson,

# EXHIBIT 11

**Milliken, Christy M.**

---

| | |
|---|---|
| **From:** | McMonigle, Dave <dmcmonigle@longlevit.com> |
| **Sent:** | Saturday, April 11, 2020 1:53 PM |
| **To:** | Sue L. Robinson; Liebeler, Eric C. |
| **Cc:** | Elizabeth Magana; Sullivan, John; Torgerson, Robert; Milliken, Christy M.; McMonigle, Joseph |
| **Subject:** | RE: Hosie Rice LLP v. Space Data, JAMS No. 1100106722 |

External Email – Use Caution

Judge Robinson,

We fully understand Mr. Liebeler and Space Data's frustration with the fact that the NERA invoice issue is unresolved. In my last communication in March, I understood the monies sent to NERA were to address the balance due, which is what prompted my choice of the word "confirm." The balance of that communication addressed the possibility that there would be issues with the payments, which has come to fruition. Though my email addressed the circumstance where this issue was not resolved by the payments sent, I regret the use of the word confirm and do not quarrel with Mr. Liebeler's characterization of my email as being inaccurate given NERA's balance due was not satisfied.

That said, Hosie Rice requests that you refrain from issuing an order on Monday, April 13, 2020, and instead, for the reasons set forth below, allow Mr. Hosie until Monday, April 27, 2020 to pay NERA. Mr. Hosie has authorized us to disclose private medical information, but asked that we remind all parties that the arbitration is a confidential proceeding and nothing should be disclosed to any third parties. We also acknowledge that Mr. Liebeler did not have the benefit of this information when he sent his email on Wednesday; we were not allowed to disclose it until now.

Earlier this year, Mr. Hosie began to experience health issues, that he believed were kidney-related. Unfortunately, he has been diagnosed with renal cell carcinoma, a malignant kidney cancer found in the lining of small tubes in the kidney. More unfortunate is last month's news that the cancer has metastasized and is now stage IV lung cancer. Needless to say, Mr. Hosie, who runs all aspects of the law firm, has not been focused on the matters at hand for the last two months; he is fighting for his life. He is currently undergoing active clinical treatment (the specific therapy includes the administration of PT2977 and Cabozantinib) at Cedars-Sinai Hospital in Los Angeles, California, where he will spend the next 5-6 weeks being treated by Dr. Robert Figlin and Dr. Peter Julien.

If his illness was not disruptive enough, Mr. Hosie's efforts to address the outstanding NERA invoices were complicated by the shelter-in-place orders in mid-March and Mr. Hosie's prior decision to self-quarantine out-of-state given his lung condition and the heightened risk of COVID-19 to individuals over the age of 60 with medical conditions. Although Mr. Hosie has been out of the office, he instructed his office manager, Jerry Shaw, to send checks to NERA. We understood that Mr. Shaw paid the entire amount owed to NERA the last week of March, and that is why I communicated that to you and Mr. Liebeler on March 29, 2020. Clearly, it appears that Mr. Shaw did not pay all of the outstanding invoices. Since receiving Mr. Liebeler's email on Wednesday afternoon regarding the fact that Hosie Rice had not paid all the invoices, we have been attempting to connect with Mr. Hosie to determine the reason for the discrepancy. We were finally able to connect with him yesterday afternoon following his treatment in Los Angeles. We do not want to risk a claim of privilege waiver, but can state that Mr. Hosie runs the office and his absence, combined with the shelter in place order, likely contributed to only certain invoices being addressed.

With regard to the arbitration testimony, we understood that NERA had been paid monies as advanced costs, that Hosie Rice had incurred significant costs on the matter, it sought payment from its client SDC to address shortfalls in payment inclusive of these costs, and that it has at all times acknowledged the firm, and not SDC, is obliged to NERA. In fact, I

believe that the accounting summary attached to Mr. Liebeler's email reflects this.  I also would note, at the risk of relitigating our case, that SDC spent years in arrears to Hosie Rice as the firm litigated the matter and incurred costs on SDC's behalf.  With regard to the arbitration testimony, consistent with the duty of candor, we presented testimony that we believed to be true and accurate, and we appreciate Mr. Liebeler not making an accusation that we acted otherwise.

Moreover, neither Mr. Hosie, nor to our knowledge NERA, has ever indicated that Space Data was responsible for these fees.  To the extent Space Date claims that they may need NERA services in the underlying case against Google in the future, we would note that NERA was providing expert testimony with regards to damages.  Before damages are relevant to the underlying case, Space Data will have to convince an appellate court to overturn Judge Freeman's summary judgment order.  Space Data appears to acknowledge that it is not harmed by the delayed payment, Mr. Liebeler did not cite to any particular prejudice in his communication.

Moving forward and addressing Your Honor's request for Hosie Rice to make extraordinary efforts, Mr. Hosie will do what is necessary without risking his treatment that will last the next 5-6 weeks in Los Angeles.  To finalize the NERA issue, Mr. Hosie has committed to travel to San Francisco one day in the next two weeks to address and resolve the NERA invoice issue.  He is otherwise committed to his shelter in place and treatments in Los Angeles.  Given the extraordinary circumstances and effort Mr. Hosie will undertake to resolve the issue, we ask that your Honor refrain from issuing the order requested below and provide Mr. Hosie until April 27, 2020 to resolve the matter; if course, if NERA is not paid by that date, we would expect you to consider issuing an appropriate order.  If NERA is paid, as we anticipate it will be, we request that the Court not order that Hosie Rice, as Mr. Liebeler demands, provide a list of every vendor the firm engaged and payments made to each one; provide an accounting of the $4 million in funds disbursed to Hosie Rice out of the escrow, or award Mr. Liebeler's firm $50,000.  The Stinson firm has not spent significant time on this issue such that a dramatic monetary sanction would be appropriate.  We note that in Mr. Liebeler's March 30, 2020 email, he claimed that he had spent ten hours on this matter over the last two months.  Nor is punishing Mr. Hosie appropriate in light of the facts above.  However, Hosie Rice is agreeable to paying the entire amount of your Honor's fees for having to address this issue.

We very much appreciate your consideration of the above, Your Honor, and everyone's commitment to the confidentiality of this proceeding and the personal medical information detailed above.

Respectfully,

Dave McMonigle

David S. McMonigle

415-438-4555

-----Original Message-----
From: Sue L. Robinson [mailto:srobinson@farnanlaw.com]
Sent: Friday, April 10, 2020 5:27 AM
To: Liebeler, Eric C.
Cc: Elizabeth Magana; McMonigle, Dave; Sullivan, John; Torgerson, Robert; Milliken, Christy M.
Subject: Re: Hosie Rice LLP v. Space Data, JAMS No. 1100106722

Dear Mr. Liebeler:  I have reviewed your latest email and am prepared to comply with your request on Monday (April 13) absent some extraordinary effort on the part of Hosie Rice to fulfill its obligations by that time.  I trust I will be informed of such.  Stay well, all.  Best, Judge Robinson

Sent from my iPad

# EXHIBIT 12

**Milliken, Christy M.**

| | |
|---|---|
| **From:** | McMonigle, Dave <dmcmonigle@longlevit.com> |
| **Sent:** | Wednesday, April 29, 2020 2:03 AM |
| **To:** | Sue L. Robinson |
| **Cc:** | Liebeler, Eric C.; emagana@jamsadr.com; Sullivan, John; Torgerson, Robert; Milliken, Christy M. |
| **Subject:** | Re: Hosie Rice LLP v. Space Data, JAMS No. 1100106722 |
| **Attachments:** | CCF04282020.pdf; ATT00001.htm; scan0005.pdf; ATT00002.htm; 20200427140042354.pdf; ATT00003.htm; 20200427142118340.pdf; ATT00004.htm |

**External Email – Use Caution**

Judge Robinson and Counsel,

We understand that the process for addressing the NERA invoices has not been smooth, but we hope the attached and below represents that we have brought it to conclusion and that the time has come for the parties to move forward and on to other business. It was our hope to have more time to thoughtfully consider how to respond to the many points and accusations made, but we recognize we needed to first immediately update you as to status.

I believe counsel for Space Data agrees that there was a $128,000 payment to NERA on March 8, 2020.  We attach a statement of account from NERA dated 3/24/2020 reflecting that payment and an amount due of just over $449,000, including interest.  It also appears accurate that the checks dated 4/2 (Checks No. 12025-12028) totaling roughly $123,000 were cancelled, which occurred after Hosie Rice had issued checks addressing some of the same invoices.  We do not know why that occurred, but are informed that with Mr. Hosie's illness, the Shelter-In-Place, closure of the office, and Mr. Hosie's lack of access to the firm's accounting software while in Los Angeles, there have been difficulties related to communication and accounting as we have attempted to resolve this issue.  This is not perfect and without more information I can only focus on how it was resolved.

The replacement check for the first three invoices for roughly 75,000 was cashed and has cleared, leaving roughly $375,000 as the amount due to NERA.  Sent this week (yesterday and today) are two additional checks totaling that amount, one for 225,000 and one for just under 150,000.  We believe these address the amount due in its entirety and ask that Mr. Liebeler confirm clearance of these checks when then arrive and NERA processes the payment and that Hosie Rice is now current and relieved of any further obligation to NERA.

We would ask that we allow for this confirmation and the parties a chance to meet and confer before we determine whether its necessary to have the parties continue to litigate over existing grievances.  We know there is discord, but Space Data has never had an obligation NERA, Hosie Rice paid the obligation as it has always promised it would do, and Space Data received the funds it was entitled pursuant to the award From the firm's trust account.  We will not address each point at this juncture, but will disagree that miscommunications in this process support allegations regarding breaches of fiduciary obligations or breaches of trust.  We also find it inappropriate for Mr. Liebeler to opine that others within Hosie Rice should have managed this issue over the past weeks, especially Ms. Rice when he knows she is supporting her ailing husband in Los Angeles.

We apologize for our firm's inability to communicate accurate information in recent emails regarding the status of payment, but believe we have navigated difficult times to bring the NERA issue to a conclusion. In our view, it is time to move forward and on to other business.

We are of course available to discuss any of the above.

Very respectfully,

Dave

# EXHIBIT 13

**Milliken, Christy M.**

| | |
|---|---|
| **From:** | Liebeler, Eric C. |
| **Sent:** | Tuesday, April 28, 2020 2:47 PM |
| **To:** | srobinson@farnanlaw.com; emagana@jamsadr.com |
| **Cc:** | McMonigle, Dave; Sullivan, John; Torgerson, Robert; Milliken, Christy M. |
| **Subject:** | RE: Hosie Rice LLP v. Space Data, JAMS No. 1100106722 |
| **Attachments:** | Hosie Rice_check stop pays.pdf |

Dear Judge Robinson,

On March 29, Hosie Rice "[C]onfirm[ed] that NERA was sent the balance due via two separate federal express shipments. I believe we all understand this to be the last of the vendor payments that needed to be made by Hosie Rice related to the underlying case.  The FedEx tracking numbers are 770126154376 and 770126152752 showing shipment to the NERA office in New York.

As we explained in our April 10 note, that representation was false: the payment instead consisted of just $123,422.14. Our April 10 note asked for several forms of relief.  Hosie Rice responded by asking for more time to pay NERA, specifically until April 27: "That said, Hosie Rice requests that you refrain from issuing an order on Monday, April 13, 2020, and instead, for the reasons set forth below, allow Mr. Hosie until Monday, April 27, 2020 to pay NERA.… Given the extraordinary circumstances and effort Mr. Hosie will undertake to resolve the issue, we ask that your Honor refrain from issuing the order [Space Data] requested below and provide Mr. Hosie until April 27, 2020 to resolve the matter; if [sic]course, if NERA is not paid by that date, we would expect you to consider issuing an appropriate order."

We found out yesterday from NERA that Mr. Hosie's "extraordinary efforts" actually consisted of stopping payment on the four checks we discussed in our April 10 letter. According to the bank, the stop payment order was made on April 15, just four days after counsel's letter to your Honor pleading for more time to pay NERA.  We attach copies of the stop payment orders.  Since then, we have not heard either from Hosie Rice or the firm's counsel.  The balance Hosie Rice still owes NERA is $458,861.97, plus additional interest.

As we wrote on April 10 and which Hosie Rice's counsel confirmed on April 11, Space Data agreed to release the escrow of the funds received ▮▮▮▮▮ on the express condition that Hosie Rice pay any and all outstanding bills from vendors Hosie Rice retained in the Space Data matter.  These funds were held in trust for Space Data and were not Hosie Rice's to spend as it wished.  It appears that Mr. Hosie, Ms. Rice and their firm have violated that trust.

Space Data respectfully asks Your Honor for an order instructing Hosie Rice to a) identify the signer of the four checks attached to Space Data's April 10 email; b) explain why the checks were stopped; c) provide a full accounting of the ▮▮▮▮ funds Hosie Rice claims to have held in escrow from the time ▮▮▮▮e transferred $8 million to Hosie Rice until today; d) provide Space Data with a list of every vendor the firm retained on behalf of Space Data during the litigation; e) provide a full payment history for each of those vendors; f) confirm that Hosie Rice will pay all JAMS fees for your Honor to work on these issues (as Mr. McMonigle's April 11 letter suggested); and g) award Space Data fees in an amount to be shown, both to compensate it for time spent by counsel but also to deter Hosie Rice from what appear to be continuing and serious breaches of the firm's fiduciary and ethical duties.

Moreover, Hosie Rice's April 11 letter acknowledges that if NERA is not paid by April 27, an order from your Honor is appropriate.

Given this record, it appears that Hosie Rice has sought once again to deceive both Space Data and this Court.  After we obtain the records we have asked for, we intend to ask your Honor for appropriate modifications to the interim award.

Sincerely

Eric C. Liebeler

Eric C. Liebeler
Partner
Washington
202.728.3006
x63006

# EXHIBIT 14

**Milliken, Christy M.**

| | |
|---|---|
| **From:** | Liebeler, Eric C. |
| **Sent:** | Tuesday, May 12, 2020 5:33 PM |
| **To:** | McMonigle, Dave; srobinson@farnanlaw.com; emagana@jamsadr.com; Sullivan, John |
| **Cc:** | Torgerson, Robert; Milliken, Christy M. |
| **Subject:** | RE: Hosie Rice LLP v. Space Data, JAMS No. 1100106722 |
| **Attachments:** | Hosie Rice 225K stop pay.pdf |

Dear Judge Robinson:

Hosie Rice has not paid NERA and continues to make material misrepresentations to Your Honor.

On April 29, two days after the deadline for Hosie Rice to have paid NERA in full, your Honor wrote:

"In trying to balance the equities, I have concluded that the first order of business is to see that NERA is paid – regardless of my questionable jurisdiction over the matter – since the untimely payment of the NERA invoices is the genesis of the parties' ongoing, post-award dispute.  If the checks identified by Mr. McMonigle clear and the NERA account is satisfied, then I will address any remaining issues Mr. Liebeler has to present, with input from Hosie Rice.  If the checks identified by Mr. McMonigle do not clear, I will ask Mr. Liebeler to draft an order for my consideration (including a basis for the order)."

Hosie Rice claimed to have satisfied its payment obligations to NERA by means of three checks:  one for $75,480.89, which NERA received on April 14; one sent via USPS on April 27 for $225,000, and another one sent via USPS on April 28 for $149,440.  These are the checks Mr. McMonigle identified as satisfying Hosie Rice's obligations and to which Your Honor referred to in the quotation above.

NERA tells us that the $75,480.89 check cleared.  NERA told us last week that it had received the $225,000 check from Hosie Rice, but had not received the $149,440 check.  This morning, NERA told us that Hosie Rice stopped payment on the $225,000 check.  I attach a copy of that stop payment order.  So far as we know, NERA has not yet received the check for $149,440 which Hosie Rice claims to have sent on April 28.  We have asked Hosie Rice's counsel for tracking information on that check several times, but counsel has not responded.

Thus, Hosie Rice still owes NERA $374,440 plus interest.  We note that we first raised this issue with Your Honor in mid-March, almost two months ago.

Per Your Honor's prior guidance, I suggest that Space Data submit a proposed order for your consideration by close of business on Friday, May 15.

Sincerely,

Eric C. Liebeler

Eric C. Liebeler
Partner
Washington
202.728.3006
x63006

# EXHIBIT 15

**Milliken, Christy M.**

| | |
|---|---|
| **From:** | Liebeler, Eric C. |
| **Sent:** | Wednesday, March 18, 2020 6:35 PM |
| **To:** | srobinson@farnanlaw.com; Elizabeth Magana |
| **Cc:** | McMonigle, Dave; Sullivan, John; Torgerson, Robert; Milliken, Christy M.; Woodruff, Jon M. |
| **Subject:** | Hosie Rice LLP v. Space Data, JAMS No. 1100106722 |

Dear Judge Robinson:

Although Space Data has tried extensively to work out all remaining issues with Hosie Rice, one issue remains.  Despite many requests from Space Data, Hosie Rice has refused to pay monies due to expert witnesses Hosie Rice retained for the case, and currently owes Dr. Christine Meyer of NERA $459,861.97.

More specifically, Hosie Rice retained experts directly during the underlying litigation, including damage expert Dr. Christine Meyer of NERA.  Insofar as Space Data is aware, Hosie Rice signed a retention agreement directly with NERA.  Hosie Rice did not copy Space Data on that retention agreement and to date, Space Data has never seen it.  During the arbitration, Hosie Rice claimed that it had advanced significant costs on Space Data's behalf, specifically including NERA's fees.  For example, Diane Rice testified that Hosie Rice advanced NERA's bills:

Q: (Mr. McMonigle):    Okay.  If I could direct you to the next page [of exhibit 253], which is HR004140.

Q: (Ms. Rice):    Yes.

Q:    And it references additional charges?

A:    Yes.

Q:    And what are the additional charges in general?

A:    Sure.  I mentioned the Disco charge, and for that month it was $11,445.  And that's the data hosting charge.  And we weren't doing – we had already done significant work in Disco,  but that was what we were being charged for data document hosting at that time.  And –

Q:    How about the NERA charge?

A:    Yeah, NERA – so NERA is the company where our expert, Christine Meyer is employed, and so that was her fee.

