1  STINSON LLP
   ERIC C. LIEBELER (SBN 149504)
2  eric.liebeler@stinson.com
   1775 Pennsylvania Ave NW
3  Suite 800
   Washington, DC 20006
4  Telephone: 202.785.9100
   Facsimile:   202.572.9973
5
   Attorney for Petitioner
6  Space Data Corporation

7

8                 UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10

11

12 SPACE DATA CORPORATION,            Case No. 3:20-cv-08256-JSC

13                     Petitioner,    **EXHIBIT 5 TO DECLARATION OF ERIC LIEBELER IN SUPPORT OF AMENDED PETITION TO VACATE ARBITRATION AWARD**
14     v.

15 HOSIE RICE LLP,                    Date:    November 25, 2020
                                      Judge:   Hon. Jacqueline Scott Corley
16                     Respondent.

# EXHIBIT 5

*Arbitrator*
*5/26 Second Amended Findings and Order*

Hon. Sue L. Robinson (ret.)
Farnan LLP 919 N. Market Street 12th Floor
Wilmington, Delaware 19801

## JUDICIAL ARBITRATION AND MEDIATION SERVICES

## SAN FRANCISCO DIVISION

| | |
|---|---|
| **HOSIE RICE LLP,** | ) |
| | ) |
| Claimant, | ) |
| | ) |
| v. | ) JAMS Reference No. |
| | ) 1100106722 |
| **SPACE DATA CORPORATION,** | ) |
| | ) |
| **Respondent and** | ) |
| **Counterclaimant.** | ) |

### SECOND AMENDED FINDINGS AND ORDER

In its statement of claim, Hosie Rice claimed to have advanced well over a million dollars in costs on behalf of Space Data, and argued that Space Data should be responsible for reimbursing Hosie Rice for all of these costs. During his opening statement, Hosie Rice counsel Joseph McMonigle claimed that Hosie Rice had advanced $1,635,549.51 in costs on Space Data's behalf, much of which were expert-witness fees. Tr. 26:18-27:1 (McMonigle). During the hearing, Hosie Rice partner Diane Rice testified about a specific invoice (Ex. 253 at HR004140),

declaring that the amount listed on that individual invoice from NERA, Space Data's damage expert, was "representative of costs that were advanced by Hosie Rice on Space Data's behalf." Tr. 146:23-147:18 (Rice). When asked on cross-examination, Rice testified that she was unable to identify any vendor that had not been fully paid. Tr. 185:21-24 (Rice). All of these representations are inconsistent with the record now established as described below.

On January 16, 2020, an interim award was issued. That interim award assumed that Hosie Rice had in fact advanced expert fees to Space Data experts, and awarded Space Data and Hosie Rice $4 million each from the $8 million amount ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ into a Hosie Rice bank account, and both parties agreed that the ▇▇▇▇▇▇▇▇▇▇ funds would remain in trust pending an order from this Arbitrator.

On January 21, 2020, Space Data counsel Christy Milliken wrote Hosie Rice counsel Dave McMonigle, asking whether Hosie Rice had paid Space Data's experts in full. 1/21/20 email from Milliken to McMonigle. McMonigle agreed to ask Hosie Rice, but did not respond substantively. After several follow-ups, McMonigle spoke directly with Robert Torgerson on January 30 and confirmed that Hosie Rice would pay all unpaid vendors from the $4 million awarded to Hosie Rice from the ▇▇▇▇▇▇▇▇▇▇, and that the "amount needed to pay all unpaid vendors would be distributed from its [Hosie Rice's] trust account in trust

2

for immediate payment solely to those vendors." 1/30/20 email from Torgerson to McMonigle.

The following morning, Milliken contacted NERA and found out that Hosie Rice owed NERA between $500,000 and $600,000. 1/31/20 Milliken email to Eric Liebeler. Liebeler then followed up with McMonigle on February 4, February 10, February 11, February 12 and February 19. McMonigle responded that Hosie Rice would "wire to NERA tomorrow."[1] 2/20/20 McMonigle email. Hosie Rice did not do so.

Liebeler followed up again on February 24, March 2, March 3 and March 4, seeking confirmation that vendor payments were complete. On March 4, McMonigle reported his understanding that "the final NERA bill was sent to Hosie Rice and they are reviewing and wiring this week." 3/4/20 McMonigle email to Torgerson. That representation also was false. On March 10, Liebeler wrote again to McMonigle after finding out that Hosie Rice's payment to NERA was only partial: Hosie Rice had paid just $128,000 of the approximately $570,000 that was due to NERA. On Monday, March 16, Liebeler wrote McMonigle, indicating that Space Data would need to involve the Arbitrator. McMonigle asked for a courtesy extension, which Liebeler granted.

---

[1] McMonigle's email also indicated that Space Data technical expert Sam Pullen would be paid and "a third vendor would be taken care of this week." Mr. Pullen has been paid, but Hosie Rice has never identified the third vendor, nor does Space Data know if that vendor has or has not been paid.