Q:    **And is this representative of costs that were advanced by Hosie Rice on Space Data's behalf?**

A:    **Yes.**

In his opening statement, Mr. McMonigle claimed that Hosie Rice had advanced $1,635,549.51 of costs, much of which were expert fees.  Tr. 26:18-27:1 (McMonigle).  And during the arbitration, Hosie Rice was unable to identify any vendor that had not been paid.  Tr. 185:21-24 (Rice).  While the litigation with Google was ongoing, Hosie Rice repeatedly told Space Data that it was paying expert fees as the case went along.  Mr. Hosie wrote Mr. Knoblach on September 2, 2018, asking Space Data to pay Hosie Rice so Hosie Rice could pay a large bill he anticipated from NERA.  Mr. Hosie followed up on September 11 and then again on September 12, both times indicating that Space Data needed to pay Hosie Rice so

that Hosie Rice could in turn pay experts.  The September 12 traffic said: "On funding: we are about to get a big bill from NERA.  And we will have to pay it before the report issues.  So too Pullen.  Since we cannot close the revolver, my firm is no [sic:not] capable of deficient funding any longer.  So:  it is imperative that [Space Data] pay the remaining amount due ASAP.  Please understand that this is most serious.  Dire."  Shortly after, Space Data sent significant payments to Hosie Rice.

Throughout the case, Hosie Rice sent Space Data invoices showing that Hosie Rice had paid NERA's fees current.

But Mr. Hosie's emails, the Hosie Rice invoices, and Ms. Rice's testimony about advancing NERA's fees appear to be false:  NERA tells us that they have billed a little over $800,000 on the case and, as of the end of 2019, Hosie Rice had paid them $251,593.35.  Since then, NERA tells us that Hosie Rice made a single payment of $128,476.01 last month**, leaving a balance of $459,861.97**.  NERA completed its work by the end of 2018; Hosie Rice has left Space Data's damage experts in arrears for well over a year.

The Court's interim ruling contemplated that Hosie Rice either had already paid or would pay all pertinent vendors that Hosie Rice retained.  And Space Data agreed to release the escrowed ▮▮▮▮e funds in January so that Hosie Rice could do just that.  Hosie Rice has now had $4 million of ▮▮▮▮▮▮t money since January, but has refused to clear all vendor payments.  We have followed up with Mr. McMonigle repeatedly, but Hosie Rice has nether paid NERA in full nor explained what they have paid and when they will pay the rest.  Space Data therefore asks this Court to modify the interim order to instruct Hosie Rice to pay NERA's bills in full by a date certain – March 25, 2020 -- and provide Space Data with formal written confirmation that it has done so by that date.  Hosie Rice should have paid NERA's bills long ago, and its failure to do so or meaningfully respond to Space Data's inquiries about it justifies a fee award.  Space Data respectfully asks the Court to order Hosie Rice to pay $5,000 in fees for its failure timely to pay NERA and force Space Data's counsel to follow up repeatedly.

If Hosie Rice fails to do so, Space Data asks the Court to modify the final order to instruct Hosie Rice to pay the amounts due to NERA to Space Data, plus interest, plus fees, plus future fees spent to enforce the Court's award as necessary.

Very Truly Yours,

Eric Liebeler


Eric C. Liebeler
Partner
Washington
202.728.3006
x63006

# EXHIBIT 16

**Milliken, Christy M.**

| | |
|---|---|
| **From:** | Elizabeth Magana <EMagana@jamsadr.com> |
| **Sent:** | Tuesday, February 18, 2020 4:21 PM |
| **To:** | Liebeler, Eric C.; Torgerson, Robert; Milliken, Christy M.; Woodruff, Jon M.; Francis, Carrie M.; dmcmonigle@longlevit.com; JMcmonigle@longlevit.com; jsullivan@longlevit.com |
| **Cc:** | lmyers@longlevit.com |
| **Subject:** | RE: Hosie Rice LLP vs. Space Data Corporation - JAMS Ref No. 1100106722 - Final Award |

Dear Counsel,

Please note that Judge Robinson has rendered the Final Award; however, JAMS will issue the decision once all outstanding fees have been received. I'll reach out to the appropriate person.

Thank you for your patience.

As always, do not hesitate to contact me should you have any questions or concerns.

Best,
Liz


Liz Magaña
Case Manager, JAMS San Francisco

 Please consider the environment **before** printing this email.

---

**From:** Liebeler, Eric C. <eric.liebeler@stinson.com>
**Sent:** Tuesday, February 11, 2020 11:49 AM
**To:** Elizabeth Magana <EMagana@jamsadr.com>; Torgerson, Robert <Robert.Torgerson@stinson.com>; Milliken, Christy M. <christy.milliken@stinson.com>; Woodruff, Jon M. <jon.woodruff@stinson.com>; Francis, Carrie M. <carrie.francis@stinson.com>; dmcmonigle@longlevit.com; JMcmonigle@longlevit.com; jsullivan@longlevit.com
**Cc:** lmyers@longlevit.com
**Subject:** RE: Hosie Rice LLP vs. Space Data Corporation - JAMS Ref No. 1100106722

Liz,

Dave McMonigle and I spoke earlier today. On both clients' behalves, I'm authorized to say that the parties are working out a few final issues and do not believe Judge Robinson's assistance will be needed to complete that process; we hope to have those issues finalized by the end of this week.

Best regards,

Eric

**Eric C. Liebeler**
Partner

STINSON LLP
1775 Pennsylvania Avenue NW, Suite 800
Washington, DC 20006-4605
Direct: 202.728.3006 \ Mobile: 202.999.6483 \ Bio

Assistant: Catherine Scott  \  202.728.3028  \  catherine.scott@stinson.com

**STINSON.COM**
This communication (including any attachments) is from a law firm and may contain confidential and/or privileged information.  If it has been sent to you in error, please contact the sender for instructions concerning return or destruction, and do not use or disclose the contents to others.

**From:** Elizabeth Magana <EMagana@jamsadr.com>
**Sent:** Monday, February 10, 2020 7:21 PM
**To:** Torgerson, Robert <Robert.Torgerson@stinson.com>; Liebeler, Eric C. <eric.liebeler@stinson.com>; Milliken, Christy M. <christy.milliken@stinson.com>; Woodruff, Jon M. <jon.woodruff@stinson.com>; Francis, Carrie M. <carrie.francis@stinson.com>; dmcmonigle@longlevit.com; JMcmonigle@longlevit.com; jsullivan@longlevit.com
**Cc:** lmyers@longlevit.com
**Subject:** Hosie Rice LLP vs. Space Data Corporation - JAMS Ref No. 1100106722

**External Email – Use Caution**

Dear Counsel,

Judge Robinson would like to know whether counsel will require her assistance with calculating the final amounts. Please advise as soon as possible.

Thank you,
Liz



**Liz Magaña**
Case Manager

**JAMS -** *Local Solutions. Global Reach.*<sup>TM</sup>
Two Embarcadero Center| Suite #1500 | San Francisco, CA 94111
P: 415-774-2649 | F: 415-982-5287
**www.jamsadr.com**

Follow us on **LinkedIn** and **Twitter**.

 Please consider the environment **before** printing this email.

# EXHIBIT 17

**Milliken, Christy M.**

| | |
|---|---|
| **From:** | Liebeler, Eric C. |
| **Sent:** | Monday, February 24, 2020 7:53 AM |
| **To:** | Elizabeth Magana; Torgerson, Robert |
| **Cc:** | Adams, Kaleigh A. |
| **Subject:** | RE: Hosie Rice LLP vs. Space Data Corporation - JAMS Ref No. 1100106722 - Outstanding Balance |

Liz,

We have not, although we're not in an open dispute.  I'd ask that you give us this week to try to finish this off, and if we don't get it done by then, schedule a call with Judge Robinson.

Many thanks,

Eric

-----Original Message-----
From: Elizabeth Magana <EMagana@jamsadr.com>
Sent: Friday, February 21, 2020 7:35 PM
To: Liebeler, Eric C. <eric.liebeler@stinson.com>
Cc: Adams, Kaleigh A. <kaleigh.adams@stinson.com>
Subject: RE: Hosie Rice LLP vs. Space Data Corporation - JAMS Ref No. 1100106722 - Outstanding Balance

Mr. Liebeler,

I hope this e-mail finds you well.

Have the parties resolved their issues? And, if not shall I schedule a conference call with Judge Robinson?

Thank you,
Liz

Liz Magaña
Case Manager, JAMS San Francisco

⬛ Please consider the environment before printing this email.

-----Original Message-----
From: Liebeler, Eric C. <eric.liebeler@stinson.com>
Sent: Wednesday, February 19, 2020 3:12 PM
To: Elizabeth Magana <EMagana@jamsadr.com>
Cc: Adams, Kaleigh A. <kaleigh.adams@stinson.com>
Subject: Re: Hosie Rice LLP vs. Space Data Corporation - JAMS Ref No. 1100106722 - Outstanding Balance

Liz,

Receipt confirmed.  Issues as between Hosie Rice and Space Data are not yet fully resolved, and I will update on that issue as soon as I can.

Eric


Eric C. Liebeler
Partner

STINSON LLP
1775 Pennsylvania Avenue NW, Suite 800
Washington, DC 20006-4605
Direct: 202.728.3006 \ Mobile: 202.999.6483 \ Bio<https://www.stinson.com/people-EricLiebeler>

Assistant: Catherine Scott \ 202.728.3028 \ catherine.scott@stinson.com<mailto:catherine.scott@stinson.com>

STINSON.COM<http://www.stinson.com>

_____
From: Elizabeth Magana <emagana@jamsadr.com>
Sent: Wednesday, February 19, 2020 6:09 PM
To: eric.liebeler@stinson.com
Cc: kaleigh.adams@stinson.com
Subject: RE: Hosie Rice LLP vs. Space Data Corporation - JAMS Ref No. 1100106722 - Outstanding Balance

Mr. Liebeler,

Kindly confirm receipt and advise if JAMS can expect to receive payment later this week.

Thank you,
Liz

Liz Magaña
Case Manager, JAMS San Francisco

P Please consider the environment before printing this email.

From: Elizabeth Magana
Sent: Tuesday, February 18, 2020 1:29 PM
To: eric.liebeler@stinson.com
Subject: FW: Hosie Rice LLP vs. Space Data Corporation - JAMS Ref No. 1100106722 - Outstanding Balance
Importance: High

Mr. Liebeler,

Attached please find the itemized statement and the outstanding deposit request for your accounting department to process. As noted in my e-mail below, JAMS is unable to issue the Final Award at this time until all fees have been paid.

Please remit payment at your earliest opportunity.

Thank you in advance.

2

# EXHIBIT 18

**Milliken, Christy M.**

---

| | |
|---|---|
| **From:** | McMonigle, Dave <dmcmonigle@longlevit.com> |
| **Sent:** | Thursday, March 26, 2020 7:38 PM |
| **To:** | Sue L. Robinson; Liebeler, Eric C. |
| **Cc:** | Elizabeth Magana; Sullivan, John; Torgerson, Robert; Milliken, Christy M.; Woodruff, Jon M. |
| **Subject:** | RE: Hosie Rice LLP v. Space Data, JAMS No. 1100106722 |

**External Email – Use Caution**

Judge Robinson,

We respectfully request an extension of time to respond to this weekend.  We had hoped to reply with confirmation of payment today, but our firm can only state that it is under the impression that the NERA fees will be paid this week and we can put this matter behind us.   There have been complications in the past month plus of a personal, professional, and now national nature, and we respect SDC's dissatisfaction with the delay.  We are not trying to achieve a further delay with this request, only allow for a final effort to finalize payment without the need for your involvement.  We do not anticipate a lengthy substantive response to Mr. Liebeler's below communication as it is a relatively fair recitation of the parties efforts post-award.  But based on where we are we would request an extension of your below timeframes for our response to this weekend so all can have our limited substantive response in their inbox Monday morning.  Since it will not raise significant substantive disagreements, two days should be ample for Mr. Liebeler to reply or elect to submit the matter for your decision.

Thank you all for your patience and consideration.

Dave


David S. McMonigle
**LONG & LEVIT LLP**
415-438-4555

---

**From:** Sue L. Robinson [mailto:srobinson@farnanlaw.com]
**Sent:** Thursday, March 19, 2020 5:26 AM
**To:** Liebeler, Eric C.
**Cc:** Elizabeth Magana; McMonigle, Dave; Sullivan, John; Torgerson, Robert; Milliken, Christy M.; Woodruff, Jon M.
**Subject:** Re: Hosie Rice LLP v. Space Data, JAMS No. 1100106722

Dear All:  Before responding to Mr. Liebeler's email request, I would like to hear from Hosie Rice on or before March 26.  Mr. Liebeler, you can file a reply if you choose, by March 31.  Hoping you all are staying well.  Best, Judge Robinson

Sent from my iPad


On Mar 18, 2020, at 6:35 PM, Liebeler, Eric C. <eric.liebeler@stinson.com> wrote:

Dear Judge Robinson:

# EXHIBIT 19

**Milliken, Christy M.**

| | |
|---|---|
| **From:** | McMonigle, Dave <dmcmonigle@longlevit.com> |
| **Sent:** | Tuesday, May 19, 2020 12:00 PM |
| **To:** | Sue L. Robinson; Liebeler, Eric C. |
| **Cc:** | emagana@jamsadr.com; Sullivan, John; Milliken, Christy M.; Torgerson, Robert; 'Elizabeth Magana' |
| **Subject:** | RE: Hosie Rice LLP v. Space Data, JAMS No. 1100106722 |

**External Email – Use Caution**

Your Honor,

We apologize for delay, but have been waiting for approval of our response, which we just received moments ago.  We would ask the following be treated as objections for your consideration.

As we have in past communications, we accept that this has not been a smooth process and regret we have not been able to bring this matter to a conclusion.  We must however respond to Mr. Liebeler's proposed 11-page finding and order setting forth six different remedies, including an award of fees to Space Data plus an additional $100,000 punitive sanction, and object to certain portions based on the nature of this proceeding and a broader view of the facts.


Although we do not object to including a recitation of the post-arbitration communications regarding payments to NERA, we do not believe it is appropriate to only list the dates of Stinson communications in a vacuum.  We also do not believe it would be appropriate to for Your Honor to make findings regarding the veracity of statements made by Mr. McMonigle or Ms. Rice.  Specifically as to Mr. McMonigle, to make findings that counsel's statements in an arbitration are "false" six months after the arbitration occurred would serve no purpose other than to chill advocacy.  It would also encourage never ending litigation by encouraging parties to file motions seeking "findings" that counsel made false statements.  Space Data does not cite to any authority that would allow an arbitrator who has issued an award to revise her findings and the award based on a post-award dispute.  Your Honor can issue a ruling regarding this post-arbitration dispute without going back and making new "findings" that do not meaningfully advance this matter.

If your Honor is inclined to make findings regarding the veracity of the statements identified by Mr. Liebeler as false, we would ask that Your Honor consider the difference between statements made related to: (1) what occurred during the attorney client relationship; (2) the testimony and argument at the arbitration; and (3) what occurred after with regard to the payment of NERA's bill.  We recognize there are unexplained issues related to the payment of NERA, but disagree there is evidence supporting a finding that there were misrepresentations made during the representation or the proceeding.

During the representation, Space Data knew full well that Hosie Rice invested significant hours and hard dollar costs in the case and that it was obligated to pay Hosie Rice's fees and reimburse costs pursuant to the attorney client fee agreement.  Throughout the representation, Space Data did not timely address the invoices and Hosie Rice's AR continued to climb at great financial detriment to the firm.  SDC's failure to reimburse litigation expenses in a timely manner was a financial drain on Hosie Rice.   We revisit this piece of our litigation to state that SDC was not occupying any sort of high ground in September 2018 and there is no justification for revisiting a statement made by HR concerning amounts due in September 2018.  This was previously litigated.  Moreover, the email cited does not state that the monies would all be used for NERA invoices.  It states that Hosie Rice can no longer fund SDC's litigation and that monies to be paid so as to avoid jeopardizing the case and the financial stability of its law firm.  That is not a false statement that warrants Your Honor's attention.

As to the arbitration itself, there was in fact a number of statements made regarding the advanced costs being over a million dollars.  The only testimony cited, as opposed to a pleading or argument from counsel, is Ms. Rice's.  Ms. Rice testified that it was representative of costs advance, which was true.  On cross-examination, she stated she was unable to identify  any vendor that had not been fully paid, which was also true to her knowledge.   As she also testified, Mr. Hosie runs all aspects of the firm and is responsible for the payments made to vendors such as NERA.  As to his knowledge, he was not asked whether there were amounts due to NERA at the time of the arbitration.  Mr. Hosie did state that it advanced very significant sums on behalf of Space Data and the firm has at all times acknowledged that the expert witness expenses are the firm's obligation and not SDC's.  The Proposed Findings state "During the arbitration, Hosie Rice testified that the firm had already advanced funds to pay NERA, and I find that testimony to be false."  The statement is in fact true, they had advanced costs to NERA throughout the litigation.  To the extent Hosie Rice's presentation conflated amounts due and owed by Hosie Rice rather than previously paid, Hosie Rice asserts the statements were made to illustrate that it had assumed an obligation of well over a million dollars and had paid out vast amounts of its own capital for the benefit of SDC.   It has never made a statement renouncing its obligations to NERA or any other vendor it claims it advanced costs to throughout the litigation, and did not make a knowing misstatement of fact when doing so.

As for post-award statements, Hosie Rice will continue to abide by its prior statements and contractual obligations by funding its NERA obligation.  There have been significant administrative challenges for the firm since the award given the shelter-in-place and Mr. Hosie's very serious health issues.  As a result, statements regarding forthcoming payments have not come to fruition.   Hosie Rice has been and is funding the NERA obligation, and will continue to do so.  Mr. Hosie is making every effort with the energy and focus he can muster to bring this matter current.  That said, because the circumstances that have unfolded are not consistent with the January 30 agreement between Mr. Torgerson and myself regarding the parties' handling of the ███████monies at issue in the arbitration, we understand the need for Your Honor to issue an order.

Before we raise specific objections, we note that SDC still has articulated no harm by the delayed payments to NERA in the Google litigation or otherwise.  SDC has made an issue out of a contract between Hosie Rice and NERA, which is being addressed with six-figure payments while the principal of the law firm is suffering from cancer, travelling to Los Angeles to address dire health circumstances, and attempting to coordinate payments without the benefit of going to the office and working with staff to address the issues in a methodical way.  Though we understand the issue related to the passage of time following the McMonigle-Torgerson email cited by counsel, the fact is the case remains on appeal, payments are being made, counsel is diligently attempting to resolve the issue, and NERA has not asserted  a claim against Hosie Rice, let alone Space Data, that would implicate Hosie Rice's failure to address all outstanding invoices at this moment.   Hosie Rice has unequivocally stated it is responsible for the amounts due, which is consistent with the contract:

By signing this letter, you are also representing that you have the authority to obligate your client to pay NERA for its work on this project and that your client will pay NERA or, alternatively, that your firm will be responsible for paying our invoices.

Based on this language, we are at a loss to understand the risk to Space Data other than the speculative, and extraordinarily unlikely circumstance, that NERA would reject an opportunity to be paid by Stinson/SDC for future work on the matter should it be revived on appeal, assuming SDC can articulate harm on account of that rejection.