3

On March 18, Liebeler submitted a letter to the Arbitrator, explaining that Hosie Rice's opening statement, testimony, and claims at the hearing were false and asking the Arbitrator to order Hosie Rice to pay NERA by March 25. Hosie Rice was given until March 26 to respond to Liebeler's letter. Late in the day on March 26, McMonigle asked for an extension until March 29 to "allow for a final effort to finalize payment [to NERA] without the need for [the arbitrator's] involvement." 3/26/20 McMonigle email to Robinson. Space Data did not object and the request was granted.

On Sunday, March 29, McMonigle wrote to "confirm that NERA was sent the balance due via two separate federal express shipments" and included tracking numbers for those shipments. It is noted that wire information appears on the face of the NERA invoices and there is no apparent reason or explanation why funds were not wired, particularly in light of Hosie Rice's two prior representations on February 14 and March 4 to Space Data that Hosie Rice was wiring NERA full payment.

Hosie Rice's representation that it had sent NERA the "balance due" was false. Rather than the "balance due," the two federal express shipments Hosie Rice sent to NERA on or about March 29 contained four checks (dated April 2) totaling $123,422.14, leaving a balance of approximately $440,000. See 4/8/20 Liebeler

4

email to McMonigle. Liebeler sent another letter on April 10 explaining the situation.

McMonigle responded on April 11, claiming that Spencer Hosie's personal health issues prevented him from dealing with NERA payments and suggesting that incorrect payment amounts were the fault of Hosie Rice office manager Jerry Shaw. On that basis, Hosie Rice asked for a further extension until April 27 to pay NERA in full and Hosie personally committed to resolve the NERA issues by that date. McMonigle noted that if Hosie Rice did not fully resolve NERA issues by that date, that "we would expect you to consider issuing an appropriate order." 4/11/20 McMonigle email to Robinson.

Rather than pay NERA in full, as McMonigle's April 11 email indicated, Hosie Rice instead stopped payment on the four checks it had sent to NERA on or about March 29. Hosie Rice did not notify NERA, counsel, or the Arbitrator that it had stopped payment on those checks. On April 27, Liebeler found out from NERA that Hosie Rice had stopped payment on the April 2 checks on April 15, and submitted a letter to the Arbitrator on April 28 explaining the latest misrepresentation from Hosie Rice.

In response, McMonigle wrote, claiming that Hosie Rice had sent three additional checks – for $75,480.49, $225,000, and for $149,440 - and argued that since the debt had been paid, the Arbitrator need do nothing further. On May 13,

5

NERA told Space Data's counsel that Hosie Rice stopped payment on the $225,000 check. The $75,480.49 check appears to have cleared and been deposited in NERA's account. NERA never received the alleged $149,440 check from Hosie Rice, but NERA did receive a wire on either May 14 or May 15, which appears to cover that check.

To date, Hosie Rice has not explained why payment on the $225,000 check was stopped. Hosie Rice still owes NERA $225,000.

Significantly, there is no dispute between Hosie Rice and NERA with respect to NERA's fees. Hosie Rice originally claimed to have already paid those fees long ago, and at no time has Hosie Rice quarrelled about the amount of those fees or their validity.

Instead, Hosie Rice has misrepresented the payment status of NERA fees to this Arbitrator at least six times: in its statement of claim; in its opening statement; in Rice's testimony; in McMonigle's March 29 letter (we "confirm that NERA was sent the balance due in two separate federal express shipments . . ."); in McMonigle's April 11 letter, in which Hosie promised to fully resolve the problem by April 27; and in McMonigle's April 29 letter promising yet again that full payment had been made when it had not. It is likewise troubling that Hosie Rice did not notify Space Data's counsel or the Arbitrator that Hosie Rice stopped

payment on the four April 2 checks and the $225,000 check to which McMonigle refers in his April 29 correspondence.

It is similarly apparent that the subject of the NERA invoices was not addressed candidly during the course of the litigation. In September of 2018, Hosie wrote Jerry Knoblach, asking him to pay Hosie Rice so that Hosie Rice could in turn pay NERA. For example, on September 12, Hosie wrote to Knoblach: "On funding: we are about to get a big bill from NERA. And we will have to pay it before the report issues. So too Pullen. Since we cannot close the revolver, my firm is [not] capable of deficient funding any longer. So: it is imperative that [Space Data] pay the remaining amount due ASAP. Please understand that this is most serious. Dire." In specific reliance on that request, Space Data wired $100,000 to Hosie Rice the next day and then another $282,723.43 on October 1. Ex. 253, at HR004051. Space Data paid Hosie Rice another $50,000 on October 31, for a total of $432,723.43 – only about a third of which was paid to NERA.