As to specifics of the proposed order, Hosie Rice objects as follows:

•	The timing set forth in (i) is not reasonable or justified.  We ask that Your Honor set a timetable that provides an opportunity to digest the order, comply with the order, and finalize outstanding amounts due to NERA or work out an agreement with same.  We would propose June 12, 2020.

•       Hosie rice objects to (ii) as it relates to (i) and asks that any consideration of additional remedies be subject to a hearing on the merits and consistent with the documents governing this proceeding.

•       Hosie Rice objects to (iii) as being unnecessary given the above and wildly inconsistent with the circumstances at issue.  Other than personal animus, there is no justification for requesting such an immense punitive punishment of an individual that did not provide false testimony and has been consumed by a life threatening illness during a time of unparalleled societal turbulence.  Moreover, Hosie Rice has never indicated that it will not pay NERA.  And, as far as we know, NERA has never threatened to seek payment from Space Date or informed Space Data that it will not perform further services until Hosie Rice pays the balance of the bill.

•       Hosie Rice objects to the second (iii) (actually iv) through (v – actually vi) as being unnecessary.  In the many months that Stinson has litigated the matter on behalf of SDC it has only identified the NERA invoices as being left unpaid.   An organizational deposition is an entirely unnecessary addition to this litigation.

•       As to (vii), Hosie Rice understands it will be responsible for Your Honor's fees as to post-award issues.

We are available to discuss any of the above.

Dave

David S. McMonigle

415-438-4555


-----Original Message-----
From: Sue L. Robinson [mailto:srobinson@farnanlaw.com]
Sent: Tuesday, May 19, 2020 8:49 AM
To: Liebeler, Eric C.
Cc: McMonigle, Dave; emagana@jamsadr.com; Sullivan, John; Milliken, Christy M.; Torgerson, Robert; 'Elizabeth Magana'
Subject: RE: Hosie Rice LLP v. Space Data, JAMS No. 1100106722

Dear Counsel:  Having received no further response from Hosie Rice, I have attached findings and an order that I have executed which substantially adopts the draft proposed by Mr. Liebeler.  I remain available to help bring this matter to a close.  Cordially, Judge Robinson

-----Original Message-----
From: Sue L. Robinson <srobinson@farnanlaw.com>
Sent: Saturday, May 16, 2020 8:23 AM
To: Liebeler, Eric C. <eric.liebeler@stinson.com>
Cc: McMonigle, Dave <dmcmonigle@longlevit.com>; emagana@jamsadr.com; Sullivan, John <jsullivan@longlevit.com>; Milliken, Christy M. <christy.milliken@stinson.com>; Torgerson, Robert <Robert.Torgerson@stinson.com>
Subject: Re: Hosie Rice LLP v. Space Data, JAMS No. 1100106722

Dear Mr. Liebeler:  I am in receipt and will review.  Best, Judge Robinson

Sent from my iPad

> On May 15, 2020, at 5:13 PM, Liebeler, Eric C. <eric.liebeler@stinson.com> wrote:
>
> Dear Judge Robinson,

# EXHIBIT 20

**JUDICIAL ARBITRATION AND MEDIATION SERVICES**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| HOSIE RICE LLP, | Case No. 1100106722 |
| Claimant, | |
| v. | The Honorable Sue Robinson (Ret.) |
| SPACE DATA CORPORATION | |
| Respondent and Counterclaimant. | **REQUEST FOR MODIFICATION OF INTERIM AWARD AND/OR ATTORNEYS' FEES** |

Your Honor's May 25 findings and order demonstrate that Hosie Rice has not understood its fiduciary obligations.  In the six months after the merits hearing in this case, Hosie Rice has committed additional breaches of its fiduciary duties and additional breaches of the California Rules of Professional Conduct.  Hosie Rice's latest issue is its direct and willful breach of your Honor's order granting Space Data limited remedies for Hosie Rice's misconduct:  $3,000 in JAMS fees; documents from Hosie Rice accounts showing disposition of the $8 million ▮▮▮▮▮▮▮▮▮ a list of vendors and payment history; a limited attorney fee award, and a deadline to pay Space Data expert witness NERA in full.  After your Honor issued a draft order, Hosie Rice asked for almost three weeks – until June 12 – to comply.  Rather than comply with **any** aspect of your Honor's formal May 25 order, Hosie Rice submitted a letter the night before its deadline, revisiting issues it had already lost and seeking two weeks' further extension. Hosie Rice's June 11 letter did not even attempt to explain why the firm failed to comply with your Honor's May 25 order; instead, it asserted that the firm was in the process of

striking some vague deal with NERA to restructure the firm's debt with NERA. It is clear at this point that Hosie Rice is ignoring your Honor's May 25 order, and does not understand the implications of your Honor's January 16 interim award in this case. The firm has not gotten the message.

Even now, almost a week after your Honor's deadline, Hosie Rice has still not made the slightest effort to comply with your Honor's order. The firm has not repaid the $3,000 in JAMS fees it owes; has not produced any of the bank records it is under order to produce; has not provided a list of third-party vendors it retained on Space Data's behalf or payment histories for any of them. Nor has it paid any more of what it owes to NERA. Instead, Hosie Rice has devoted its attention to challenging Space Data's attorney fee application. Hosie Rice overlooks that its own failure to comply its ethical, fiduciary, and trust duties necessitated Space Data's prolonged efforts to obtain and confirm payments to NERA.

Hosie Rice's multiple defaults combined with a series of deceptions that came to light only after your Honor's interim award issued on January 16, 2020, calls Hosie Rice's credibility on **every** issue into question. Because much of your Honor's interim award seems to rest on credibility determinations, Space Data asks your Honor to revisit

some aspects of the interim award in light of what we now know to be true: Hosie Rice holds the truth in little regard, and cares solely about its own financial interest. There are several examples:

At the hearing, Mr. Hosie argued that he had a right to communicate directly with the Space Data board of directors. His letters in support of that contention were

meritless: neither of the cases he cited came anywhere close to establishing that proposition. For its part, Space Data argued that the reason Mr. Hosie wanted to communicate directly with the board was because he thought it was more likely that the Board would settle the case -- an outcome that Hosie wanted so that he could collect his fees rather than take the risk of a trial he and Space Data might lose. This seemed to be a credibility determination on which Hosie Rice got the benefit of the doubt. If Space Data's contention is true, Hosie's actions are not those of a fiduciary, but rather a lawyer that is purely self-interested.

Second, all agree that Mr. Hosie received a written settlement offer from Mr. Van Nest on July 2, 2019. It is undisputed that Mr. Hosie did not tell Space Data (even obliquely, as your Honor noted in the interim award) about that offer until July 9, one day after a Space Data board meeting in which Mr. Hosie and Ms. Rice participated. And Mr. Hosie "shaded the truth" when he characterized that offer as "new" on July 12. *See 1/16 Interim Award* at 19 (citing Exs. 118 & 531). Mr. Hosie was well aware that the board's agenda was to set a price (i.e. a demand) and terms to Google for a partial settlement excluding the '193 patent. Space Data contends Hosie's failure to do so was a deliberate manipulation on his part, designed to get Space Data to make two settlement

moves rather than one. If Hosie were to tell the board about the $3 million prior to the board meeting, the board would respond with a single offer. If Space Data issued a demand from the board meeting before it knew about the $3 million, Hosie could position the $3 million as a response to the board's demand and then insist that the board reply, and move down its settlement demand. That is exactly what Mr. Hosie did, once again

3

putting his own financial interest in obtaining a settlement above his client's own settlement analysis. Although it is not possible to tell what if any impact Hosie Rice's manipulation had on the course of settlement negotiations, this was not Mr. Hosie's call to make; again, his actions are not those of a fiduciary. Instead, Mr. Hosie was looking out for himself. And once again, this was a credibility determination.

Third, your Honor's interim award did not address the threat Mr. Hosie made to Mr. Knoblach immediately following the pretrial on July 19. Mr. Liebeler and Mr. Knoblach both testified that Mr. Hosie said "You're going to settle this case at a price I decide, Jerry, or I'm going to withdraw the day the jury comes back. I'm going to sue you in a quick-fuse JAMS proceeding and collect all of my fees by the end of the year." There is no question that if such a threat occurred, it was a clear violation of the ethics rules. But we now know that Hosie Rice filed false pleadings, gave false testimony, violated a trust agreement on the release of escrowed funds, and made multiple false promises from January until now. All of that suggests that your Honor should disbelieve Mr. Hosie's denial of the threat he made, and instead should credit Mr. Knoblach and Mr. Liebeler's testimonies as true.

Fourth, your Honor's analysis in the interim award rests on believing Mr. Hosie's

contention that Space Data granted him the authority to settle the case on "standard terms and conditions." As a practical matter, Mr. Hosie interpreted those standard terms and conditions to permit him to settle away **all** of Space Data's intellectual property **other than** the '193 patent. That is what he told Google, even though he did not have the authority from Space Data to do so – once again putting his own desire to settle the case

above his client's decision to grant Google only a limited package of rights, not a broad covenant against all Space Data IP with the sole exception of the '193. While such a release may be standard in most IP cases – and it is – this case was anything but standard. And once again, a breach of fiduciary duty rests on a credibility determination that Mr. Hosie conclusively deserves to fail.

Finally, your Honor's ruling must have credited testimony from Hosie Rice that we now know to be false. In the interim ruling, your Honor found that the amount of fees Space Data paid Hosie Rice was $2,833,915.41 (Interim Award at 14), which was $4,555,513 in actual dollars Space Data paid minus $1,721,597 in costs Hosie Rice claims to have incurred and paid. But at the time of the hearing, Hosie Rice owed over $700,000 it claims to have paid: $588,337.98 to NERA; $106,400 to expert Sam Pullen, and $24,870.81 to discovery provider CS Disco.[1] A $700,000 exaggeration in the amount paid out is not a slip of the tongue, but a material misrepresentation. It is an overt lie, upon which your Honor's ruling rested.[2]

Both during and after the merits hearing, your Honor may have given Hosie Rice every benefit of every doubt. In litigation accusing a breach of fiduciary duty, one would imagine that principles of a reputable law firm would conduct themselves according to

the highest ethical standards. Hosie Rice has done the opposite: it filed false pleadings, gave false testimony, made promises it did not keep and likely never intended to, spent

---

[1] These are only the unpaid vendors of which Space Data is aware; there may well be others.

[2] Hosie Rice has paid Mr. Pullen and CS Disco, insofar as Space Data is aware.

client funds for its own benefit, delayed proceedings, and has now directly and willfully violated your Honor's order commanding it to pay Space Data's expert and produce the documents and records showing exactly what it did.

The California Rules of Professional Conduct require counsel to deposit any and all funds received for the benefit of a client in an identifiable bank account labeled "trust account" or some equivalent term.  CRPC 1.15(a).  Funds belonging to the law firm shall not be commingled with funds held in the trust account absent specific exceptions.  CRPC 1.15(c).  Finally, CRPC 1.15(d) requires counsel to keep complete records of all client funds, account in writing to a client or other person for whom the lawyer holds funds (1.15(d)(4)); and "promptly distribute, as requested by the client or other person, any undisputed funds or property in the possession of the lawyer or law firm that the client or other person is entitled to receive." (1.15(d)(7)).  It is undisputed that Hosie Rice received $4 million from the ███████████ money.  It is also undisputed that over $700,000 of that $4 million went to Hosie Rice in trust for Space Data, and Hosie Rice was ethically and contractually obliged to use that money solely and exclusively to pay vendors, including NERA.  Hosie Rice did not do so.  Hosie Rice's refusal to comply with your Honor's order to produce bank records showing precisely what it did with the money justifies an adverse inference on this point:  specifically, a finding that Hosie Rice spent trust money for its own benefit rather than Space Data's.  That is a direct violation of the California Rules of Professional Conduct, and a serious one at that.

6

Misappropriation of client funds is a gross violation of an attorney's professional oath. *Tenner v. State Bar* 28 Cal.3d 202, 206 (1980). Even where the amounts misappropriated are insignificant, or where the most compelling circumstances predominate, appropriate discipline is ordinarily at least one year's actual suspension. *Lawhorn v. State Bar,* 43 Cal.3d 13571367–1368 (1987). *See also* Rules Proc. of State Bar, div. V, Stds. for Atty. Sanctions for Prof. Misconduct, std. 2.1(a) ("Disbarment is the presumed sanction for intentional or dishonest misappropriation of entrusted funds or property, unless the amount misappropriated is insignificantly small or sufficiently compelling mitigating circumstances clearly predominate, in which case actual suspension is appropriate.").

Those facts give rise to two consequences. First, it would be wholly appropriate for your Honor to issue an appropriate sanction under JAMS Rule 24:

> The Arbitrator may order appropriate sanctions for failure of a Party to comply with its obligations under any of these Rules. These sanctions may include, but are not limited to, assessment of Arbitration fees and Arbitrator compensation and expenses, any other costs occasioned by the actionable conduct, including reasonable attorney's fees, exclusion of certain evidence, drawing adverse inferences, or in extreme cases determining an issue or issues submitted to Arbitration adversely to the Party that failed to comply.

More important, it is now clear that Hosie Rice has committed several additional flagrant violations of its fiduciary duties. Quite apart from violating this Court's order, CRPC 1.15(d)(4) and (7) obliged the firm to pay NERA from the ███████ funds and to account to Space Data as to how the firm spent the money. Hosie Rice has violated both

rules on a deliberate and flagrant basis. False testimony and false pleadings are further ethical violations.

As a brief reminder, Space Data need not demonstrate any harm at all to warrant a complete fee disgorgement, as the California Supreme Court specifically held. *Shepard Mullin Richter & Hampton v. J-M Mfg.*, 237 Cal. Rptr. 3d 424, 447 (2018) ("an attorney's 'flagrant' breach of his or her ethical duty to a client may justify a complete forfeiture even without proof of harm to the client."). It is now beyond any doubt that Hosie Rice's breaches of fiduciary duty are flagrant. *See Shepard Mullin*, 237 Cal. Rptr. 3d at 451 ("To be entitled to a measure of recovery, **the firm must show that the violation was neither willful nor egregious**, and it must show that the conduct was not so potentially damaging to the client as to warrant a complete denial of compensation. And before the trial court may award compensation, it must be satisfied that the award does not undermine incentives for compliance with the Rules of Professional Conduct.") (emphasis added). It is also beyond any doubt that the remedies your Honor has granted so far are not adequate to force Hosie Rice's compliance with even the most basic ethical rules. *See Shepard Mullin,* 237 Cal. Rptr. 3d at 451 (both willfulness of violation and adequacy of other remedies relevant to determine extent of forfeiture). Hosie Rice

flagrantly disobeyed your Honor's order **even while the $40,000 fee request remains pending.** It is entirely clear that the cost of a $40,000 fee award is nowhere near enough to force Hosie Rice to comply with your Honor's orders or the California Rules of Professional Conduct. Producing bank records for the firm's trust and other accounts is

not a significant burden; rather than opposing Space Data's fee request, Hosie Rice could have instead produced the bank records it is under order to produce.

Either as a sanction under the JAMS rules for falsely testifying and violating your Honor's order, **or** as additional evidence going to the merits, your Honor would be fully justified in granting Space Data the attorney's fees it spent to litigate this arbitration, or to impose an additional forfeiture on Hosie Rice. Space Data respectfully asks your Honor to grant one, the other, or both. Space Data respectfully suggests that some number between fifty per cent and one hundred per cent of its attorney fees incurred since the beginning of this JAMS arbitration (as the parties' representation agreement provides) is reasonable in light of Hosie Rice's repeated dishonest conduct, its repeated breaches of its fiduciary duties, and its willful flouting of your Honor's order.

Respectfully submitted,

**STINSON LLP**

/s/ Eric Liebeler_____
Eric C. Liebeler
Christy M. Milliken
1775 Pennsylvania Avenue, NW, Suite 800
Washington, DC 20006
Tel.: (202) 728-3006
Eric.Liebeler@stinson.com
christy.milliken@stinson.com
*Attorneys for Space Data Corporation*

Case 3:20-cv-08580-JSC   Document 2   Filed 11/13/50   Page 6 of 157

9

# EXHIBIT 21

1  JOSEPH P. MCMONIGLE, Bar No. 66188                    **CONFIDENTIAL**
   JOHN B. SULLIVAN, Bar No. 238306
2  DAVID S. MCMONIGLE, Bar No. 258980
   NICOLA M. TILL, Bar No. 320035
3  LONG & LEVIT LLP
   465 California Street, Suite 500
4  San Francisco, California  94104
   Telephone:    (415) 397-2222
5  Facsimile:    (415) 397-6392
   Email:        jmcmonigle@longlevit.com
6                jsullivan@longlevit.com
                 dmcmonigle@longlevit.com
7                ntill@longlevit.com

8  Attorneys for Claimant
   HOSIE RICE LLP
9
              JUDICIAL ARBITRATION AND MEDIATION SERVICES
10
                        SAN FRANCISCO DIVISION
11

12
   HOSIE RICE LLP,                        Case No.  1100106722
13
              Claimant,                   **HOSIE RICE LLP'S RESPONSE TO**
14                                        **REQUEST FOR MODIFICATION OF**
       v.                                 **INTERIM AWARD AND/OR**
15                                        **ATTORNEY'S FEES**
   SPACE DATA CORPORATION,
16
              Respondent and
17            Counterclaimant.

18

19  **I.    INTRODUCTION**

20         Space Data is not entitled to a modification of an Arbitration Award rendered over four

21  months ago or a sanction award of hundreds of thousands of dollars in attorney's fees.  These

22  requests for relief not only invite the Arbitrator to exceed her authority, they are completely

23  unjustified by the lone remaining issue – Hosie Rice's remaining balance with NERA.

24         As proved at the arbitration, despite agreeing to pay Hosie Rice an hourly fee, Space Data

25  simply refused to pay for services rendered by the firm.  When Hosie Rice achieved what the

26  Arbitrator characterized as a ▮▮▮▮▮▮▮▮▮▮▮▮, Space Data again refused to pay the firm.

27  Space Data's refusal to pay Hosie Rice forced the firm to institute arbitration proceedings to

28  obtain payment from Space Data.  Although Space Data contended that Hosie Rice should not be

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104

Response to Request for Modification Of Award And-Or              CASE NO. 1100106722
Attorney's Fees 4845-4304-8129 v.1.docx

HOSIE RICE LLP'S RESPONSE TO REUQEST FOR MODIFICATION OF AWARD AND ATTORNEY'S FEES

1  awarded any fees, and should in fact pay Space Data damages, the Arbitrator decided Hosie Rice

2  should recover fees and costs of up to $4 million, which allowed Space Data to receive the $4

3  million it would receive ████████████ and separate agreement with Hosie Rice to make

4  concessions on its fee and increase its contingency in exchange for <u>continued representation of</u>

5  <u>Space Data.</u>  The parties agreed thereafter that Hosie Rice would pay any outstanding vendor

6  invoices, such as NERA, out of Hosie Rice's share of its $4 million.  Hosie Rice has made

7  payments to one expert Samuel Pullen, another word processing vendor, and NERA.  Hosie Rice

8  remains committed to finalizing the NERA account.  Notably, the evidence offered by Space Data

9  shows that NERA has been paid over $600,000 of the $809,000 it charged for services, or nearly

10 75% of the total bill, including $325,000 in the past two months.  More importantly, NERA and

11 Hosie Rice have an agreement in principle that addresses the timing and amount of the

12 outstanding balance.  (Ex. A, Email from Nash to McMonigle, Ex. B, NERA Account Statement.)