Hosie Rice's resolution of the NERA account necessarily impacts Space Data. Space Data's merits claims against Google are currently on appeal. If Space Data were to convince the Federal Circuit to reverse the trial court's grant of summary judgment against Space Data and remand the case for trial, Space Data will need NERA's expert testimony on damage issues. Moreover, if Hosie Rice

7

never pays NERA, Space Data is at risk for NERA's unpaid fees. Hosie Rice's failure to pay NERA is itself part of the dispute between Hosie Rice and Space Data, and is properly before the Arbitrator.

The JAMS streamlined rules controlling this dispute instruct that jurisdictional and arbitrability disputes shall be submitted to and ruled on by the Arbitrator. Rule 8(c). In addition, California law affords substantial deference to both an arbitrator's determination as to the scope of his or her authority, as well as to the arbitrator's choice of a remedy. *Hightower v. Superior Court*, 104 Cal. Rptr. 2d 209, 221–22 (Cal. App. 2001). I find that consideration of this post-hearing issue, therefore, is appropriate and consistent with the "broad authority" granted by the applicable rules. *See id.* at 226.

Based on the correspondence between Torgerson and McMonigle on January 30, 2020 (attached), I find that the $4 million released to Hosie Rice from the ███████ ███████ t was released in trust and on Space Data's behalf for the sole purpose of immediately paying vendors. I further find that Space Data has raised a *prima facie* claim that Hosie Rice violated the terms of that trust by not using that $4 million to pay NERA immediately and otherwise satisfy any other obligations to any vendors Hosie Rice retained on Space Data's behalf during the litigation. Instead, Hosie Rice has delayed payment and repeatedly misrepresented what it did with these monies for almost four months. Hosie Rice has had multiple

8

opportunities to explain its conduct and/or make good on its representations, and has failed to do either. I do explicitly find, however, that there is no reason to believe that Long & Levit LLP, Hosie Rice's counsel, is responsible for these failures and misrepresentations; rather, the responsibility for such lies with Hosie Rice.

As the Supreme Court of California has observed, "[t]he misappropriation of client funds alone constitutes a serious ethical and moral violation, breaches the high duty of loyalty which an attorney owes to his clients, violates basic principles of honesty, and puts in peril the public's confidence in the legal profession." *Stevens v. State Bar*, 794 P.2d 925, 929 (Cal. 1990). These facts suggest that Hosie Rice has violated its duty of loyalty by causing ▓▓▓▓▓ t funds held in trust for the payment of Space Data's vendors to be directed elsewhere. Such conduct is particularly concerning where Hosie Rice previously represented that such funds had already been advanced on Space Data's behalf. Space Data is entitled to determine the precise disposition of funds Hosie Rice was to disburse on Space Data's behalf.

As I considered in the Interim Award, a lawyer engaging in clear and serious violation of duty to a client may be required to forfeit some or all of the lawyer's compensation for the matter. *See Sheppard, Mullin, Richter & Hampton, LLP v. J-M Manufacturing Co., Inc.*, 425 P.3d 1, 19 (Cal. 2018) (citing section 37 of the

9

Restatement Third of Law Governing Lawyers). Forfeiture is an equitable remedy, which also serves as a deterrent to future misconduct. *Id.* at 20. Here, I find that a partial forfeiture is an appropriate sanction for the false statements Hosie Rice made during the arbitration and following, both to Space Data and to this Arbitrator.

Based on the foregoing, and having reviewed Space Data's proposed findings and order, the objections thereto by Hosie Rice, and Space Data's responses to both the first and amended findings and orders as well as Hosie Rice's objections, it is hereby ordered:

(i) Hosie Rice shall pay, by wire, NERA's full outstanding balance by close of business on Friday, June 12, 2020, and copy counsel on the wire transmittal the same day.

(ii) Hosie Rice shall pay Space Data the attorney fees it has incurred in this case since February 1, 2020, in a specific amount to be requested by Space Data by Friday, May 29, 2020, to compensate Space Data for the time and effort to identify Hosie Rice's misconduct and get vendors paid.

(iii) Consistent with the agreement of Hosie Rice through its counsel, Hosie Rice shall also pay both sides' share of the Arbitrator's fees for her continued work on this case post-hearing.

(iv) By Friday, June 12, 2020, Hosie Rice shall provide to Space Data a complete list and contact information for each and every vendor Hosie Rice engaged on behalf of Space Data over the course of the Google litigation, and a statement of each current account balance.

(v) Hosie Rice shall provide a full and complete accounting of the $8M in ▓▓▓▓ ▓▓▓▓▓▓ funds, from the moment of receipt of the funds ▓▓▓▓ ▓▓▓▓ through the present day, to include full records from the account into which the $8 million was deposited and each and every account to which any of the funds were transferred at any time, along with records showing any and all withdrawals from any and all of those accounts within the control of Hosie Rice or either of its partners. Hosie Rice shall produce these records by Friday, June 12, 2020.

(vi) If Hosie Rice does not comply with the above, I will consider further remedies in Space Data's favor, as appropriate, including its requested

11

sanction of a monetary award to reflect the conduct described above.

It is so ordered.

_____
Hon. Sue L. Robinson (ret.)
May 26, 2020