13        But rather than accept its $4 million and move on with its business, Space Data has opted

14 to squabble with Hosie Rice regarding a contract to which it is not even a party: the Hosie Rice-

15 NERA contract.  Hosie Rice entered into an agreement with NERA for expert services.  Space

16 Data is not a party to that agreement.  Despite several submissions to the Arbitrator regarding this

17 issue, Space Data has not offered any evidence of NERA looking to Space Data to satisfy this

18 debt or otherwise offered evidence of harm, and the agreement in principle undermines such a

19 notion.  In fact, in its latest brief, Space Data concedes it has not suffered any harm arising out of

20 the remaining NERA balance.  Moreover, Space Data is not involved in NERA and Hosie Rice's

21 agreement in principle regarding resolution of this outstanding balance, further demonstrating it is

22 attempting to impermissibly insert itself into a contract and issue beyond the scope of the Final

23 Award.  (Ex. A, Email from Nash to McMonigle.)

24        Space Data now requests that the Court either modify the Final Award to require Hosie to

25 forfeit even more hard earned attorney's fees or issue a sanction that requires Hosie Rice to pay

26 between fifty percent and one hundred percent of the fees that Space Data has incurred in this

27 litigation to date.  Although Space Data does not reveal a dollar figure range for the fees, Hosie

28 Rice anticipates that such a fee would be at least many hundreds of thousands of dollars, a blatant

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104

Response to Request for Modification Of Award And-Or                - 2 -                              CASE NO. 1100106722
Attorney's Fees 4845-4304-8129 v.1.docx

HOSIE RICE LLP'S RESPONSE TO REUQEST FOR MODIFICATION OF AWARD AND ATTORNEY'S FEES

attempted money grab by a cash-strapped company that forced this litigation in the first instance. There is no equitable or legal basis for the Arbitrator to do either.

The Arbitration Award became final not later than February 18, 2020. The JAMS Expedited Rules do not grant the Arbitrator authority to modify or enforce that award. Nor is such a modification or enforcement warranted. Hosie Rice has made clear that the firm will satisfy its obligation to NERA and has reached an agreement in principle with that firm to comply with that order. Moreover, an award of the attorney's fees incurred prior to the final order would effectively be a modification of the Final Arbitration Award as the Arbitrator found that each party would bear its own fees and costs for the Arbitration.

Any sanction awarded should be limited a reasonable amount of fees for obtaining the order that Hosie Rice pay NERA. Space Data has already submitted a request for fees of $41,000. Hosie Rice has filed an opposition to that excessive request. Other than the passage of time and Hosie Rice's continued failure to satisfy an outstanding balance not yet due, nothing justifies increasing Space Data's fees request from $41,000 well into the high six figures.

Hosie Rice is confident it will have properly documented its agreement with NERA by the July 10, 2020 hearing, and respectfully requests that the Arbitrator refrain from revisting her Award by granting Space Data's request.

## II. THE ARBITRATOR CANNOT AND SHOULD NOT MODIFY THE PREVIOUS AWARD TO IMPOSE AN ADDITIONAL FORFEITURE OF FEES.

### A. Neither The JAMS Rules Nor Applicable Law Empower the Arbitrator to Modify or Enforce the Final Award.

#### 1. The JAMS Rules Preclude Modification or Enforcement of the Award.

JAMS Rule 19 requires that the Arbitrator issue a Final Award within thirty calendar days after the date of the close of the hearing except (1) by agreement of the parties; (2) upon good cause for an extension of time to render the Award; or (3) as provided in Rule 17(i), which allows for final awards to be corrected within 30 days.

Here, the arbitration hearing concluded on November 26, 2019. The parties submitted an exhibit list, exhibits, and closing briefs on December 17, 2019. The Court issued the Award on January 16, 2020. Neither party filed an objection to the award. On February 18, 2020, JAMS

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104

Response to Request for Modification Of Award And-Or
Attorney's Fees 4845-4304-8129 v.1.docx

- 3 -

CASE NO. 1100106722

HOSIE RICE LLP'S RESPONSE TO REUQEST FOR MODIFICATION OF AWARD AND ATTORNEY'S FEES

1  case manager Liz Magana emailed all parties "Judge Robinson has rendered the Final Award."

2  (Ex. C, February 18, 2020 Email.)  Neither the parties nor the Arbitrator extended the time under

3  which the Arbitrator could issue the award.

4              2.       **Applicable Law Precludes Modification or Enforcement of the Award.**

5        "It is (a) fundamental common law principle that once an arbitrator has made and

6  published a final award his authority is exhausted and he is functus officio and can do nothing

7  more in regard to the subject matter of the arbitration." (*McClatchy Newspapers v. Cent. Valley*

8  *Typographical Union No. 46, Int'l Typographical Union*, 686 F.2d 731, 734 (9th Cir. 1982)

9  (citing *La Vale Plaza, Inc. v. R. S. Noonan, Inc.*, 378 F.2d 569, 572 (3d Cir. 1967).)

10       "The essence of functus officio doctrine, which is rooted in common law, is that an

11  arbitrator may not reexamine a final arbitration order . . . The arbitrator may not reopen the

12  subject matter of a final arbitration order, even when new evidence has been discovered." (*Int'l*

13  *Ass'n of Machinists & Aerospace Workers v. Lockheed Martin Space Sys. Co.*, No.

14  CV0904919RGKPJWX, 2010 WL 11523903, at *2 (C.D. Cal. Jan. 22, 2010) (internal citations

15  omitted); see also *McClatchy Newspapers*, 686 F.2d 733 ("Arbitrators are not and never were

16  intended to be amenable to the 'remand' of a case for 'retrial' in the same way as a trial judge.

17  Even assuming the availability of new evidence, it would not be appropriate for the arbitrator to

18  consider such evidence and then redetermine the issues originally submitted to him.").)

19       Under Code of Civil Procedure § 1285, "[a]ny party to an arbitration in which an award

20  has been made may petition the court to confirm, correct, or vacate the arbitration award."  As for

21  the arbitrator, either party may apply to the arbitrator to correct the award for: errors in form;

22  evident miscalculation of figures; or mistake in description of any person, thing, or property

23  referred to in the award.  (Cal. Code Civ. Proc. §1284.)  Beyond that, the arbitrator's power is

24  limited to non-substantive matters of form and description and "evident miscalculation" of

25  numbers.  (Id.)  The arbitrator has no power to reweigh or reconsider the merits of the award.

26  (*Elliott & Ten Eyck Partnership v. City of Long Beach* (1997) 57 Cal.App.4th 495, 501-504

27  (arbitrators have no power to make "supplemental" award on matters left open by original

28  award); see also *Banks v. Milwaukee Ins. Co.* (1966) 247 CA2d 34, 36-37, 55 CR 139, 141

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104

Response to Request for Modification Of Award And-Or
Attorney's Fees 4845-4304-8129 v.1.docx        - 4 -        CASE NO. 1100106722

HOSIE RICE LLP'S RESPONSE TO REUQEST FOR MODIFICATION OF AWARD AND ATTORNEY'S FEES

1   (arbitrator had no power to correct award to include general damages.).)

2      Moreover, the conduct at issue, Hosie Rice's failure to pay the entire amount owed to

3   NERA, is post-arbitration conduct.  The second sentence of the brief demonstrates this, as Space

4   Data claims "In the *six months after the merits hearing in this case,* Hosie Rice has committed

5   additional breaches of its fiduciary duties and additional breaches of the California Rules of

6   Professional Conduct."  The Arbitrator should not modify the award based on post-arbitration

7   conduct.

8      Finally, Space Data's request to the Arbitrator to require Hosie Rice to satisfy its debt to

9   NERA is akin to a motion to enforce an award.  But the JAMS rules do not grant an Arbitrator

10  power to enforce the award.  Instead, "proceedings to enforce…and Award will be controlled by

11  and conducted in conformity with the Federal Arbitration Act, 9 U.S.C. Sec. 1, *et. seq.* or

12  applicable state law."  As a result, the Arbitrator does not have the authority to enforce the award

13  by issuing a monetary penalty against the firm.  (*Luster v. Collins* (1993) 15 Cal.App.4th 1338,

14  1348-1350; See JAMS Rule 20.)

15     For these reasons, Hosie Rice respectfully asserts that the Arbitrator cannot modify the

16  Award.

17  **B.      The Arbitrator Should Not Modify The Award.**

18     Even if the Arbitrator did have the authority to modify her previous award, she should not.

19      **1.      Space Data Has Received Everything It Is Entitled To Under The
                  Award.**

20

21  Despite the lingering NERA issue, Space Data received everything it was entitled to under

22  the Award.  The Award provided that "based on the underlying premise that Space Data would

23  net $4 million from ▮▮▮▮▮▮▮, Hosie Rice's fees and costs may not exceed $4 million" of the

24  $8 million settlement fund.  Space Data has netted the $4 million it was awarded.  Moreover,

25  despite its four-month campaign of involving itself in contact between Hosie Rice and NERA,

26  Space Data has not offered any evidence that it has been harmed in any manner by the alleged

27  dispute over a contract that Space Data is not a party to.  In other words, Space Data as received

28  everything it was awarded and nothing less.  Further, Hosie Rice and NERA have an agreement

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA 94104

Response to Request for Modification Of Award And-Or
Attorney's Fees 4845-4304-8129 v.1.docx

- 5 -

CASE NO. 1100106722

HOSIE RICE LLP'S RESPONSE TO REUQEST FOR MODIFICATION OF AWARD AND ATTORNEY'S FEES

in principle to resolve the outstanding balance. (Ex. A, Email from Nash to McMonigle.) Based on these indisputable facts, there is no reason for the Court to award Space Data any further relief.

### 2. The Issues That Space Data Seeks To Relitigate Are Not Relevant To The Issue Of Hosie Rice Paying NERA.

The issues that Space Data asks the Arbitrator to address via a modified order are not relevant to the outstanding balance Hosie Rice owes NERA or the agreement to resolve same between those entities. Nonetheless, Space Data brazenly infers that the Arbitrator erred so egregiously in assessing the credibility of the witnesses that she should revisit the award and her decision on such issues as whether Mr. Hosie had a right to communicate with Board members; the communication of an early July settlement offer; alleged threats made by Mr. Hosie to Mr. Knoblach on July 19, 2019; whether Space Data had authority to settle the case on "standard terms and conditions;" and the amount of fees paid. These issues clearly are beyond the scope of the issue of the remaining balance that Hosie Rice owes NERA, which is the subject of a separate negotiation and agreement in principle. Space Data's request to relitigate these issues demonstrates its intent to continue harassing Hosie Rice despite the fact that the arbitration has concluded and the Final Award has been rendered. In essence, Space Data is appealing to the Arbitrator to issue what would essentially be an advisory opinion after the Final Award issued overruling her own decisions on issues of fact.

Although Hosie Rice does not seek to relitigate the underlying arbitration, it is compelled to respond to Space Data's character attack, specifically the statement that "Hosie Rice holds the truth in little regard, and cares solely about its own financial interest." This is simply false. Throughout the underlying litigation, Hosie Rice constantly made fee concessions to Space Data to assist Space Data in financing the litigation, including the one that allowed for the settlement and which was essentially enforced without the benefit of the bargain for Hosie Rice. To the contrary, Hosie Rice bent over backwards to prop up Space Data financially. The firm revised its fee agreement 3 times, deferring costs and fees, offered free appellate representation; agreed to subvert own interests to SDC's demand for $4MM ███████████ in the face of Space Data advancing unrealistic demands ($29MM) knowing they would be fruitless; and risked total failure

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA 94104

Response to Request for Modification Of Award And-Or Attorney's Fees 4845-4304-8129 v.1.docx

- 6 -

CASE NO. 1100106722

HOSIE RICE LLP'S RESPONSE TO REUQEST FOR MODIFICATION OF AWARD AND ATTORNEY'S FEES

1    in the form of an imminent ruling while Space Data seemingly purposefully delayed completing

2    the process.  The firm learned at some point that this was the modus operandi for Space Data as it

3    failed to pay Pillsbury approximately $1,000,000 in fees owed before it retained Hosie Rice, and

4    amount Space Data never disputed was still due at the time of the hearing.

### 3.    Space Data Has Not Established That It Is Entitled To A Further Forfeiture Of Fees

The Court should not modify the Award based on allegations that Hosie Rice's alleged

spending of trust money for its own benefit after the representation concluded entitles Space Data

to disgorge all fees it previously paid the firm for three reasons: (1) the alleged breach happened

after Hosie Rice earned the fees; (2) the alleged breach did not cause Space Data any damages;

and (3) the breach is not serious enough to require the disgorgement of fees.

#### a.    The Arbitrator Should Not Disgorge Fees Because The Alleged Breach Occurred After Hosie Rice Earned The Fees

Space Data seeks to disgorge fees previously earned by Hosie Rice based on an alleged

breach of duty that occurred months after the firm performed the work and earned the fees sought.

But California case law is clear that an attorney is "entitled to compensation for services supplied

preceding the breach of professional conduct." (*Jeffry v. Pounds* (1977) 67 Cal.App.3d 6, 12.)

Space Data does not cite any case in its brief in which pre-breach fees were disgorged.  In

*Sheppard,* the only case cited by Space Data for the proposition that the Hosie Rice's fees should

be disgorged, the ethical breach occurred at the outset of the attorney-client relationship when

Sheppard Mullin entered into the attorney-client relationship with J-M Manufacturing.

(*Sheppard,* 6 Cal.5th 59, 68-70.)

Nor is it likely that Space Data could find such a case because "the rule governing

attorney forfeiture derives primarily from the general principle of equity that a fiduciary's breach

of trust undermines the value of his or her services." (*Id.* at 89.)  The remedy "presupposes that a

lawyer's clear and serious violation of a duty to a client destroys or severely impairs the client-

lawyer relationship and thereby the justification of the lawyer's claim to compensation." (*Id.*)

"Considerations relevant to the question of forfeiture include the gravity *and timing* of the

violation, its willfulness, its effect on the value of the lawyer's work for the client, any other

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104

Response to Request for Modification Of Award And-Or
Attorney's Fees 4845-4304-8129 v.1.docx          - 7 -          CASE NO. 1100106722

HOSIE RICE LLP'S RESPONSE TO REUQEST FOR MODIFICATION OF AWARD AND ATTORNEY'S FEES

1    threatened or actual harm to the client, and the adequacy of other remedies." (*Id.* at 94, citing,

2    Restatement (Third) of Law Governing Lawyers § 37.)

3        For example, in *Jeffry,* a law firm was discharged after its client in a personal injury action

4    discovered the firm had commenced representing his wife in their divorce proceedings.  When the

5    firm sued the client to recover its fees, the trial court found that the firm did not violate the Rules

6    of Professional Conduct by representing the client's wife in his divorce proceedings.  Although

7    the Court of Appeal reversed, finding the firm had violated Rule 5-102 regarding conflict of

8    interests, it held the firm was entitled to compensation for the value of its services supplied

9    preceding the clear breach of professional conduct. (*Jeffry,* 67 Cal.App.3d at 12.)

10       For these reasons, the Arbitrator should not modify the award to require Hosie Rice to

11   forfeit additional fees.

        **b.**    **Space Data Is Not Entitled To A Fee Disgorgement Because It Cannot Demonstrate Any Harm**

13       Just as it did in the arbitration, Space Data concedes that it seeks a near complete fee-

14   disgorgement despite the fact that it cannot demonstrate any harm. (Brief, p. 8.)  That is unjust

15   and without legal support.  As a matter of law, Space Data cannot disgorge fees because it cannot

16   prove it was damaged.  "Where an attorney's misrepresentation or concealment has caused the

17   client no damage, disgorgement of fees is not warranted." (*Slovensky v. Friedman* (2006) 142

18   Cal.App.4th 1518, 1536, citing, *Frey v. Tenderloin Housing Clinic, Inc.* (2006) 38 Cal.4th 23,

19   48.) In citing to *Sheppard, Mullin, Richter & Hampton, LLC v. J-M Manufacturing Co., Inc.*

20   (2018) 6 Cal.5th 59, 90 for the proposition that an attorney's breach of fiduciary duty may justify

21   a complete forfeiture even without proof of harm to the client, Space Data fails to provide the

22   context of the quote.  The Court wrote:

> The degree to which forfeiture is warranted as an equitable remedy
> will necessarily vary with the equities of the case. The commentary
> to the Restatement thus recognizes that while an attorney's
> "flagrant" breach of his or her duty to a client may justify a
> complete forfeiture even without proof of harm to the client
> (Rest.3d Law Governing Lawyers, supra, § 37, com. d, p. 273), in
> other, less egregious cases complete forfeiture "would sometimes
> be an excessive sanction, giving a windfall to a client" (id., com. b,

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA 94104

Response to Request for Modification Of Award And-Or
Attorney's Fees 4845-4304-8129 v.1.docx

- 8 -

CASE NO. 1100106722

HOSIE RICE LLP'S RESPONSE TO REUQEST FOR MODIFICATION OF AWARD AND ATTORNEY'S FEES

p. 272). As our sister court has explained, a rule of automatic and complete forfeiture "for every breach of fiduciary duty, or even every serious breach, would deprive the remedy of its equitable nature and would disserve its purpose of protecting relationships of trust." (Burrow v. Arce (Tex. 1999) 997 S.W.2d 229, 241; see also id. at p. 242, fn. 45 [collecting state cases taking similarly flexible approach].)

In other words, the Court merely commented that a Restatement recognized that in some cases, a "flagrant" breach of an attorney's duty may justify a complete forfeiture of fees without proof of harm to the client. The Court did not overrule *Slovensky* and did not contemplate its commentary being utilized in a circumstance such as this one.

### c. Space Data Does Not Establish That The Alleged Breach Of Fiduciary Duty Warrants Forfeiture Of Fees

The California Supreme Court in *Sheppard* confirmed that, absent truly egregious conduct, a complete forfeiture of fees could be an excessive sanction providing a windfall to the client. (*Sheppard,* 6 Cal.5th 59 at 90.) There, the Supreme Court held that a law firm's representation of a current client, while it *simultaneously* represented the client's litigation adversary, although a *serious ethical breach* pervading the attorney-client relationship, did not categorically bar the law firm from recovering its legal fees on a quantum meruit basis. (*Id.* at 94.)

The extraordinarily high threshold that must be established in California before an attorney is prohibited from recovering fees is further illustrated by the facts in *Cal-Pack Delivery, Inc. v. United Parcel Service, Inc.* (1997) 52 Cal.App.4th 1. There, attorney Michael Khourie brought a class action against a shipping service provider, but later admitted he had offered to sell out his client and the class for a payment to himself of approximately $8 to $10 million. (*Id.* at 5-6.) Despite this clear and flagrant ethical breach, the Court of Appeal found that the trial court's order prohibiting Khourie from receiving *any* attorney's fees was overbroad. In large part this was because "…counsel labored on this case for three years before committing the actions resulting in his disqualification…[i]t may be that Khourie's labors during the three years before his breach were proved dispositive in some future recovery by persons as yet unidentified." (*Id* at

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA 94104

16.)

     *Cal-Pak* and the Supreme Court decision in *Sheppard, Mullin,* are not outlier authorities; historically, California courts have allowed attorneys to recover fees on a *quantum meruit* basis notwithstanding allegations of impropriety.

     For example, *Frye,* a legal clinic was denied legal fees because it failed to register with the State Bar as a professional law corporation and did not otherwise meet statutory requirements for a professional law corporation. (*Frye,* 38 Cal.4th at 36.) The California Supreme Court found that "[u]nder no imaginable circumstances would [the client] have fared better had [the corporation] registered with the State Bar and complied with [the Corporations Code]." (*Id.* at p. 48.) Under the circumstances, " '[t]o require disgorgement of fees because of a failure to register the corporation ... is disproportionate to the wrong.' "(*Id.,* quoting *Olson v. Cohen* (2003) 106 Cal.App.4th 1209, 1215.)

     Similarly, in *Mardirossian & Associates, Inc. v. Ersoff, supra,* an attorney who simultaneously represented two clients with adverse interests in two separate legal actions, was nevertheless permitted to recover fees in a *quantum meruit* action. There, the court held the attorney was permitted to recover his fees for work performed up until a certain point because, to hold otherwise, would result in the client being unjustly enriched.

     Here, Space Data does not offer any case law remotely on point. In fact, it does not cite a single case for the proposition that addressing an outstanding balance owed to an expert witness months after the representation ended and following an arbitration provides grounds for fee disgorgement. Nor is it likely that such a case exists as such a holding would result in an absurd and substantial windfall to Space Data, under circumstances where it has not and cannot establish it was damaged by Hosie Rice's negotiation of ▮▮▮▮▮▮▮▮▮▮ on its behalf. In essence, the relief Space Data seeks would deprive the Hosie Rice firm of the fees it earned working for year on Space Data's behalf resulting in beneficial settlement to the company.

## III.   THE ARBITRATOR SHOULD NOT ISSUE A HIGH SIX OR SEVEN FIGURE SANTION TO ENFORCE THE ARBITRATION AWARD.

     As an alternative argument, Space Data requests that the Court issue an order sanctioning

Response to Request for Modification Of Award And-Or
Attorney's Fees 4845-4304-8129 v.1.docx
- 10 -
CASE NO. 1100106722
HOSIE RICE LLP'S RESPONSE TO REUQEST FOR MODIFICATION OF AWARD AND ATTORNEY'S FEES

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA 94104

1    Hosie Rice.  Although Hosie Rice does not dispute that the Arbitrator has the authority to issue a

2    sanction for violating a court order, the sanction sought is excessive for the following reasons.

3    First, as described above, the JAMS rules do not grant an Arbitrator power to issue

4    sanctions to enforce the award.  (*See, Luster,* 15 Cal.App.4th 1338 at 1348-1350; See JAMS Rule

5    20.)  Instead, "proceedings to enforce…an Award will be controlled by and conducted in

6    conformity with the Federal Arbitration Act, 9 U.S.C. Sec. 1, *et. seq.* or applicable state law.

7    *Luster* involved an arbitration between two neighbors regarding trees that Collins planted

8    on the easement.  The arbitrator ordered Collins to remove the trees and to pay $50 per day per

9    tree for each day he failed to do so.  (*Id.* at p. 1343.)  The arbitrator imposed the daily fee at least

10   in part due to Collins' failure to comply with previous arbitral orders.  (*Id.* at p. 1348.)  Collins

11   challenged the arbitrator's order requiring him to pay $50 per tree for each day he failed to cut

12   down certain trees, characterizing the monetary award as a contempt sanction and arguing that the

13   arbitrator had no authority to impose such a sanction.  (*Id.*)  The Court of Appeal agreed.  It

14   explained that the arbitrator's responsibility was to determine whether Collins had wrongfully

15   placed trees on the easement and, if so, how those wrongful acts could be rectified.  Consistent

16   with his responsibility the arbitrator found Collins improperly burdened Luster's use of the

17   easement and ordered removal of specific trees. This should have been the extent of his decision

18   unless he was statutorily empowered or the parties agreed he could include self-executing

19   provisions to insure its enforcement as part of the award."  (*Id.* at p. 1348.)  The court then

20   examined the relevant statutes and arbitration agreement and concluded the arbitrator was not so

21   empowered.   It found nothing in the California Arbitration Act "authorizes an arbitrator to

22   include economic sanctions, such as those imposed here, as part of the award."  (*Id.*)   The court

23   went to explain that Legislature had enacted an entire statutory scheme, the Enforcement of

24   Judgments Law, and thus "had no need to furnish an arbitrator additional authority for

25   enforcement purposes post judgment. Such authority would not only conflict with judicial power,

26   but absent carefully prescribed procedures potentially interfere with the respective rights of the

27   parties."  (*Id.* at p. 1349.)  Although parties may agree to grant an arbitrator the power to enforce

28   an award, there is no evidence that Hosie Rice and Space Data entered into such an agreement.

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104

Response to Request for Modification Of Award And-Or
Attorney's Fees 4845-4304-8129 v.1.docx

- 11 -

CASE NO. 1100106722

HOSIE RICE LLP'S RESPONSE TO REUQEST FOR MODIFICATION OF AWARD AND ATTORNEY'S FEES

1   Instead, the Hosie Rice – Space Data agreement provides that the "courts will enforce an award in

2   arbitration…." (Ex. D, Hosie Rice –Space Data Agreement, p. 7.)  As a result, the Arbitrator does

3   not have the authority to enforce the award by issuing a monetary sanction against the firm.

4        Second, despite having the burden of establishing the sanction it is entitled to, Space Data

5   does not offer any case law supporting its request for 50-100% of the attorney's fees incurred in

6   this arbitration.  As referenced above, Hosie Rice anticipates that an award of 50-100% of the

7   attorney's fees Space Data has incurred in this litigation would result in an attorney fee award of

8   hundreds of thousands of dollars.  Such an award is not proportional to a dispute over the time of

9   the payment of the NERA invoice.

10       Third, other than the attorney's fees Space Data incurred by its affirmative decision to

11   interject itself into the relationship between NERA and Hosie Rice, Space Data has not suffered

12   any harm.  There is no reason to sanction Hosie Rice in the amount requested by Space Data.  The

13   Arbitrator has already indicated an inclination to award Space Data fees incurred related to this

14   NERA issue, there is no reason to issue any sanction beyond that.

15       Finally, the Court already ruled that no party was a prevailing party in the arbitration for

16   purposes of awarding costs and attorney's fees.  Issuing the requested sanction would essentially

17   be an end run of the rules set forth above that precludes the Arbitrator from modifying the final

18   award over four months after it was rendered.

19   **IV.    CONCLUSION**

20       For those reasons, Hosie Rice respectfully requests that the Arbitrator reject Space Data's

21   request to modify the award or issue a sanction that essentially reconsiders the prevailing party

22   issue.

23

24

25

26

27

28

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA 94104

Response to Request for Modification Of Award And-Or
Attorney's Fees 4845-4304-8129 v.1.docx                 - 12 -                 CASE NO. 1100106722

HOSIE RICE LLP'S RESPONSE TO REUQEST FOR MODIFICATION OF AWARD AND ATTORNEY'S FEES

1   Dated: June 26, 2020                           LONG & LEVIT LLP

2

3                                                  By:_____

4                                                       JOHN B. SULLIVAN
                                                        Attorneys for Claimant
5                                                       HOSIE RICE LLP

6   4815-3004-2561, v. 1

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104

Response to Request for Modification Of Award And-Or
Attorney's Fees 4845-4304-8129 v.1.docx              - 13 -              CASE NO. 1100106722

HOSIE RICE LLP'S RESPONSE TO REUQEST FOR MODIFICATION OF AWARD AND ATTORNEY'S FEES

Exhibit A

**McMonigle, Dave**

| | |
|---|---|
| **From:** | Nash, Deirdre <Deirdre.Nash@oliverwyman.com> |
| **Sent:** | Friday, June 26, 2020 9:25 AM |
| **To:** | McMonigle, Dave |
| **Cc:** | Meyer, Christine |
| **Subject:** | RE: Space Data v. Google |

Hi Dave,

Thanks for sending this over to us.  We accept your proposal in theory, but we will need to see the final documents as soon as possible.

Kind regards,


Deirdre

**Privileged & Confidential**
**Attorney-Client Communication**

---

**DEIRDRE NASH**
Assistant General Counsel

✪✪ OLIVER WYMAN

1166 Avenue of the Americas | New York, NY 10036
Direct: +1 212 345 0890
Cell: +1 845 797 1223
deirdre.nash@oliverwyman.com
www.oliverwyman.com


**From:** McMonigle, Dave <dmcmonigle@longlevit.com>
**Sent:** Thursday, June 25, 2020 6:18 PM
**To:** Nash, Deirdre <Deirdre.Nash@oliverwyman.com>
**Subject:** Re: Space Data v. Google

Dear Deirdre:

Following up on our discussion,  I write to confirm Hosie Rice's proposal to NERA to address the outstanding balance attached to this email related to the *Space Data Corporation v Google* matter.  Hosie Rice will make payment on or before August 15,2020 of the outstanding amount due to NERA.  Hosie Rice will make an additional payment of $50,000 for this agreement to defer the date and will make that payment on or before August 15, 2020.  The firm will execute a confession of judgment for the amounts due under the contract as well as a promissory note backed by a personal guarantee from Mr. Hosie.  Should you accept, we request that NERA confirm that this agreement addresses the outstanding balance due NERA under the contract and that this new obligation borne by Hosie Rice satisfies any existing obligation due to NERA related to Hosie Rice's representation of Space Data Corporation in the matter at issue.

We appreciate our ongoing discussion and you consideration of the above.

Regards,

Dave



David S. McMonigle
415-438-4555

LONG & LEVIT LLP

465 California Street, 5th Floor, San Francisco, CA 94104
Main: 415-397-2222   Fax: 415-397-6392
Email : Website : Résumé

This e-mail is sent by a law firm and contains information that may be privileged and confidential. If you are not the intended recipient, please delete the email and notify us immediately.

# Exhibit B



## NERA
### ECONOMIC CONSULTING

**Account Statement**

| Remit to: |
|---|
| National Economic Research Associates, Inc. |
| PO Box 7247-6754 |
| Philadelphia, PA 19170-6754 |
| **Wire Instructions:** |
| Citibank NA, New York, NY |
| National Economic Research Associates, Inc. |
| ABA #: 021000089 Acct. #: 30758277 |
| Swift Code: CITIUS33-Citibank NA |
| Chips Code: 0008 |

| As of Date: | 6/4/2020 |
|---|---|

| Client Name | HOSIE RICE LLP |
|---|---|
| Client Code | NERA99462 |

| Grand Total | $ | 222,439.15 |
|---|---|---|

| Project | Invoice Number | Invoice Date | Invoice Amount | | Date Paid | Check Number | Payor | Amount Paid | | AR Balance | | Interest (5.25%) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 108928 | US30798 | 06/26/17 | $ 6,384.00 | | 08/14/17 | 9556 | HOSIE RICE LLP | $ (6,384.00) | $ | - | | |
| | US31163 | 07/24/17 | $ 21,468.75 | | 10/02/17 | 41632 | SPACE DATA CORP | $ (21,468.75) | $ | - | | |
| | US32311 | 10/05/17 | $ 19,180.00 | | 11/20/17 | 9862 | HOSIE RICE LLP | $ (19,180.00) | $ | - | | |
| | US32954 | 11/15/17 | $ 3,881.25 | | 12/19/17 | 9964 | HOSIE RICE LLP | $ (3,881.25) | $ | - | | |
| | US33477 | 12/18/17 | $ 19,776.50 | | 01/31/18 | 10091 | HOSIE RICE LLP | $ (19,776.50) | $ | - | | |
| | US33958 | 01/22/18 | $ 16,616.25 | | 05/23/18 | 10406 | HOSIE RICE LLP | $ (16,616.25) | $ | - | | |
| | US34253 | 02/12/18 | $ 128,476.01 | | 03/06/20 | EFT | HOSIE RICE LLP | $ (128,476.01) | $ | - | | |
| | US34799 | 03/26/18 | $ 50,237.50 | | 05/08/20 | 12037 | HOSIE RICE LLP | $ (50,237.50) | $ | - | $ | 3,584.07 |
| | US35115 | 04/17/18 | $ 9,710.00 | | 05/08/20 | 12037 | HOSIE RICE LLP | $ (9,710.00) | $ | - | $ | 662.01 |
| | US35640 | 05/29/18 | $ 15,533.39 | | 05/08/20 | 12037 | HOSIE RICE LLP | $ (15,533.39) | $ | - | $ | 965.20 |
| | US36007 | 06/27/18 | $ 23,301.25 | | 08/03/18 | 10625 | HOSIE RICE LLP | $ (23,301.25) | $ | - | | |
| | US36405 | 07/25/18 | $ 15,513.75 | | 05/15/20 | EFT-HOSIE RICE LLP | HOSIE RICE LLP | $ (15,513.75) | $ | - | $ | 836.79 |
| | US36618 | 08/15/18 | $ 47,941.25 | | 05/15/20 | EFT-HOSIE RICE LLP | HOSIE RICE LLP | $ (47,941.25) | $ | - | $ | 2,441.06 |
| | US37155 | 09/25/18 | $ 147,705.25 | | 05/15/20 | EFT-HOSIE RICE LLP | HOSIE RICE LLP | $ (88,545.00) | $ | 59,160.25 | $ | 6,649.77 |
| | US37422 | 10/11/18 | $ 219,821.94 | | 10/29/18 | 10860 | HOSIE RICE LLP | $ (50,000.00) | | | | |
| | | | | | 11/16/18 | 10907 | HOSIE RICE LLP | $ (38,571.38) | | | | |
| | | | | | 12/28/18 | 10985 | HOSIE RICE LLP | $ (34,916.85) | $ | 96,333.71 | $ | 4,115.30 |
| | US37781 | 11/07/18 | $ 3,655.25 | | 12/18/18 | 10968 | HOSIE RICE LLP | $ (3,655.25) | $ | - | | |
| | US38344 | 12/14/18 | $ 13,643.75 | | 05/01/19 | 11309 | HOSIE RICE LLP | $ (13,643.75) | $ | - | | |
| | US38794 | 01/23/19 | $ 46,402.84 | | | | | $ | - | $ | 46,402.84 | $ | 1,288.16 |
| | | | $ 809,248.93 | | | | | $ (607,352.13) | $ | 201,896.80 | $ | 20,542.35 |

| GRAND TOTAL (AR Balance + 5.25% Interest) | $ 222,439.15 |
|---|---|

Exhibit C

**Allen, Sydney E.**

| | |
|---|---|
| **From:** | Elizabeth Magana <EMagana@jamsadr.com> |
| **Sent:** | Tuesday, February 18, 2020 1:21 PM |
| **To:** | Liebeler, Eric C.; Torgerson, Robert; Milliken, Christy M.; Woodruff, Jon M.; Francis, Carrie M.; McMonigle, Dave; McMonigle, Joseph; Sullivan, John |
| **Cc:** | Myers, Laurie |
| **Subject:** | RE: Hosie Rice LLP vs. Space Data Corporation - JAMS Ref No. 1100106722 - Final Award |

Dear Counsel,

Please note that Judge Robinson has rendered the Final Award; however, JAMS will issue the decision once all outstanding fees have been received. I'll reach out to the appropriate person.

Thank you for your patience.

As always, do not hesitate to contact me should you have any questions or concerns.

Best,
Liz

Liz Magaña
Case Manager, JAMS San Francisco

  Please consider the environment **before** printing this email.

**From:** Liebeler, Eric C. <eric.liebeler@stinson.com>
**Sent:** Tuesday, February 11, 2020 11:49 AM
**To:** Elizabeth Magana <EMagana@jamsadr.com>; Torgerson, Robert <Robert.Torgerson@stinson.com>; Milliken, Christy M. <christy.milliken@stinson.com>; Woodruff, Jon M. <jon.woodruff@stinson.com>; Francis, Carrie M. <carrie.francis@stinson.com>; dmcmonigle@longlevit.com; JMcMonigle@longlevit.com; jsullivan@longlevit.com
**Cc:** lmyers@longlevit.com
**Subject:** RE: Hosie Rice LLP vs. Space Data Corporation - JAMS Ref No. 1100106722

Liz,

Dave McMonigle and I spoke earlier today. On both clients' behalves, I'm authorized to say that the parties are working out a few final issues and do not believe Judge Robinson's assistance will be needed to complete that process; we hope to have those issues finalized by the end of this week.

Best regards,

Eric

**Eric C. Liebeler**
Partner

**STINSON LLP**
1775 Pennsylvania Avenue NW, Suite 800
Washington, DC 20006-4605
Direct: 202.728.3006 \ Mobile: 202.999.6483 \ Bio

Assistant: Catherine Scott \ 202.728.3028 \ catherine.scott@stinson.com

**STINSON.COM**
This communication (including any attachments) is from a law firm and may contain confidential and/or privileged information. If it
has been sent to you in error, please contact the sender for instructions concerning return or destruction, and do not use or disclose
the contents to others.

**From:** Elizabeth Magana <EMagana@jamsadr.com>
**Sent:** Monday, February 10, 2020 7:21 PM
**To:** Torgerson, Robert <Robert.Torgerson@stinson.com>; Liebeler, Eric C. <eric.liebeler@stinson.com>; Milliken, Christy
M. <christy.milliken@stinson.com>; Woodruff, Jon M. <jon.woodruff@stinson.com>; Francis, Carrie M.
<carrie.francis@stinson.com>; dmcmonigle@longlevit.com; JMcmonigle@longlevit.com; jsullivan@longlevit.com
**Cc:** lmyers@longlevit.com
**Subject:** Hosie Rice LLP vs. Space Data Corporation - JAMS Ref No. 1100106722

**External Email – Use Caution**

Dear Counsel,

Judge Robinson would like to know whether counsel will require her assistance with calculating the final
amounts. Please advise as soon as possible.

Thank you,
Liz



**Liz Magaña**
Case Manager

**JAMS - *Local Solutions. Global Reach.*TM**
Two Embarcadero Center| Suite #1500 | San Francisco, CA 94111
P: 415-774-2649 | F: 415-982-5287
**www.jamsadr.com**

Follow us on **LinkedIn** and **Twitter**.

 Please consider the environment **before** printing this email.

Exhibit D



# HOSIE | RICE LLP
### ATTORNEYS AT LAW

Transamerica Pyramid, 34th Floor
600 Montgomery Street
San Francisco, CA 94111
T: 415.247.6000  F: 415.247.6001

**REVISED**

January 28, 2019

Jerry Knoblach
C.E.O.
Space Data Corp.
2535 Fairview Street, Suite 100
Chandler, AZ 85224
jknoblach@spacedata.net

     Re:    *Representation Agreement*

Dear Jerry:

     This letter agreement ("Agreement") sets forth the terms and conditions on which Hosie Rice LLP ("Hosie Rice" or "Attorneys") will represent Space Data Corp. ("Client") in the matter described below.

     Hosie Rice believes that it is important that all parties understand the terms and conditions under which Hosie Rice will be providing legal representation to the Client. This Representation Agreement ("***Agreement***") is a formal and legally binding contract defining: (1) Hosie Rice's attorney-client relationship with the Client, (2) the scope of Hosie Rice's legal representation of the Client, (3) the terms and conditions under which Hosie Rice will represent the Client, and (4) the fees and costs for services concerning such legal representation. Therefore, it is important that the Client carefully review this Agreement before executing it.

     **1.**    **Scope of Services**. Attorneys will represent Client as to the matter captioned *Space Data v. Google* ("Litigation").

     The terms of this Agreement will apply to any services we perform for the Client unless Attorneys and the Client expressly agree to different terms in writing, or as otherwise expressly provided in this letter. It is our intent to serve as a trusted legal advisor and make available the full range of legal services of our firm, and we look forward to building this relationship with the Client. Hosie Rice's sole client is the Client, ***not*** the Client's founders, officers, directors, shareholders, agents, or employees, even though Attorneys will necessarily deal with such individuals in representing the Client. The Client agrees to make it clear to such individuals that Attorneys are representing the Client and that they should retain their own counsel if they have legal questions.



HOSIE | RICE LLP
ATTORNEYS AT LAW

Jerry Knoblach
January 28, 2019
Page 2

    **2.**    **Client's Duties.**  Client agrees to cooperate with Attorneys, to keep Attorneys informed of any information or developments which may come to Client's attention, to assist Attorneys by providing necessary information and documents, to abide by this Agreement, to pay Attorneys' bills when due, and to keep Attorneys advised of Clients' address, telephone number and whereabouts.  In order to represent the Client effectively, Hosie Rice needs the Client's full cooperation including, but not limited to: (1) providing all documents and information relating to Hosie Rice's representation of the Client in a timely manner, (2) advising Attorneys of any parties who are adverse to the Client in the representation undertaken for the Client, and (3) making personal appearances upon reasonable notice in furtherance of the representations undertaken.  By signing this Agreement, the Client agrees to provide full cooperation to Hosie Rice on all matters in which assistance is requested.

    **3.**    **Legal Fees and Billing Practices.**  This is a mixed, or hybrid, hourly-contingent representation agreement.  Client agrees to pay by the hour for Attorneys' services at the reduced client rate of $475 per hour for Spencer Hosie and Diane Rice, $450 per hour for Brandon Martin, $375 for Darrell Atkinson and $110 for paralegals.  Invoices will be delivered to Client monthly and are payable upon receipt unless otherwise provided herein, and we reserve the right to impose interest at the rate of 10% per annum on any invoices outstanding more than 30 days.  In addition, hourly rates of personnel providing services to the Company under this Agreement will increase from time to time according to competitive market conditions and increased experience of attorneys and staff and Attorneys will provide Client with prior written notice of the same.  Billing rates and charges are usually revised annually but Hosie Rice reserves the right to adjust rates at other times during the course of Hosie Rice's representation.  In addition, as a partial contingency, Attorneys will be entitled to 17% of any net of costs cash (or cash equivalent) recovered.  For example, if plaintiffs recover $1.1 million, and if unpaid costs were $100,000, Attorneys would be entitled to 17% of the net recovery of $1 million, in addition to the discounted and unpaid hourly fees (which to date are outstanding in the amount of (approximately as of November 28, 2018) $2,506,120.30) as well as any costs advanced under ¶ 4.   Costs include such items as travel, photocopies, expert fees, deposition transcripts, as set forth in ¶ 5.  Attorneys' reduced hourly fees shall not be considered a cost.  "Cash equivalent" means any and all things of cash or otherwise, value received by Client, including stock, stock options, warrants, or any other form of non-cash payment received by Client through any claim, demand, negotiation, license, assignment, settlement, lawsuit, judgment or other agreement regarding Client's enforcement rights.  If a claim is settled in whole or in part by the Client's receipt of anything of value other than cash, then Attorneys will be paid-in-like-kind.  For example, if the non-cash consideration is in the form of a restricted stock or options, payments to Attorneys shall be made at the same time that Client is permitted to sell or exercise its options.  The decision to settle and resolve the Litigation, in whole or in part, and the terms for such settlement and resolution, shall be and remain at the sole discretion of Client.

HOSIE | RICE LLP
ATTORNEYS AT LAW

Jerry Knoblach
January 28, 2019
Page 3

If Attorneys cease to be the Client's counsel in the Litigation, through no fault of the Attorneys, then Attorneys share in any contingent recovery will be governed by Attorneys' time spent on the matter over the total time spent on the matter by all counsel (the ratio of a "lodestar" ratio). If Attorneys' representation is terminated for cause, Attorneys will be entitled to no portion of any contingent recovery.

Upon resolution of the matter, if Attorneys' representation has not been terminated, all resolution funds will be paid by defendant(s) directly to Hosie Rice's Trust Account.

**4.       Attorney Provided Financing.**  Hosie Rice will advance all costs and fees through the conclusion of the Litigation once Space Data has paid $4.5 million in costs and fees in connection with the Litigation. As of the date of this Agreement, Space Data has paid at least $4.5 million in costs and fees in connection with the Litigation. Hosie Rice represents and warrants that it has all the facilities in place necessary to fund the Litigation through its conclusion, with a $2 million revolver that can be increased, along with other fee income.

Attorneys agree to advance fees and costs incurred, subject to subsequent Client repayment, as follows:

A.       Once Attorneys begin to advance fees and costs, after the $4.5 million threshold is reached, the Attorneys' contingent interest on any recovery will increase 2% to 19%;

B.       If Attorneys are required to fund costs above $5.5 million, *i.e.*, advance more than an incremental $1 million, then the contingency fee will increase a second 2%, for a contingent interest of 21%; and

C.       Should Attorneys fund in an amount over $6.5 million, *i.e.* advance more than an incremental $2 million, then the contingency percentage increases another 1%, to a total contingency participation of 22%.

The parties understand that, in addition to receiving this increased percentage based on Attorney financing, the Attorney costs and fees advanced will also be paid within 90 days of the resolution of the matter, regardless of outcome. For example, if Attorneys invest $1 million above the $4.5 million threshold, for a total case expenditure of $5.5 million, Attorneys would recover the $1 million advanced within 90 days of the resolution of the matter, plus receive the contingency fee owed to Attorneys (if any).

The parties recognize that Space Data need not draw on this Attorney financing, unless Space Data, in its unilateral discretion, so elects. That is, Space Data retains the right to fund some or all of the Litigation fees and costs above $4.5 million, if Space Data so desires.

HOSIE | RICE LLP
ATTORNEYS AT LAW

Jerry Knoblach
January 28, 2019
Page 4

**5.    Costs and Other Charges.**  Hosie Rice will incur various third party costs and
expenses (*e.g.* travel, experts, photocopying) in performing legal services under this
Agreement.  Client agrees to pay promptly, but no longer than 30 days, for all costs,
disbursements and expenses unless otherwise provided in this paragraph or under ¶ 4.  Hosie
Rice often advance costs that are reasonably incurred in the ordinary course of Hosie Rice's
representation of its clients including filing fees, messenger fees, payments made to third parties,
such as court reporters for transcripts of testimony, obtaining and/or copying documents, travel
expenses (including mileage, transportation, business class air travel for any flights scheduled to
be longer than eight hours, lodging and meals), and teleconference fees.  Should any costs
exceed $2,000.00, Hosie Rice may require the Client to directly pay the costs rather than advance
it.   The advanced costs, itemized in detail, and the voice and data charge will be included on
Hosie Rice's monthly invoice.  Unless otherwise provided in this paragraph or under ¶ 4, the
Client agrees to reimburse Hosie Rice for costs upon receipt of its monthly invoice.

**6.    Communication Concerning Progress and Outcome.**  Hosie Rice will take
reasonable steps to keep the Client informed of progress on matters and to respond to all
inquiries.  Hosie Rice will furnish the Client with an updated litigation budget every three
months, and more frequently if events occur in the Litigation that materially affect the budget. If
the Client is uncertain about something related to Hosie Rice's representation, it is important for
the Client to request further clarification, which Hosie Rice will provide to the extent possible.

**7.    Conflicts of Interest.**  We have conducted a conflicts check based on information
provided by the Client, and based on that information, we are not aware of any ethical conflicts
of interest posed by Hosie Rice's proposed representation of the Client as described in this
Agreement, including, but not limited to, conflicts related to the source of Hosie Rice's financing
under ¶4   It is the Client's continuing duty to inform Attorneys of the identity of any person,
firm, corporation or other entity adverse to the Client or that otherwise has any interest that may
be in conflict with the Client's interests with respect to any legal matter as to which we are
representing the Client.

**8.    Disclaimer of Guarantee.**  Nothing in this Agreement and nothing in Hosie
Rice's statements or writings to Client will be construed as a promise or guarantee about the
outcome of the Litigation.  In the course of the representation, Hosie Rice may discuss with
Client the status or potential outcome of matters or issues in which Hosie Rice is representing the
Client.  Hosie Rice cannot promise or guarantee any particular outcome or result due to variables
and uncertainties outside Hosie Rice's control.  Hosie Rice makes no such promise or
guarantees.  Hosie Rice's comments about the outcome of the Litigation are expressions of
opinion only.  Therefore, the Client should not construe any expressions or opinions on such
matters or issues as assurances, promises or guarantees of the potential outcome of the Litigation.
Hosie Rice has furnished the Client with a budget that reflects its best estimate of fees and costs
to be incurred in the Litigation and may update the budget as circumstances in the Litigation
dictate. Hosie Rice will implement its best efforts to adhere to the budget and promptly provide

HOSIE | RICE LLP
ATTORNEYS AT LAW

Jerry Knoblach
January 28, 2019
Page 5

Client with advance notice if it anticipates the budget will be exceeded. Notwithstanding, Client acknowledges that any estimate of fees given by Hosie Rice shall not be a guarantee. Actual fees may vary from estimates given.

       **9.    Entire Agreement.** This Agreement contains the entire agreement of the parties. It replaces and supersedes any prior agreements or understandings, whether written or oral. No other agreement, statement or promise made on or before the effective date of this Agreement will be binding on Hosie Rice and Client. This Agreement may be modified only by an instrument in writing, executed by both Hosie Rice and Client.

       **10.    Severability.** If any provision of this Agreement is held in whole or in part to be unenforceable for any reason, the remainder of that provision and of the entire Agreement will be severable and remain in effect.

       **11.    Effective Date.** This Agreement will govern all legal services performed by Attorney on behalf of Client commencing with the date Attorney first performed services.

       **12.    Insurance.** Hosie Rice maintains errors and omissions insurance applicable to the services to be rendered pursuant to this Agreement.

       **13.    Termination of Representation by Client.** If at any time the Client is dissatisfied with Hosie Rice's services or wants to have other counsel represent it, the Client may terminate this Agreement by notifying Hosie Rice in writing of the Client's desire to end Hosie Rice's representation. Similarly, Hosie Rice may withdraw at will representation of the Client and terminate this Agreement in writing. If the Client's representation is terminated by the Client, then the Client is only responsible for payment of fees and costs that have been incurred up to the date on which Hosie Rice receives notice from the Client of its desire to terminate the representation, with the fee being calculated as set forth in ¶ 3 above. The Client agrees that Hosie Rice may similarly elect to terminate the representation upon written notice.

       Upon termination of the representation, the Client may request the return of the "Client File" (as defined below) related to the representation or may request that it be forwarded to another law firm. The contents of the "*Client File*" will include all documents (in electronic, paper, or other format) provided by the Client and all recorded information (including but not limited to correspondence, pleadings, transcripts, exhibits, reports, completed but uncommunicated work product and other readily identifiable documents) that Hosie Rice retained as reasonably necessary to the Client's representation. We do not consider our internal communications, notes, and drafts of documents as part of the Client File. Hosie Rice reserves the right to copy the contents of the Client File at our expense and to reuse any work product (exclusive of confidential information) for other clients. If the Client chooses not to request the return of the Client File, Hosie Rice will store it at our off-site storage facility pursuant to Attorneys' normal retention policy as required by law or regulation. The Client will be notified

HOSIE | RICE LLP
ATTORNEYS AT LAW

Jerry Knoblach
January 28, 2019
Page 6

via email at the last email address provided to Hosie Rice when the retention period has ended
and of Attorneys' intention to dispose of the Client File. The Client will have sixty (60) days
from the email notification date to take possession of its Client File. If Hosie Rice does not take
possession of it during this time, the Client agrees that it may be destroyed without further
notice.

     **14.**      **Termination of Representation by Hosie Rice.** If material adverse facts are
revealed through discovery, or otherwise, that were not disclosed by Client, Hosie Rice has the
right to immediately withdraw in accordance with California Rules of Professional Conduct.
Further, Hosie Rice may withdraw at will should Hosie Rice decide that Client is making it
unreasonably difficult for Attorneys to carry out its engagement effectively.

     **15.**      **Client's Acknowledgment.** Client acknowledges that Client has been
encouraged by Attorneys to consult independent counsel concerning the negotiation of this fee
Agreement and its terms (including the following Section 17 on Dispute Resolution), that Client
has made sufficient investigation and inquiry to determine that this Agreement is fair and
reasonable to Client, and that this Agreement was the product of arm's length negotiation with
Attorneys. Client acknowledges that Client has either consulted such independent counsel or,
having had an adequate opportunity to seek such advice, has declined to follow Attorneys'
advice to do so.

     **16.**      **Client's Indemnity.** Client agrees to indemnify and hold Attorneys harmless for
any claims asserted by others to any portion of the claims covered by this Agreement.

     **17.**      **Fee Not Set by Law.** Client understands that the fees described in this
Agreement are not set by law, but are negotiable, and were negotiated, between Attorneys and
Client. Attorneys encourage Client to have this representation agreement reviewed by other
Client counsel.

     **18.**      **Dispute Resolution.** Hosie Rice appreciates the opportunity to represent the
Client and anticipates a productive and harmonious relationship. The Client is encouraged to
bring to Hosie Rice's immediate attention any concerns with services performed or fees charged.
Most problems can be resolved by communication and discussion. However, should a dispute
arise which cannot be resolved by negotiation, Hosie Rice believes that attorney-client disputes
are most satisfactorily resolved through binding, confidential arbitration rather than by litigation.
Any dispute arising out of, in connection with, or in relation to the interpretation, performance or
breach of this Agreement—including any claim of legal malpractice (or similar claim) and any
claim involving fees or expenses—shall be resolved by final, confidential and binding arbitration
conducted in San Francisco, California, administered by a retired judge or justice and in
accordance with the then existing JAMS Streamlined Arbitration Rules and Procedures, and any
judgment upon any award rendered by the arbitrator may be entered by any state or federal court
having jurisdiction to do so. If Hosie Rice and Client are unable to agree on a retired judge or

HOSIE | RICE LLP
ATTORNEYS AT LAW

Jerry Knoblach
January 28, 2019
Page 7

justice to conduct the arbitration, then each party will name one retired judge or justice and the two named persons will select a third retired judge or justice to act as the sole arbitrator. **Client further acknowledges that, by so agreeing, Client waives the right to a court or jury trial.** Client also acknowledges that arbitration provides only limited discovery and that courts will enforce an award in arbitration without reviewing it for errors of fact or law. The parties agree that the prevailing party in any such disputes shall be entitled to recover reasonable costs and attorney's fees.

In any such arbitration, both parties will be entitled to conduct discovery in accordance with the provisions of the California Code of Civil Procedure, but either party may request that the arbitrator limit the amount or scope of such discovery, and in determining whether to do so, the arbitrator shall balance the need for discovery against the parties' mutual desire to resolve disputes expeditiously and inexpensively.

Should there be a dispute concerning fees or costs, the Client may elect to submit that dispute to arbitration under the above provisions. If the Client does not make that election, then California law provides a client with the right to request arbitration of any fee dispute before an arbitrator or panel of arbitrators selected by a local bar association or the State Bar ("***Bar Fee Arbitration***"). By signing this Engagement Agreement, the Client agrees that if a Bar Fee Arbitration is conducted, that Bar Fee Arbitration shall determine only the issue of the properly chargeable amount of fees and costs, and that such Bar Fee Arbitration shall not affect the Client's agreement to arbitrate all other issues on the terms set forth above.

**19.     Attorney Lien.** Client acknowledges that the repayment of any deferred fees or costs, and, in the event of a successful resolution, any contingency due to Attorneys is enforceable by lien of property or any other means of collection under the law of the State of California

**20.     Choice of Law.** In any proceeding (whether in arbitration, in court, or in any other tribunal), all questions concerning the rights and obligations of Client and Hosie Rice under this Agreement that are determined to be governed by the law of a state shall be resolved in accordance with the then-prevailing law of the State of California, including the California Rules of Professional Conduct.

**21.     Conclusion.** If the terms set forth in this Engagement Agreement are satisfactory to the Client, please sign the original and return it to Attorneys in the enclosed envelope. Delivery of an executed counterpart of this Engagement Agreement by facsimile or other electronic imaging shall also be as effective as delivery of a manually executed counterpart of

HOSIE | RICE LLP
ATTORNEYS AT LAW

Jerry Knoblach
January 28, 2019
Page 8

this Engagement Agreement.  The Client should keep the fully executed copy of this engagement
agreement with its records.

Very Truly Yours,

HOSIE RICE LLP

Spencer Hosie, Senior Partner

AGREED TO AND ACCEPTED:

_____

Jerry Knoblach
Space Data Corp. (Client)

ACKNOWLEDGEMENT AND CONSENT:

_____

Paul Crawford
Managing Member
Space Data Investments LLC

HOSIE | RICE LLP
ATTORNEYS AT LAW

Jerry Knoblach
January 28, 2019
Page 8

this Engagement Agreement.  The Client should keep the fully executed copy of this engagement
agreement with its records.

Very Truly Yours,

HOSIE RICE LLP

Spencer Hosie, Senior Partner

AGREED TO AND ACCEPTED:

Gerald M
Knoblach:A01097C00000
16003D8BA4900015F3D

Digitally signed by Gerald M
Knoblach:A01097C00000160003D8BA4900015F3D
DN: c=US, o=U.S. Government, ou=FCA,
ou=Identrust, ou=SPACE DATA CORPORATION,
cn=Gerald M
Knoblach:A01097C00000160003D8BA4900015F3D
Date: 2019.02.02 10:29:57 -07'00'

Jerry Knoblach
Space Data Corp. (Client)

ACKNOWLEDGEMENT AND CONSENT:

Paul Crawford
Managing Member
Space Data Investments LLC

# EXHIBIT 22

**Milliken, Christy M.**

| | |
|---|---|
| **From:** | Elizabeth Magana <EMagana@jamsadr.com> |
| **Sent:** | Thursday, June 25, 2020 3:59 PM |
| **To:** | Torgerson, Robert; Liebeler, Eric C.; Milliken, Christy M.; Woodruff, Jon M.; Francis, Carrie M.; dmcmonigle@longlevit.com; JMcmonigle@longlevit.com; jsullivan@longlevit.com |
| **Cc:** | lmyers@longlevit.com; Sue L. Robinson |
| **Subject:** | Hosie Rice LLP vs. Space Data Corporation - JAMS Ref No. 1100106722 - Notice of Motion Hearing |
| **Attachments:** | 2020.06.25 Notice of Motion Hearing re SDC's Rqt for Further Relief.pdf; Deposit Request 5138628 (1).pdf; Deposit Request 5243962 (1).pdf; Deposit Request 5272026 (1).pdf |

**External Email – Use Caution**

Dear Counsel,

Please find attached the Notice of Motion Hearing regarding SDC's Request for Further Relief. Moreover, the attached deposit requests remain outstanding so kindly remit payment so the balance can be applied promptly.

Please plan to join the virtual hearing 10-15 minutes in advance of the session to ensure you are able to connect.  If you do not have the Zoom application downloaded on your device, you will be prompted to download it then.  Downloading the program is typically a quick process, depending on your internet connectivity.  Once you are in the program, you will be asked to enter your name.  Thereafter, you will be connected to your session and placed in a waiting room. I will check you in for your session and place you into your appropriate breakout room until Judge Robinson is ready to commence the joint session.

If you encounter any issues on the day of, please contact me on my cell phone at 510-691-6477.

Thank you and take care,
Liz



**Liz Magaña**
Case Manager

**JAMS - *Local Solutions. Global Reach.*™**
Two Embarcadero Center| Suite #1500 | San Francisco, CA 94111
P: 415-774-2649 | F: 415-982-5287
**www.jamsadr.com**

Follow us on **LinkedIn** and **Twitter**.

JAMS San Francisco welcomes you back! We're retooled and ready to resolve your disputes. **Schedule an in-person, virtual or hybrid hearing.**

Please consider the environment **before** printing this email.

1

# DEPOSIT REQUEST



**Invoice Date**
2/10/2020

**Invoice Number**
5138628

Bill To:

**Mr. David McMonigle Esq.**
**Long & Levit LLP**
**465 California St**
**Suite 500**
**San Francisco, CA 94104**
**US**

| | |
|---|---|
| **Reference #:** | **1100106722 - Rep# 10** |
| Billing Specialist: | **Hart, Lynne** |
| Email: | **lhart@jamsadr.com** |
| Telephone: | **949-224-4628** |
| Employer ID: | **68-0542699** |

RE: **Hosie Rice LLP vs. Space Data Corporation**

Representing: **Hosie Rice LLP**

Neutral(s):   **Hon. Sue Robinson (Ret)**

Hearing Type: **ARBITRATION**                    LM

| Date / Time | Description | Your Share |
|---|---|---|
| 2/8/20 | **Hon. Sue L Robinson (Ret.)** Deposit for services: To be applied to professional time (session time, pre and post session reading, research, preparation, conference calls, travel, etc.), expenses, and case management fees. Failure to pay the deposit by the due date may result in a delay in service or cancellation of the session. With the exception of non-refundable fees, (Please review the Neutral's fee schedule regarding case management fee and cancellation policies), any unused portion of this deposit will be refunded at the conclusion of the case. | $ 1,252.07 |

|  |  |
|---|---|
| **Total Billed:** | $ 1,252.07 |
| **Total Payment:** | $ 0 |
| **Balance:** | $ 1,252.07 |

Unused deposits will not be refunded until the conclusion of the case. If the case cancels or continues, fees are due per our cancellation and continuance policy. Please make checks payable to JAMS, Inc. **For Arbitration Cases, please contact your case manager for due date, otherwise, payment is due upon receipt.**

**Click here to pay**

Standard mail:
**P.O. Box 845402**
**Los Angeles, CA 90084**

Overnight mail:
**18881 Von Karman Ave. Suite 350**
**Irvine, CA 92612**

# DEPOSIT REQUEST



**Invoice Date**
5/13/2020

**Invoice Number**
5243962

Bill To:

**Mr. David McMonigle Esq.**
**Long & Levit LLP**
**465 California St**
**Suite 500**
**San Francisco, CA 94104**
**US**

| | |
|---|---|
| **Reference #:** | **1100106722 - Rep# 10** |
| Billing Specialist: | **Hart, Lynne** |
| Email: | **lhart@jamsadr.com** |
| Telephone: | **949-224-4628** |
| Employer ID: | **68-0542699** |

RE: **Hosie Rice LLP vs. Space Data Corporation**

Representing: **Hosie Rice LLP**

Neutral(s):  **Hon. Sue Robinson (Ret)**

Hearing Type: **ARBITRATION**                    LM

| Date / Time | Description | Your Share |
|---|---|---|
| 5/13/20 | **Hon. Sue L Robinson (Ret.)**<br>Deposit for services: To be applied to professional time (session time, pre and post session reading, research, preparation, conference calls, travel, etc.), expenses, and case management fees. Failure to pay the deposit by the due date may result in a delay in service or cancellation of the session. With the exception of non-refundable fees, (Please review the Neutral's fee schedule regarding case management fee and cancellation policies), any unused portion of this deposit will be refunded at the conclusion of the case. | $ 3,000.00 |

| | |
|---|---|
| **Total Billed:** | $ 3,000.00 |
| **Total Payment:** | $ 0 |
| **Balance:** | $ 3,000.00 |

Unused deposits will not be refunded until the conclusion of the case. If the case cancels or continues, fees are due per our cancellation and continuance policy. Please make checks payable to JAMS, Inc. **For Arbitration Cases, please contact your case manager for due date, otherwise, payment is due upon receipt.**

**Click here to pay**

Standard mail:
**P.O. Box 845402**
**Los Angeles, CA 90084**

Overnight mail:
**18881 Von Karman Ave. Suite 350**
**Irvine, CA 92612**

# DEPOSIT REQUEST



**Invoice Date**
6/5/2020

**Invoice Number**
5272026

Bill To:

**Mr. David McMonigle Esq.**
**Long & Levit LLP**
**465 California St**
**Suite 500**
**San Francisco, CA 94104**
**US**

| | |
|---|---|
| **Reference #:** | **1100106722 - Rep# 10** |
| Billing Specialist: | Hart, Lynne |
| Email: | lhart@jamsadr.com |
| Telephone: | 949-224-4628 |
| Employer ID: | 68-0542699 |

RE: **Hosie Rice LLP vs. Space Data Corporation**

Representing: **Hosie Rice LLP**

Neutral(s): **Hon. Sue Robinson (Ret)**

Hearing Type: **ARBITRATION**                    LM

| Date / Time | Description | Your Share |
|---|---|---|
| 6/5/20 | **Hon. Sue L Robinson (Ret.)**<br>Deposit for services: To be applied to professional time (session time, pre and post session reading, research, preparation, conference calls, travel, etc.), expenses, and case management fees. Failure to pay the deposit by the due date may result in a delay in service or cancellation of the session. With the exception of non-refundable fees, (Please review the Neutral's fee schedule regarding case management fee and cancellation policies), any unused portion of this deposit will be refunded at the conclusion of the case. | $ 7,000.00 |

| | |
|---|---|
| **Total Billed:** | $ 7,000.00 |
| **Total Payment:** | $ 0 |
| **Balance:** | $ 7,000.00 |

Unused deposits will not be refunded until the conclusion of the case. If the case cancels or continues, fees are due per our cancellation and continuance policy. Please make checks payable to JAMS, Inc. **For Arbitration Cases, please contact your case manager for due date, otherwise, payment is due upon receipt.**

**Click here to pay**

Standard mail:
**P.O. Box 845402**
**Los Angeles, CA 90084**

Overnight mail:
**18881 Von Karman Ave. Suite 350**
**Irvine, CA 92612**

# EXHIBIT 23

Page 22

1  that's the amount by which Hosie Rice violated the
2  trust agreement.  The trust agreement, obviously,
3  they owed that money to NERA.  Instead of paying it
4  to NERA, they either put it in their own pockets or
5  sent it out to pay other debts that they had or pay
6  rent or pay associates or whatever else they did
7  with it, which is a clear and obvious violation of
8  the ethics rules.
9        So we contend, Your Honor, that that
10  $450,000 would be an entirely legitimate baseline on
11  which to issue some kind of punitive or -- or fee
12  shifting, or alteration of the merits award, either
13  in that amount or some multiple of it.
14        And we think Your Honor is absolutely
15  authorized to do that, and we think on this record
16  it would be entirely fair for Your Honor to do that.
17        In addition to that, obviously we at
18  Stinson have incurred about $75,000 in fees that
19  Space Data now owes us.  And that's for all of our
20  fees essentially from February 1st forward.  And I'm
21  sure we've actually incurred more than that.  It's
22  probably another 10 on top of that at this point.
23  That's actually a somewhat discounted amount for the
24  fees that we've incurred since then.
25        So we would contend, Your Honor, that some

Page 23

1  number between 450 and 525, and perhaps some
2  multiple of that, to send a message to Hosie Rice
3  that their conduct is simply not tolerable would be
4  an appropriate thing for Your Honor to do.
5        I guess I should add the following point.
6  That at this point, given Hosie Rice's conduct in
7  simply ignoring your order from May 26th, we don't
8  anticipate at this point that Hosie Rice is going to
9  pay us a penny, okay?  We think they're just going
10  to continue to ignore Your Honor's order, and
11  regardless of what amendments you may make to the
12  interim order in making it final, we believe as a
13  matter -- just as sort of an extrapolation from the
14  last six months of history, that they're not going
15  to pay a dime of it and we're going to get stuck
16  holding a judgment that may or may not be worth
17  anything.  And then we're going to have to go
18  forward and get that confirmed in a California state
19  or federal court and then go try to enforce it.
20        That's clearly going to cost Space Data
21  time and money, and we think you should not
22  encourage Hosie Rice to continue to defy Your
23  Honor's order and think you ought to add something
24  on that basis to compensate us for what we're going
25  to have to do to actually go and enforce whatever

Page 24

1  order Your Honor issues.
2        So, Your Honor, that's -- that's where I
3  am in terms of -- kind of where we are in terms of
4  the conduct and where we are in terms of the remedy
5  and what our proposal is.  I'm happy to answer any
6  questions from Your Honor.
7        THE ARBITRATOR: I don't have any right
8  now.  I had a question about the NERA -- NERA --
9  obligation to pay NERA.  I now understand that what
10  you're saying is you would have an obligation to
11  clear the books in order to use them again if the
12  need arises as opposed to having some contractual
13  obligation.  So that -- you clarified that for me.
14        MR. LIEBELER:  Well, if I may, Your Honor,
15  it's both.  I have an email in your binder at Tab
16  27, which is a note from NERA to me on July 2.  And
17  that note says, and I quote "While we are in the
18  process of formalizing an agreement with Hosie Rice
19  as to the outstanding balance due NERA, in the event
20  NERA does not get paid, NERA will look to Space Data
21  for such payment."
22        So even as a matter of contract, if Hosie
23  Rice doesn't end up paying NERA, NERA is going to
24  chase Space Data for the money.  So we think we may
25  be obliged both as a matter of contract and as

Page 25

1  matter of practical impact, as Your Honor alluded
2  to.
3        THE ARBITRATOR:  Well, they would look to
4  you.  But unless you voluntarily agree to pay it, I
5  don't know that there's a contractual obligation.
6  And I don't know how important it is.  But looking
7  to you for payment is different than you're
8  obligated to pay.  So there is -- there is a
9  distinct tune there between an obligation -- I
10  thought that was interesting language on their part.
11        MR. LIEBELER:  I agree with that.  And,
12  look, Mr. Knoblach and I have talked about this at
13  some length.  It's no surprise.  My own intuition is
14  that if NERA actually sought to recover that money
15  from Space Data as a matter of, you know, formal
16  litigation, they're probably -- they probably have
17  the argument that Space Data is a third-party
18  beneficiary on that contract and they might be able
19  to recover.  Whether or not that's in fact true, I
20  don't know and that's a fight for another day.
21        THE ARBITRATOR: All right.  Well, I'm
22  most interested in from hearing from you,
23  Mr. McMonigle, because this has been a tortious
24  flight.  And let me start out by saying something so
25  that you don't spend a lot of time on an issue that

7 (Pages 22 - 25)

1 I don't think is really in dispute.
2        Much of your brief talks about how this is
3 a final order and therefore I have no authority to
4 do anything at this point.
5        But in reality, my interim award issued on
6 January 16th, sometime in February, Liz reached out
7 to all to find out whether you thought you'd have
8 trouble calculating the fee, the split in the funds,
9 which is the only thing I left myself open for and
10 other errors that I might have made, and I
11 understood from the correspondence that, no, you had
12 no other issues, you weren't going -- you had no
13 issues and, therefore, I did draft, you know, a
14 final award, which I sent to Liz.  But she said, "I
15 will not issue this final award until all the fees
16 are paid."  And you all, I suspect Hosie Rice, had
17 outstanding fees, and so it has never issued.  I
18 don't believe that having Liz have it in her hands
19 without issuing it, according to the JAMS rules,
20 makes it a final order.
21        So if you want to argue that point, that's
22 fine.  But clearly no final order's issued.  Liz
23 basically said, "I have it.  I'm not going to issue
24 it until all fees are paid."  And at the rate we're
25 going it will never issue because Hosie Rice

1 apparently is not willing to pay any fees.
2        So -- so that was a big part of your
3 discussion, Mr. McMonigle.  And if you want -- those
4 are the facts.  If you want to start your argument
5 with those facts, no issue, final award, then I
6 would be very happy to take it from there.
7        MR. JOSEPH MCMONIGLE:  Okay.  Thank you,
8 Your Honor, and thanks for the opportunity to
9 present and respond.  And I think I'm going to
10 forecast.  You know, I have a number of comments to
11 make.  But then it just so happens that there are
12 facts that are better in the hands of Mr. Dave
13 McMonigle and Mr. John Sullivan because they were on
14 the front lines.  Somehow I even got dropped off the
15 emails at certain points.
16        I hope I didn't offend Mr. Liebeler, but I
17 think it's better for firsthand people to respond to
18 you.  And as to the jurisdiction issue,
19 Mr. Sullivan's going to address that.  And part of
20 it is to make our record, Your Honor.
21        But one of the things that's clear from
22 your award is -- the main thing that had to be done
23 was to confirm that Hosie Rice had incurred an
24 obligation, let's call it north of $4 million, to
25 confirm that they would -- that Hosie Rice was

1 entitled to the $4 million.  That was in fact
2 confirmed.  I do believe that Space Data doesn't
3 have an issue with that, even putting aside the --
4 you know, the NERA lack of payment.  Okay?
5        So I think that issue that you left open
6 was one that was resolved.  And I don't know of any
7 other issue that had to be addressed before there
8 was finality.  Okay?
9        I understand the payment of fees issue,
10 okay?  But I'm going to leave that to Mr. Sullivan.
11 Not that I'm ducking it, but he's the one that was
12 chairing our briefing of that.  So we're not going
13 to beat a dead horse, but we're going to -- we think
14 we need to address that.  But I need to confirm at
15 the outset that this has been bumpy and it's not
16 been perfect and we're not going to try to minimize
17 that situation because it's not right.
18        We look to you, Judge, though, to bring
19 closure to this relationship between Mr. Knoblach,
20 Mr. Liebeler, and Mr. Hosie.  And, you know, the
21 plain fact is that Mr. Hosie is battling a
22 life-threatening illness at this point.  And he and
23 all of us must move beyond this NERA situation.
24        And, you know, as it stands today, you
25 know, there's a mention of 450,000.  But as it

1 stands today, NERA is owed $201,000 plus interest of
2 a total of $220,000.  That is the case.
3        And since your award, Mr. Hosie has paid
4 NERA nearly $250,000.  NERA and Mr. Hosie are in the
5 process of formalizing an agreement that they have
6 made.  And Mr. David McMonigle is going to address
7 that because he's actually had communications with
8 counsel for NERA as well.
9        And the agreement that they have struck is
10 that Mr. Hosie is going to pay the balance, is going
11 to pay an additional $50,000, is going to provide
12 security for that payment.  And NERA and Mr. Hosie
13 are going to continue to work on two new matters.
14 That's the substance of the agreement that's being
15 documented right now.
16        And the other plain fact is that Mr. Hosie
17 has consistently stated it's his obligation to pay
18 NERA.  The contract is between Space Data and NERA.
19 In more than a year's time NERA has never stepped up
20 and said that "Space Data, you owe the money."
21 Okay?  And it was only within the last few days that
22 Mr. Liebeler reached out to NERA to confirm that
23 somehow Space Data owes this obligation.  I'm not
24 sure why Mr. Liebeler did that because perhaps he
25 wants to continue this personal war between

Page 42

1 arbitrator's mistake, inadvertence or excusable
2 neglect.  I don't think anyone is taking the
3 position that there was an issue that was omitted
4 because of your mistake, inadvertence or neglect.
5      But the powers don't allow an arbitrator
6 to go back and to reconsider the merits of an
7 original award.  And there's two other cases that
8 talk about it and I'll just give you the cites.
9 It's Landis, 122 Cal.App. 4th 985; Severtson,
10 173 Cal.App.3d 86.
11      And in terms of whether or not that
12 interim award is a final award, it's labeled interim
13 award.  We understood a final award was rendered.
14 And I think despite the label, if you look, that
15 award included a determination of all the questions
16 that had been submitted to you which were necessary
17 to determine the controversy.
18      The Hightower case that is cited in the
19 May 26 order, I don't think it addresses a situation
20 here where you have an award and then there's other
21 conduct or something arises after and the award is
22 modified.
23      That case talks about an arbitrator's
24 scope to fashion a remedy and to fashion a remedy
25 over multiple awards, but that involved a

Page 43

1 shareholder dispute.  And one of the shareholders
2 was granted the right to exercise an option to
3 purchase another shareholder's shares, but the
4 arbitrator wanted to give that shareholder some time
5 to obtain financing.  It didn't have to do with a
6 case like this where there was an award rendered,
7 decision made, and then after the decision was made,
8 that the arbitrator went back and modified the
9 award.
10      And so I guess in terms of, you know,
11 where we are now, it's Hosie Rice's position that
12 the arbitrator -- you do not have the ability to go
13 back -- or I'm sorry, the authority to go back and
14 award millions of dollars in fees, disgorge fees
15 because that award has been rendered.
16      Whether or not there is -- you know, we're
17 not sitting here saying you can't do anything, and I
18 think we've made clear that the firm is willing to
19 pay the arbitrator's fees to date.  The firm has
20 made clear that it would pay a reasonable attorney
21 fee for these post arbitration proceedings.  We
22 don't think $75,000 is a reasonable amount to seek.
23 That's money that Space Data decided to spend to
24 enforce a contract that it's not a party to.  We
25 don't think that Space Data's ever going to have to

Page 44

1 pay $200,000 to NERA for -- based on a breach of
2 contract.  If Space Data wanted to pay -- spend
3 $75,000 making sure, you know, Hosie Rice paid that,
4 we just don't think that's a reasonable amount.  And
5 so I guess that's where we come down on the
6 jurisdiction and what -- what's out there to award.
7      THE ARBITRATOR:  And, Mr. Sullivan, I know
8 the trouble with communicating via email is that
9 it's not always the clearest way to get a message
10 across.  But do I understand correctly that at the
11 very least, Hosie Rice has agreed that I have
12 jurisdiction over more or less enforcing the trust
13 agreement which had to do with divvying up the fund
14 that was awarded through the interim award?
15      I mean, I know that at various times there
16 have been emails saying, you know, if something
17 doesn't happen, we agree that a letter to Judge
18 Robinson's appropriate.  As you said, you've agreed
19 to something.  So where -- where is the line that
20 you're drawing?
21      MR. SULLIVAN:  I guess the line we're
22 drawing is that in terms of resolving this
23 outstanding dispute about just ensuring that NERA's
24 paid consistent with the order, that there is some
25 jurisdiction there.  We don't think there's

Page 45

1 jurisdiction to go back and modify the order.
2      And I think -- I guess the way I would say
3 that is, as you said, Hosie Rice has been involved
4 in these hearings and emails back and forth with you
5 about getting NERA paid and trying to do that.  I
6 think that's far different than saying, Your Honor,
7 we think you should take in evidence of the last six
8 months and go back and modify an award you already
9 rendered.
10      And, you know, if -- so I guess that's --
11 that's where Hosie Rice comes out on that issue.
12 It's not clear -- I think it's quite clear that
13 there's not jurisdiction to go modify the award.
14      There are -- there is JAMS rules that talk
15 about orders to -- I'm sorry -- sanctions to enforce
16 orders.  I have always read those as involving
17 orders during the -- prior to the award during the
18 litigation if somebody doesn't respond to discovery.
19      I'm not sure what an arbitrator's
20 jurisdiction is beyond that to issue monetary
21 sanctions to enforce an award.
22      THE ARBITRATOR:  Well, that leaves me a
23 little puzzled in terms of -- let's say, I -- I end
24 up agreeing with Hosie Rice, that I don't have the
25 jurisdiction to grant the broad remedies requested

12 (Pages 42 - 45)

Page 46

1  by Space Data. On the one hand you're telling me
2  that -- that the final award has already been
3  issued.
4      So how do I -- I mean in terms of what --
5  how do I award even what you think I might have
6  authority to award if there's already a final award?
7  Do you see what I mean? Even the payment of fees,
8  attorneys, and JAMS and everything else, how do I
9  fashion that?
10      MR. SULLIVAN: I understand. I understand
11  what you are saying. I guess that's why we come
12  out. We've agreed to pay the arbitrator fees, and
13  we'll commit to do that.
14      In terms of, you know, reasonable, I think
15  we've committed to paying a reasonable fee, which,
16  you know, at one point it was $40,000. And then it
17  was 75- because we recognized the inconvenience
18  caused by this post-arbitration dispute. But I
19  think beyond that we would probably object to
20  jurisdiction.
21      Like I said, we certainly object to the
22  jurisdiction to go back and make new findings and
23  disgorge 4 and a half million dollars of fees.
24  Certainly we think the prevailing party issue was
25  decided in the arbitration -- in the original award,

Page 47

1  and that we would object to you going back and
2  awarding Space Data a million dollars in fees that
3  incurred in the arbitration.
4      So I guess that's how we are trying to
5  suggest we handle it.
6      THE ARBITRATOR: Well, I -- and I do
7  understand that. I'm just trying to figure out if I
8  actually went to write a decision, how that would be
9  written, or whether it's just a gentleman's
10  agreement between you all.
11      In other words, if I've already issued --
12  if you say I've already rendered a final award, then
13  how does one enforce what the minimum of what you
14  say might be appropriate here?
15      MR. SULLIVAN: I guess the way -- I guess
16  what you could say is that Hosie Rice consented to
17  the jurisdiction to issue an award of the
18  arbitrator's fees post arbitration and that
19  consented to the arbitrator issuing a reasonable
20  attorney fee award in the range that was requested,
21  which was -- it was $42,000 at the time the
22  application for attorney's fees was requested.
23  That's how I would phrase it.
24      THE ARBITRATOR: All right. And,
25  Mr. Joseph McMonigle, did you want to come back and

Page 48

1  address any issues before we go back?
2      MR. JOSEPH MCGONIGLE: Yes, Your Honor.
3  Yes. And thank you very much for allowing us to,
4  you know, do this collectively.
5      And I do -- I do want to confirm that we
6  are committed to pay the JAMS fees and your fees.
7  And we're committed to pay a reasonable attorney
8  fee. And we have briefed the request for $40,000.
9  And I guess the best way of saying it is we leave it
10  to your discretion as to figure out what the right
11  course is. Because we're back to where we started.
12  And that is, we need to reach closure on this
13  matter.
14      We need, for lack of a better phrase, to
15  separate these parties. You were very judicious in
16  the arbitration to deal with parties who were very,
17  very, for lack of a better term, emotional about
18  this case. And I commend you for your -- you know,
19  the manner in which you dealt with that. That was
20  very much appreciated.
21      And I think the award is a really
22  thoughtful award that tried to separate these
23  parties. That's, you know, my take.
24      And so that, I think, you know -- and I
25  understand this jurisdictional issue. It's pretty

Page 49

1  cloudy. But I hope that we've tried to kind of
2  steer a path to where, you know, I think it's, you
3  know, for lack of a better term, safe, and that,
4  hopefully, we could reach closure.
5      And I think I highlighted there were three
6  quick points that I wanted to make. And, first, is
7  the health of Mr. Hosie. And we don't have a lot of
8  updates on that. We haven't pried into that. But
9  we know that he was in L.A. for six months' worth of
10  treatment where he lived in L.A. for that. And we
11  highlighted that for you in our email that we
12  provided to you on April 11th to give you the best
13  information that we knew.
14      We -- we know he's been going through
15  chemo and immunotherapy thereafter. And certainly
16  given the -- what we're all dealing with, you know,
17  certainly people who are over 60 worry about being
18  out in the public.
19      And I can tell you that, as Mr. David
20  McMonigle mentioned to you, that has limited our
21  ability to communicate with Mr. Hosie.
22      Mr. Hosie has not been in the office since
23  February. And, you know, you probably got a sense
24  that Mr. Hosie is intimately involved in most every
25  matter that's in the office. So he just hasn't been

Page 50

1 able to go in the office. And that has limited us.
2        And, you know, I think it's, you know,
3 important to highlight that NERA doesn't even know
4 of Mr. Hosie's situation. You know, that's just
5 private and confidential within this arbitration
6 that we felt like we had to communicate that to you
7 and communicate that to the Stinson firm on behalf
8 of Space Data.
9        So I just wanted to just kind of highlight
10 that, that that's one of our obstacles to being able
11 to comply with everything.
12        But, you know, again, what Mr. David
13 McMonigle mentioned, really the rubber meets the
14 road with NERA. I mean that's really what we're
15 talking about here.
16        But, you know, we intend to comply with
17 your revised order.
18        Secondly, just a brief comment on
19 finances. And I guess the best way I could say this
20 is, we don't know what Mr. Hosie's finances look
21 like. We haven't pried. We haven't, you know,
22 asked, you know, why wasn't Space Data taken care
23 of, you know, when the $4 million was confirmed
24 that -- you know, that the firm was entitled to
25 that?

Page 51

1        All I can say is, and we have been
2 authorized to say this, that we haven't been paid a
3 substantial amount of fees. And we haven't pressed
4 that because we are focused on getting NERA paid.
5 And, you know, we're authorized to tell you that,
6 you know. I don't think we should get into the
7 nitty-gritty, but we're owed a substantial amount of
8 money, but we think NERA is, you know -- we all
9 think that we should try the best we can to take
10 care of NERA. And so that's part of the calculus,
11 okay?
12        And then the third and final piece is that
13 there seems to be a fundamental misunderstanding
14 with regard to the law of breach of fiduciary duty
15 and the remedy of disgorgement, at least in
16 California.
17        And I would say it this way. Number one
18 is that in order to assert breach of fiduciary duty
19 cause of action and seek a remedy of disgorgement,
20 you must, in fact, be able to prove damages that
21 you've sustained. And that's why we have spent
22 considerable time talking about NERA and whether or
23 not Space Data has been damaged as a result of that
24 relationship. And I don't want to go through the
25 details. You know it better than I do about, you

Page 52

1 know, what -- you know, the speculation as to
2 whether or not it ever would end up in Space Data's
3 lap. That is not proof that establishes damages for
4 a breach of fiduciary duty, which is a prerequisite
5 to the remedy of disgorgement.
6        And then the remedy of disgorgement is
7 disgorgement of fees post breach. And so, you know,
8 I'm going to skip over going through the elements of
9 Sheppard Mullin. But the most important thing to
10 understand is when you ask for a remedy of
11 disgorgement of fees, those fees must be after
12 breach of a serious ethical violation.
13        And I'll put aside of the question of
14 whether or not there is a serious ethical violation
15 but deal with the timing. And that is that all of
16 this occurred, you know, after the fees incurred by
17 Hosie Rice in the underlying Space Data case.
18        And you look at the two cases. Sheppard
19 Mullin, the reason why that was remanded is because
20 there was a conflict ab initio between the
21 relationship between Sheppard Mullin and its client.
22 And that conflict affected the relationship from the
23 very beginning because they had a known, you know,
24 conflict that they didn't disclose to their client.
25 And so, therefore, from the very beginning of that

Page 53

1 relationship there was a breach. So, therefore,
2 that's -- it was remanded to make a determination as
3 to whether or not, even given that, whether or not
4 there was value added to the client.
5        Then you take a look at a case that we
6 cited, which is Calpak, which kind of brings this
7 whole -- that is an antitrust transaction where the
8 plaintiff's counsel prosecuted the class action up
9 to a certain point. And then for some unknown
10 reason, the plaintiff's counsel made a side deal
11 with the defendants to receive payment separate and
12 apart from prosecuting the case on behalf of the
13 class.
14        And the Court of Appeals in that case
15 said, okay. That's a serious ethical violation.
16 You made a side deal and you went against your
17 client, okay? You're not entitled to fees. And
18 there's a disgorgement of fees.
19        From that point, the breach -- and it
20 actually was remanded to determine whether or not
21 there was a reasonable value of services up to the
22 point that there was a serious egregious ethical
23 violation.
24        So it's a timing issue that we're bringing
25 to the Court's attention that in this case, all of

14 (Pages 50 - 53)

# EXHIBIT 24



NOTICE TO ALL PARTIES                                                    August 14, 2020

      Re:    **Hosie Rice LLP vs. Space Data Corporation**
              **Reference #: 1100106722**

Dear Parties:

JAMS has reviewed this matter in connection with Respondent's Request for Fees.  Please note that as indicated in JAMS letter of February 18, 2020, Arbitrator Sue Robinson rendered her Final Award on February 18, 2020. Because fees were still outstanding, the Final Award has yet to be issued.  Once all outstanding balances have been paid JAMS will issue the Final Award.  Since the Final Award was already rendered, once issued the Arbitrator may only correct computational, typographical, or other similar errors.  (See JAMS Streamlined Rule 19 (i).)   Beyond such corrections, the Arbitrator has no further jurisdiction in this matter.

Sincerely,

Alicia Jantsch, Esq.
Member, National Arbitration Committee

## <u>PROOF OF SERVICE BY E-Mail</u>

Re: Hosie Rice LLP vs. Space Data Corporation
Reference No. 1100106722


I, John Peterson, not a party to the within action, hereby declare that on  August 14, 2020,

I served the attached letter dated August 14, 2020 on the parties in the within action by electronic

mail at San Francisco, CALIFORNIA, addressed as follows:

Robert H. Torgerson Esq.
Mr. Jon M. Woodruff
Stinson LLP
50 South Sixth St.
Suite 2600
Minneapolis, MN   55402
Phone: 612-335-1500
robert.torgerson@stinson.com
jon.woodruff@stinson.com
    Parties Represented:
    Space Data Corporation

Eric C. Liebeler Esq.
Christy M. Milliken Esq.
Stinson LLP
1775 Pennsylvania Avenue NW
Suite 800
Washington, DC   20006
Phone: 202-785-9100
eric.liebeler@stinson.com
christy.milliken@stinson.com
    Parties Represented:
    Space Data Corporation

Carrie Francis Esq.
Stinson LLP
1850 N. Central Avenue
Suite 2100
Phoenix, AZ   85004
Phone: 602-279-1600
carrie.francis@stinson.com
    Parties Represented:
    Space Data Corporation

David S. McMonigle Esq.
Joseph P. McMonigle Esq.
John B. Sullivan Esq.
Long & Levit LLP
465 California St
Suite 500
San Francisco, CA   94104
Phone: 415-397-2222
dmcmonigle@longlevit.com
JMcmonigle@longlevit.com
jsullivan@longlevit.com
    Parties Represented:
    Hosie Rice LLP


I declare under penalty of perjury the foregoing to be true and correct. Executed at San

Francisco, CALIFORNIA on August 14, 2020.



John Peterson
JAMS
jpeterson@jamsadr.com

# EXHIBIT 25

Hon. Sue L. Robinson (ret.)
Farnan LLP 919 N. Market Street 12th Floor
Wilmington, Delaware 19801

# JUDICIAL ARBITRATION AND MEDIATION SERVICES

## SAN FRANCISCO DIVISION

| | |
|---|---|
| **HOSIE RICE LLP,** | ) |
| | ) |
| **Claimant,** | ) |
| | ) |
| v. | ) **JAMS Reference No.** |
| | )     **1100106722** |
| | ) |
| **SPACE DATA CORPORATION,** | ) |
| | ) |
| **Respondent and** | ) |
| **Counterclaimant.** | ) |

## FINAL AWARD

The law firm of Hosie Rice LLP ("Hosie Rice") instituted this arbitration proceeding under the JAMS Streamlined Arbitration Rules pursuant to its January 28, 2019 Representation Agreement, in order to collect outstanding fees and costs from its former client, Space Data Corporation ("Space Data").  Space Data responded to the complaint and filed a counterclaim, seeking disgorgement of fees already paid and to preclude Hosie Rice from collecting any further fees.  A hearing was held in November 2019, and an interim award issued on January 16, 2020. The interim award was fashioned to bring this dispute to a close by using the $8 million ███████████ as the source of payment, reserving at least $4 million of such for Space Data and paying Hosie Rice for its services through July 11, 2019.  As noted in footnote 8 of the interim award, the amount due Hosie Rice should have been reflected in its invoices, which were submitted on a regular basis to Space Data.  It is my understanding that the parties to this dispute, in fact, have been able to reach agreement on the amounts due to Hosie Rice.  Therefore, the award issued on January 16, 2020 is now deemed the final award, with no further proceedings in this arbitration needed.

Respectfully submitted,

Hon. Sue L. Robinson (ret.)
February 18, 2020

## PROOF OF SERVICE BY E-Mail

Re: Hosie Rice LLP vs. Space Data Corporation
Reference No. 1100106722

I, Elizabeth Magana, not a party to the within action, hereby declare that on August 20, 2020, I served the attached FINAL AWARD on the parties in the within action by electronic mail at El Cerrito, CALIFORNIA, addressed as follows:

Robert H. Torgerson Esq.
Jon M. Woodruff Esq.
Stinson LLP
50 South Sixth St.
Suite 2600
Minneapolis, MN   55402
Phone: 612-335-1500
robert.torgerson@stinson.com
jon.woodruff@stinson.com
    Parties Represented:
    Space Data Corporation

Eric C. Liebeler Esq.
Christy M. Milliken Esq.
Stinson LLP
1775 Pennsylvania Avenue NW
Suite 800
Washington, DC   20006
Phone: 202-785-9100
eric.liebeler@stinson.com
christy.milliken@stinson.com
    Parties Represented:
    Space Data Corporation

Carrie Francis Esq.
Stinson LLP
1850 N. Central Avenue
Suite 2100
Phoenix, AZ   85004
Phone: 602-279-1600
carrie.francis@stinson.com
    Parties Represented:
    Space Data Corporation

David S. McMonigle Esq.
Joseph P. McMonigle Esq.
John B. Sullivan Esq.
Long & Levit LLP
465 California St
Suite 500
San Francisco, CA   94104
Phone: 415-397-2222
dmcmonigle@longlevit.com
JMcmonigle@longlevit.com
jsullivan@longlevit.com
    Parties Represented:
    Hosie Rice LLP

I declare under penalty of perjury the foregoing to be true and correct. Executed at El Cerrito, CALIFORNIA on August 20, 2020.

Elizabeth Magana
JAMS
EMagana@jamsadr.com